# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

_____

NATALIE J. OKSEN,

                                        Plaintiff,

            v.                                          5:25-CV-822
                                                        (AJB/MJK)


FORT DRUM MOUNTAIN COMMUNITY HOMES, LLC., *et. al.*,

                                        Defendant.

_____

Natalie J. Oksen, *Pro Se* Plaintiff

Mitchell J. Katz, U.S. Magistrate Judge

To the Honorable Anthony J. Brindisi, U.S. District Judge:

## ORDER and REPORT- RECOMMENDATION

Oksen began this action on June 25, 2025, by filing a Complaint, and moving for leave to proceed *in forma pauperis* ("*IFP*"). (Dkts. 1, 2). The Clerk sent her Complaint and *IFP* application to this Court for review. (Dkts. 1, 2).


## I.  BACKGROUND

In April 2022, the United States military ordered Oksen's spouse to transfer military bases. (Complaint, Dkt. 1, at ¶ 2). This order prompted Oksen and her family's move to Fort Drum, New York. (*Id.*). In response to this required move, Oksen contacted Fort Drum Mountain Community Homes LLC's housing office and requested a reasonable accommodations form. (*Id.*). Before moving into her new home, Oksen submitted the form to the housing office, and attached

1

"documentation from licensed medical providers, which clearly outlined the medical necessity of" her requested accommodations. (*Id.* at ¶ 4). Presumably, the medical forms support Oksen's claim that she suffers from benign idiopathic intracranial hypertension; polycystic ovary syndrome; major depressive disorder; epilepsy; chronic daily migraines; migralepsy; keratoconus; gastroparesis; and irritable bowel disease. (*Id.* at pg. 6-7).

A month after Oksen submitted the reasonable accommodations request form, Fort Drum Mountain Community Home's Property Management ("Property Management") partially approved it. (*Id.* at ¶ 3). Specifically, Property Management granted Oksen's request for carpet-free flooring, a non-shared common area, and a 2-bedroom, 1.5-bathroom housing unit. (*Id.*). But they denied her request for no shared walls and recently renovated housing. (*Id.*).

Once Oksen moved into the housing unit, she found carpeting throughout the home, despite the approved accommodation. (*Id.* at ¶ 6). When she notified Defendants of her issue, they said, "the carpet on the stairs [was] required for safety." (*Id.* at ¶ 7). At this point, Oksen did not file a formal complaint. (*Id.* at ¶ 11). She and Property Management opted to conduct an informal walkthrough of the housing unit, and during the walkthrough, Oksen communicated her concerns to the property manager. (*Id.* at ¶ 11). After this, Oksen and Property Management's staff met. (*Id.* at ¶ 12). During this meeting, Property Management

staff allegedly told Oksen "she had one week to move out or relocate off post" and if she did not, they would notify her spouse's military chain of command. (*Id.* at ¶ 12). There are no allegations that Oksen moved out within a week or that her spouse's military superior was notified. *See generally* (*id.*).

Sometime in 2023, Oksen emailed the Fort Drum Mountain Community Homes Project Director, noting her perceived Americans with Disability Act ("ADA") violations. *See* (*id.* at ¶ 14). In response, the project director told Oksen that her accommodation request was considered closed and he invited her to submit a new request. (*Id.*).

Yet in July 2023, Oksen filed a Complaint with the New York State Division of Human Rights, alleging Fort Drum Mountain Community Homes, LLC., and its employees engaged in unlawful discriminatory housing practices. (Division Decision One, Dkt. 1-1, at pg. 1). Specifically, Oksen alleged those Defendants treated her differently because of her disability. (*Id.*).

At the end of 2023, Oksen requested a "move over due to" her "worsening medical issues." (Complaint, Dkt. 1, at ¶ 16). In addition to that request, Oksen submitted a new reasonable accommodations request, which included "all previously requested modifications" and "additional modifications . . . due to changes in" her "medical condition." (*Id.*). At no point during the process did Defendants issue a formal denial. (*Id.*). Rather, Property Management approved

her move-over request, but they told her that no handicap-accessible homes were available. (*Id.* at ¶ 18).

On June 10, 2024, Property Management showed Oksen a newly-available-handicap-accessible-housing unit and notified her that she had one week to vacate her unit and move into the new one. (*Id.* at ¶ 20). Oksen reluctantly complied. *See* (*Id.*). Four days later, Oksen emailed Property Management and notified them that the AC unit was broken and needed to be replaced. (*Id.* at ¶ 22). She also told Property Management that the walk-in shower was not the correct size. (*Id.* at ¶ 22) (cleaned up). Oksen claims Property Management denied that the broken AC unit was an emergency. (*Id.*). Additionally, Oksen created several work orders, but the orders were repeatedly rescheduled. (*Id.* at 23).

So on September 17, 2024, Oksen filed another Complaint with the Human Rights Division alleging the same unlawful practices. (Division Decision Two, Dkt. 1-2, at 1). Yet on June 3, 2025, the Human Rights Division determined that there was no probable cause to support Oksen's Complaints of unlawful behavior. (*Id.* at 3; Division Decision One, Dkt. 1-1, at 3).

As of May 2025, Oksen alleges that her backyard remains inaccessible. (Complaint, Dkt. 1, at ¶ 27).

Oksen now sues Fort Drum Mountain Community Homes, LLC., Fort Drum Mountain Community Homes Property Management, LLC., Lendlease (US) Public

Partnerships, LLC., Winn Residential Military Housing Services, LLC., Winn

Companies (the parent company of Winn Residential), and Centinel. (Complaint,

Dkt. 1, at pgs. 2, 5-6). In her Complaint, Oksen alleges that Defendants violated

the Fair Housing Act ("FHA"), New York Human Rights law, ADA, and

Servicemembers Civil Relief Act ("SCRA").

## II.  *IFP* APPLICATION

Oksen declares in her *IFP* application that she is unable to pay the filing fee.

(Dkt. 2). And after reviewing her application, this Court agrees. Thus, the Court

finds that Oksen is financially eligible for *IFP* status.

## III.  STANDARD OF REVIEW

In addition to determining whether plaintiffs meet the financial criteria to

proceed *IFP*, courts must also review the sufficiency of the allegations in the

complaint under 28 U.S.C. § 1915. That statute requires a court to dismiss a case—

at any time—if it determines that the action is (1) frivolous or malicious; (2) fails

to state a claim on which relief may be granted; or (3) seeks monetary relief against

a defendant who is immune from such relief. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-

(iii).

When determining whether an action is frivolous, courts must consider

whether the complaint lacks an arguable basis in law or in fact. *See Neitzke v.*

*Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544 (2007); 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process and to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974).

To be sure, courts have a duty to show liberality toward *pro se* litigants and must use extreme caution when *sua sponte* dismissing *pro se* complaints before adverse parties have been served and had an opportunity to respond. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee). But courts *still* have a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See id.*

## III.  DISCUSSION

The Court recommends dismissing Oksen's Complaint in its entirety without prejudice and without leave to amend. *First*, the Northern District does not have subject matter jurisdiction over Oksen's Human Rights Law claims. *Second*, the District Court should dismiss Oksen's SCRA claim without prejudice but with leave to amend because it does not comply with Fed. R. Civ. P. 8. *Third*, the Court should also dismiss Oksen's ADA and FHA, claims because neither claim survives § 1915's forgiving review.

**A. The District Court cannot hear Oksen's Human Rights Law claims because N.Y. Exec. Law §§ 297 and 298 prevent Oksen from bringing her case to Federal court.**

The Court recommends dismissing Oksen's Complaint without prejudice and without leave to amend. New York Human Rights Law contains an election-of-remedies provision. Once plaintiffs file a complaint with the human rights division, they can only seek redress for the Human Rights Law claims in New York's trial court. Federal Courts no longer have subject matter jurisdiction. Here, Oksen filed two Complaints with the Human Rights Division. So the Northern District lacks jurisdiction to hear her Human Rights Law claims.

"N.Y. Exec. Law § 297(9) provides a right of actions against unlawful discriminatory practice." *York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 127 (2d Cir. 2002). Specifically, §297(9) allows persons "claiming to be aggrieved by an unlawful discriminatory practice" to file suit "in any court of appropriate jurisdiction" unless that "person has filed a complaint . . . with any local commission on human rights." N.Y. Exec. Law § 297(9). So by its terms, "the election-of-remedies provision contained in § 297(9) . . . precludes" plaintiffs from bringing human rights law "claims that were first brought before the" Human Rights Division to another court "as a plenary action." *McDonald v. City of New York*, 786 F. Supp. 2d 588, 615 (E.D.N.Y. 2011) (cleaned up). In essence, plaintiffs limit their choice of remedies. Importantly, N.Y. Exec. Law §298 identifies

plaintiffs' remedy: "once a plaintiff brings a case before the" Human Rights

Division, they "may appeal only to the Supreme Court of the State of New York."

*York*, 286 F.3d at 127 (citing N.Y. Exec. Law § 298). The election-of-remedies

provision does not apply when the Division dismisses the complaint "on the

grounds of administrative convenience" or "untimeliness." N.Y. Exec. Law §

297(9). But if the Division dismisses a claim for lack of probable cause the

Plaintiff cannot litigate those same Human Rights Law claims in Federal court.

*See MacEntee v. IBM (Int'l Bus. Machines)*, 783 F. Supp. 2d 434, 447 (S.D.N.Y.

2011).

   The election-of-remedies provision applies to Oksen's case. Attached to

Oksen's Complaint are two Division decisions dismissing Oksen's claims for lack

of probable cause. *See* (Division Decision One, Dkt. 1-1, at 3; Division Decision

Two, Dkt. 1-2, at 3). Working backwards, the decisions mean that Oksen filed two

complaints with the Human Rights Division. In fact, Oksen confirms that she filed

a complaint with the Division. *See* (Complaint, Dkt. 1, at ¶ 15). As a result, Oksen

necessarily availed herself of § 297(9)'s election-of-remedies provision. *See York*,

286 F. 3d at 127.

   And since the election-of-remedies provision applies to Oksen's case, it bars

the District Court from hearing Oksen's Human Rights Law claims. "The election-

of-remedies bar is jurisdictional." *Thompson v. Odyssey House*, 14-CV-3857, 2015

WL 5561209 at *11 (E.D.N.Y Sept. 21, 2015). "An individual who files a

complaint with the" Human Rights Division "is jurisdictionally barred from filing a lawsuit in state or federal court for the same claims." *Id*. (cleaned up) And "because" Oksen's "claims arise out of the same group of facts, the matter before this court is jurisdictionally barred." *Carroll v. U.P.S.,* No. 00–CV–7032, 2000 WL 1185583, at *3 (2d Cir. Aug. 21, 2000).

The last paragraph in the Division's decisions do not change the analysis. Both of those paragraphs note that "in cases alleging housing discrimination only, a person whose complaint has been dismissed" by the division "after investigation for lack of jurisdiction or lack of probable case may file the same cause of action in a court of appropriate jurisdiction pursuant to this section, unless appeal to the New York State Supreme Court as stated above has been sought." (Division Decision One, Dkt. 1-1, at 3; Division Decision Two Dkt. 1-2, at 3-4). Oksen's does not *only* allege housing discrimination as required by the second paragraph, but she also alleges violations of the ADA and SCRA. In consequence, this paragraph is not applicable to Oksen's claim.

### B. The Court should dismiss Oksen's SCRA claim because she has failed to state a claim upon which relief can be granted.

The Court should dismiss Oksen's SCRA claim, without prejudice but with leave to amend. Rule 8 requires plaintiffs to plead claims with enough specificity to give defendants notice of what they are being sued for. Yet here, Oksen's

Complaint does not identify (nor can this Court find) any statutory hook for her SCRA claim. As a result, Oksen's SCRA claim is not Rule 8 compliant.

Pleadings must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief …" Fed. R. Civ. P. 8(a)(2). "The purpose of" Rule 8 "is to give fair notice of the claim being asserted so" adverse parties have "the opportunity to file a responsive answer, prepare an adequate defense, and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (cleaned up). The rule also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(1), (3) (cleaned up). "Although no technical form is required, the Federal Rules make clear that each allegation contained in the pleading must be simple, concise, and direct." *Cole v. Smrtic*, No. 24-CV-847, 2024 WL 4870495, at *2 (N.D.N.Y. 2024) (cleaned up). Allegations "so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed. App'x 102, 104 (2d Cir. 2009) (summary order). Indeed, to survive dismissal for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* (cleaned up).

Oksen alleges that "Defendants threatened to interfere with the military career of" her "spouse by stating they would involve his military chain of command as retaliation for Plaintiff's pursuit of her legal rights." (Complaint, Dkt. 1, at 21). She continues, "Defendants further violated SCRA provisions by improperly conditioning Plaintiff's housing rights and threatening adverse consequence linked to her spouse's military service." (*Id.*). But frankly—even construing her claim liberally, Oksen has not identified—nor can this Court identify—a specific cause of action SCRA authorizes for threats. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (Reminding trial courts to construe *pro se* complaints liberally). As a result, the District Court should dismiss Oksen's SCRA claim without prejudice but with leave to amend. *See* 28 U.S.C. §1915(e)(2)(B)(ii) ("the court shall dismiss the case at anytime if the court determined that the action . . . fails to state a claim on which relief can be granted.").

**C. The Court should dismiss Oksen's ADA claim because she has not plausibly alleged that the ADA applies to Defendants or that the alleged discriminatory treatment occurred because of her disability.**

The Court should dismiss Oksen's ADA claim without prejudice but with leave to amend. The ADA prohibits public entities from discriminating against a disabled person because of their disability. *See* 42 U.S.C. § 12132. Here, Oksen

neither pleads that Defendants are public entities nor that the discriminatory treatment occurred because of her disability. Thus, her ADA claim is insufficient.

"Title II of the ADA forbids discrimination against" persons with disabilities in "public life, public services, programs, and activities." *Avila v. Promesa, Inc.*, 24-CV-1689, 2024 WL 2747822 at *5 (S.D.N.Y. May 22, 2024) (cleaned up). Specifically, the ADA prohibits denying "qualified individuals with a disability" the "participation in or . . . the benefits of the services, programs, or activities of a public entity" because of their disability. 42 U.S.C. § 12132. To sustain an ADA claim, plaintiffs must plausibly allege three elements: (1) they are "a qualified individual with a disability;" (2) "the defendants are subject to the act; and" (3) the plaintiff "was denied the opportunity to benefit from defendants' services, programs, or activities or was otherwise discriminated against by defendants," *because* of their "disability." *Matagrano v. New York State Dep't of Corr. & Cmty. Supervision*, 19-CV-00763 (BKS/DJS), 2020 WL 7338586 at * 12 (N.D.N.Y. Decision 14, 2020). The ADA does not apply to private entities. *See Avila*, 2024 WL 2747822 at *5.

Under §1915's forgiving standard, Oksen has pled enough information to establish element one—that she is a qualified individual with a disability. In her Complaint, Oksen lists several medical conditions that could substantially limit major life activities. *See* (Complaint, Dkt. 1, at 6). Specifically, she notes benign

idiopathic intracranial hypertension; polycystic ovary syndrome; major depressive disorder; epilepsy; chronic daily migraines; migralepsy; keratoconus; gastroparesis; and irritable bowel disease as her disabilities. (*Id.* at 6-7). Thus, element one could be met.

But Oksen's Complaint plausibly allege element two or three even under §1915's lenient review.

Taking element two first, Oksen's ADA claim fails. First the Court takes judicial notice of Fort Drum Mountain Community Homes' website, which notes: "Fort Drum Mountain Community Homes is a privatized military housing community formed through a partnership between Centinel and the U.S. Army." [1] *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC,* 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) ("A court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination.") (quotation omitted). From the face of the website, the defendants are private actors, so they are not subject to the ADA. *See Avila*, 2024 WL 2747822 at *5. And Oksen has not pled that Defendants receive federal funding. *See Id.* at 4. In consequence, Oksen's complaint, as it is now, does not plausibly allege element two.

---

[1] https://www.fortdrummch.com/about-us (last visited July 9, 2025).

Element three is no different. Construing her claim liberally, Oksen never pled that Defendants alleged discriminatory treatment occurred *because* of her disability. That nexus is missing. And because it is, Oksen's claim, as it now stands, fails to state an ADA claim. *See Matagrano*, 2020 WL 7338586 at * 12 (N.D.N.Y. Dec. 14, 2020). And because that is true, this Court recommends that the District Court dismiss Oksen's ADA claim without prejudice and with leave to amend. *See* 28 U.S.C. §1915(e)(2)(B)(ii).

### D. The Court should dismiss Oksen's FHA and Human Rights Law claims because her Complaint fails to allege that Defendants refused to make the requested accommodations.

The Court recommends dismissing Oksen's FHA and Human Rights Law claims (if the Court determines that it has jurisdiction over Oksen's Human Rights Law claim). Relevantly, both claims require plaintiffs to plausibly allege that the defendants failed to make the necessary accommodations. But here, Oksen provides evidence Defendants made the repairs they could. Thus, the Complaint, as it is, cannot sustain Oksen's FHA and Human Rights law claims.

"The FHA makes it unlawful to discriminate in the sale or rental or otherwise make unavailable or deny, a dwelling to any renter because of a" disability.[2] *CNY Fair Hous., Inc. v. WellClover Holdings LLC*, 738 F. Supp. 3d 175,

---

[2] While the statue uses the phrase handicapped, the Court uses the phrase disabled (and attempts to limit the use of the word handicapped) to avoid using language persons with disabilities may find offensive.

190 (N.D.N.Y. 2024) (Sannes C. J.) (quoting 42 U.S.C. § 3604(f)(3)(B)) (cleaned up). "Discrimination includes a refusal to make reasonable accommodations in rules, policies, practice, or services when such accommodations may be necessary to afford such persons equal opportunity to use and enjoy a dwelling." *Id.* (cleaned up). Plaintiffs "may establish discrimination under the FHA under one of three theories: disparate treatment, disparate impact, or failure to make reasonable accommodations." *Hevner v. Vill. E. Towers, Inc.*, 06-CIV-3983, 2011 WL 666340 at * 2 (S.D.N.Y. Feb. 7, 2011). To prevail on a reasonable accommodation theory, plaintiffs must allege: (1) they are "handicapped within the meaning of 42 U.S.C. § 3602(h); (2) the "defendant knew or should have known of" the plaintiff's disability; (3) the "accommodation is necessary to afford the" disabled "person an equal opportunity to use and enjoy the dwelling;" (4) the "accommodation is reasonable"; and (5) "the defendant refused to make the requested accommodations." *Id.* (cleaned up). "Reasonable accommodation claims under the NYSHRL . . . are evaluated under the same framework as claims brought under the FHA." *CNY Fair Hous., Inc.*, 738 F. Supp. 3d. at 191.

Oksen's Complaint plausibly alleges element one. To be considered disabled under the FHA, the plaintiff must have an "impairment which substantially limits one or more of" their "major life activities." 42 U.S.C. § 3602(h)(1).[3] As discussed

earlier, Oksen has pled ailments that may constitute impairments that substantially limit her major life activities. *See* (Complaint, Dkt. 1, at pg. 6). As a result, her Complaint plausibly alleges element one.

Oksen's Complaint plausibly alleges element two. To plead element two, Oksen needs to plausibly allege that Defendants knew or should have known of her disability. *See Hevner*, 2011 WL 666340 at *2. The Complaint does so. Oksen submitted a request for reasonable accommodations to Defendants' housing office and those "requests were supported by documentation from licensed medical providers" and they "outlined the medical necessity" of her requested accommodations. (Complaint, Dkt. 1, at ¶¶ 2, 4). Oksen also alleged that Defendants requested more medical documents, which shows that they knew of her disability. (Complaint, Dkt. 1, at ¶ 14). As a result Oksen's complaint plausibly alleges the second element.

Oksen's Complaint also plausibly alleges elements three and four. Presumably, the medical documentation that Oksen submitted shows that carpet-free flooring, a larger shower, and a ramp for yard access were reasonable accommodations necessary for Oksen's use of the housing unit. Thus, the Complaint alleges elements three and four. (Complaint, Dkt. 1, at ¶¶ 3, 21, 23, 27).

Element five is where Oksen's claim dies on the vine. Oksen alleges Defendants showed her a handicap-accessible unit and she moved into it.

16

(Complaint, Dkt. 1, at ¶ 21). Beyond that, both Human Rights Division decisions identify that Defendants communicated with Oksen regarding "the needs for repairs at the subject property and completed repairs as necessary." (Division Decision Two, Dkt. 1-2, at pg. 3); *see also* (Division Decision One, Dkt. 1-1, at pg. 2). Flatly, there is not enough information to plausibly allege that Defendants refused to make Oksen's requested accommodations *because* of her disability. As a result, Oksen's Complaint cannot sustain an FHA claim. This analysis extends to Oksen's Human Right Law claim because the analysis is the same. *See CNY Fair Hous., Inc.*, 738 F. Supp. 3d. at 191. So the Court recommends dismissing Oksen's FHA and Human Rights Law claims without prejudice but with leave to amend.

* * *

To recap, the Court recommends dismissing Oksen's Complaint in its entirety without prejudice but with leave to amend because the Northern District does not have subject matter jurisdiction over Oksen's New York Human Rights Law claims, Oksen's SCRA allegations do not comply with Rule 8, and Oksen's ADA and FHA claims fail to pass muster under § 1915's forgiving review.

IV.    **CONCLUSION**

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that Plaintiff's motion to proceed IFP (Dkt. 2) is **GRANTED**,[4] and it is further

**RECOMMENDED,** the District Court dismiss Oksen's complaint, in its entirety, **WITHOUT PREJUDICE** and **WITHOUT LEAVE TO AMEND** because the Court does not have jurisdiction to hear the case; Alternatively it is

**RECOMMENDED,** the District Court dismiss Oksen's SCRA claim, in **WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND** because it does not comply with Fed. R. Civ. P. 8; it is further

**RECOMMENDED,** the District Court dismiss Oksen's ADA claim, **WITHOUT PREJUDICE** but **WITH LEAVE TO AMEND** because the Complaint does not allege that the ADA applies to Defendants, or the discrimination occurred because of her disability; and it is further

**RECOMMENDED,** the District Court dismiss Oksen's FHA and Human Rights law claim, **WITHOUT PREJUDICE** but **WITH LEAVE TO AMEND** because the Complaint does not allege that Defendants refused to make Oksen's requested accommodations; and it is further

---

[4] The court notes that although Plaintiff's IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in the future regarding this action, including but not limited to copying and/or witness fees.

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on Plaintiff by regular mail.[5]

Under 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**. *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 25, 2025

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge

---

[5] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) *(per curiam)*.

Avila v. Promesa, Inc., Not Reported in Fed. Supp. (2024)

Case 5:25-cv-00822-AJB-MJK    Document 6    Filed 07/25/25    Page 20 of 91

2024 WL 2747822
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jimmy AVILA, Plaintiff,

v.

PROMESA, INC.; Basic, Inc.; Lymaris Albors, Chief Executive Officer; Aja Douglas, Quality Assurance Director,
Supportive Housing; 1412 Col, LLC; Caren Abate, Director of Housing, NYCFO; Officer of Mental Health, Defendants.

24-CV-1689 (LTS)
|
Signed May 22, 2024

**Attorneys and Law Firms**

Jimmy Avila, Bronx, NY, Pro Se.

ORDER OF DISMISSAL WITH LEAVE TO REPLEAD

LAURA TAYLOR SWAIN, Chief United States District Judge:

 **\*1** Plaintiff, who is appearing *pro se*, brings this action under the court's federal question jurisdiction, alleging that Defendant violated his rights under the Americans with Disabilities Act of 1990 ("ADA"), the Rehabilitation Act, and state law. By order dated April 9, 2024, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses the complaint, but grants Plaintiff 30 days' leave to replead his claims in an amended complaint.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S.

at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff brings this action under the court's federal question jurisdiction, asserting claims under Title II of the ADA, Section 504 of the Rehabilitation Act, and state law. He names the following as Defendants: (1) Promesa, Inc.; (2) Basics, Inc.; [1] (3) Lymaris Albors, whom Plaintiff identifies as "Chief Executive Officer" of an unspecified organization; (4) Aja Douglas, whom Plaintiff identifies as "Quality Assurance Director" of an unspecified organization; (5) "1412 Col, LLC," which the Court understands to be 1412 College Avenue COL, LLC; (6) Caren Abate, Director of Housing for the New York City Field Office of the New York State Office of Mental Health ("NYSOMH"); and (7) the "New York State Department of Mental Health," which the Court understands to be the NYSOMH.

**\*2** The following allegations are taken from the complaint and the attached documents. Plaintiff has schizoaffective disorders, "periodontal disease and other disabilities." (ECF 1, at 5.) On January 3, 2024, Plaintiff signed a relocation agreement lease with Defendant Basics "under duress," which he maintains deprived him of "Supportive Housing Social Services" and restricted his rights as a tenant. [2] Plaintiff alleges that Defendants denied him the "Warranty of Habitability" by "not providing and withholding essential services to [Plaintiff's] unit that the Defendants had a legal duty to provide." (*Id.*) Specifically, Defendants: (1) cut off "essential services like electricity"; (2) refused to provide Plaintiff with keys to the apartment or provide him access to the apartment after January 9, 2024; (3) refused to correct "HPD Violations" in the apartment; [3] (4) attempted to "break into" his apartment and change the locks; (5) used "physical force" against Plaintiff, after which he was treated at BronxCare Hospital, where Plaintiff states he was "denied doctors, medical accommodations, request for shower bars, social services, emotional support animal, etc. (*Id.* at 5-6.) Plaintiff alleges that this last incident, the alleged assault, occurred on November 16, 2023, and involved an individual named Trevor Griffiths, who is not named as a defendant in this action.

Plaintiff asserts that Defendants

> discriminated against individuals with schizoaffective disorder (SZA, SZD) periodontal disease and other relevant conditions in violation of Title II of the ADA by prohibiting or otherwise limiting the full use of enjoyment of [Plaintiff's] unit and denying the [Plaintiff] keys to the unit and building and denying equal access and resources to the [Plaintiff] that is required under the OMH (Office of Mental Health) rules and regulations/guidelines thereby giving rise to the instant action.

(*Id.* at 6.)

Plaintiff further alleges that, in retaliation for a settlement agreement in an "illegal lock out case" in Bronx County Housing Court, Defendants have not remedied the "HPD Violations" described in an attachment to the complaint. (*Id.* at 6-7; *see id.* at 51.) He also appears to allege that Defendants terminated his tenancy and "forc[ed] him to move." (*Id.* at 7.)

Plaintiff appears to seek money damages and unspecified injunctive relief.

In addition to the attached documents described above, Plaintiff also attaches other documents to the complaint. One such document is a letter from Basics, stating that in January 2024, Plaintiff had agreed to abide by a Relocation Agreement and Program Site Safety Plan, but that due to "recent events, including assault of our staff and breaking and entering of a BASICS apartment," Plaintiff would be discharged from the program. (*Id.* at 23.) The letter further states that as a result of Plaintiff's

Case 5:25-cv-00822-AJB-MJK    Document 6    Filed 07/25/25    Page 22 of 91

Avila v. Promesa, Inc., Not Reported in Fed. Supp. (2024)

discharge from the program, Basics would be commencing a housing court proceeding against him regarding the apartment unit at 1412 College Avenue. (*Id.*)

Plaintiff also includes what appears to be a cover sheet for a housing action Plaintiff filed in the Civil Court of the City of New York, County of Bronx, on February 23, 2024. (*Id.* at 53).

## DISCUSSION

### A. Plaintiff's previous actions

**\*3** Plaintiff has a long history of filing actions in this court related to supportive housing and his disabilities, including actions against some of the same defendants named in this case. *See Avila v. Acacia Network*, ECF 1:23-CV-10260, 6 (LTS) (S.D.N.Y. preliminary injunction denied Jan. 12, 2024) (asserting claims under the Fair Housing Act ("FHA") that Abate, Douglas, and others retaliated against Plaintiff for securing a "settlement stipulation" in a state housing court matter); *Avila v. Acacia Network, Inc.*, ECF 1:23-CV-7834, 1 (LTS) (S.D.N.Y. filed Sept. 1, 2023) (asserting, *inter alia*, claims under the FHA and ADA that Acacia Network and Trevor Griffith discriminated against him and failed to accommodate his disability at a previous apartment); *Avila v. Acacia Network*, ECF 1:22-CV-7657, 8 (LTS) (S.D.N.Y. May 9, 2023) (dismissing complaint, after Plaintiff failed to amend his pleading as directed, because he failed to provide facts showing that Defendants discriminated against him on the basis of a disability); *Avila v. Sun River Health, Inc.*, ECF 1:22-CV-9221, 7 (LTS) (S.D.N.Y. May 24, 2023) (same); *Avila v. Basics, Inc.*, ECF 1:17-CV-8916, 6 (JMF) (S.D.N.Y. Nov. 20, 2017) (denying request for preliminary injunctive relief and dismissing complaint for failure to state a plausible claim for relief under the FHA). [4]

In another recent case, *Avila v. Acacia Networks, Inc.*, No. 24-CV-0884 (LTS) (S.D.N.Y. filed Feb. 2, 2024), Plaintiff brings claims under the FHA, ADA, Rehabilitation Act, and state law, arising from the terms of the relocation agreement that he attaches to this complaint. In that action, he sues: (1) Acacia Network; (2) Trevor Griffiths; (3) Aja Douglas, (4) NYSOMH; (5) Kim Benatar, Deputy Director of Housing at the NYSOMH; (6) "NYC Adult Protective Service," which the Court understands to be the Adult Protective Services Program ("APS"), a program of the New York City Department of Social Services's Human Resources Administration; (7) Thomas Glenoy, whom Plaintiff describes as an "APS Senior Supervisor," and (8) 1412 College Avenue, LLC. By order dated April 15, 2024, the Court dismissed the action, but granted Plaintiff 30 days' leave to replead his claims in an amended complaint. ECF 1:24-CV-0884, 4.

To the extent Plaintiff is asserting claims in this action against Douglas, NYSOMH, and 1412 College Avenue, LLC, arising from the terms of the relocation agreement, that he has previously raised in No. 24-CV-0884, the Court dismisses those claims without prejudice to Plaintiff litigating them, as permitted, in No. 24-CV-0884. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit.... Because of the obvious difficulties of anticipating the claim or issue-preclusion effects of a case that is still pending, a court faced with a duplicative suit will commonly[,] [among other things,] ... dismiss it without prejudice...."); *see also Mackey v. Bd. of Educ. for the Arlington Cent. Sch. Dist.*, 112 F. App'x 89, 91 (2d Cir. 2004) (summary order) (citing *Curtis*, 226 F.3d at 138, and affirming the district court's dismissal without prejudice of those claims within an action that were duplicative of claims in another pending action, while the district court adjudicated other claims).

### B. Claims under the Rehabilitation Act

The Court understands the complaint to be asserting claims for discrimination and retaliation under the Rehabilitation Act against Promesa, Basics, 1412 College Avenue LLC, and the NYSOMH. [5]

#### 1. Discrimination claims

**\*4** Under the Rehabilitation Act:

Avila v. Promesa, Inc., Not Reported in Fed. Supp. (2024)

Case 5:25-cv-00822-AJB-MJK    Document 6    Filed 07/25/25    Page 23 of 91

[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). [6]

To state a claim under the Rehabilitation Act, the plaintiff must allege that: (1) the plaintiff is a qualified individual with a disability; (2) the defendant is subject to the Rehabilitation Act; and (3) the plaintiff was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant, by reason of the plaintiff's disability. [7] *Shomo v. City of New York*, 579 F.3d 176, 185 (2d Cir. 2009) (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)). To show that the defendant is subject to the Rehabilitation Act, "a plaintiff must show that the defendant[ ] [is either a federal executive agency, the United States Postal Service ("USPS"), or] receive[s] federal funding." *Henrietta D.*, 331 F.3d at 272; *see* 29 U.S.C. § 794(a).

Plaintiff alleges no facts showing that Promesa, Basic, or 1412 College Avenue LLC, all of which appear to be private entities, or the NYSOMH, a New York State agency, [8] receive federal funding. Even if any of those defendants has received federal funding, however, Plaintiff's allegations are insufficient to show that any of those defendants denied him the opportunity to participate in or benefit from its services, programs, or activities, or has otherwise discriminated against him, by reason of his disability. Thus, Plaintiff has failed to state a claim of discrimination under the Rehabilitation Act against Promesa, Basics, 1412 College Avenue LLC, and the NYSOMH, and the Court dismisses those claims against those defendants for that reason. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**\*5** The Court grants Plaintiff leave to file an amended complaint in which he alleges facts sufficient to state a claim of discrimination against these defendants under the Rehabilitation Act.

### 2. Retaliation claims

To the extent that Plaintiff asserts claims of retaliation under the Rehabilitation Act against Promesa, Basics, 1412 College Avenue LLC, and the NYSOMH, the Court must dismiss those claims. To state such a claim, a plaintiff must allege that: "(i) [the] plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that [the] plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against [the] plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Natofsky*, 921 F.3d at 353 (internal quotation marks and citation omitted). In this context, "[w]ith respect to causation, a plaintiff must prove 'that "but for" the disability, the adverse action would not have been taken.' " *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (quoting *Natofsky*, 921 F.3d at 347). In addition, as with a discrimination claim brought under the Rehabilitation Act, the plaintiff must show that the defendant is either a federal executive agency, the USPS, or receives federal funding. *Daly v. Westchester Cnty. Bd. of Legislators*, No. 19-CV-4642 (PMH), 2023 WL 4896801, at *4, 7-8 (S.D.N.Y. Aug. 1, 2023), *appeal pending*, No. 23-1220 (2d Cir.); *see* 29 U.S.C. § 794(a).

Plaintiff appears to allege that Defendants retaliated against him for his state court litigation by cutting off his electricity, refusing to provide keys to his apartment, and changing the locks on his apartment. Even if the Court assumes that Promesa, Basics, 1412 College Avenue LLC, and the NYSOMH receive federal funding; that Plaintiff engaged in activity protected by the Rehabilitation Act; that these defendants were aware of this activity; and that the conditions of which Plaintiff complains could be considered adverse actions, Plaintiff does not allege any facts suggesting that there was a causal connection between the adverse action and the protected activity. In fact, the only state court action about which Plaintiff provides any factual details

Case 5:25-cv-00822-AJB-MJK    Document 6    Filed 07/25/25    Page 24 of 91

Avila v. Promesa, Inc., Not Reported in Fed. Supp. (2024)

appears to have been filed on February 23, 2024 (*see* ECF 1, at 53), a month *after* Plaintiff reported to HPD that his electricity was turned off (*see id.* at 51), therefore undermining Plaintiff's claim that Defendants turned his electricity in retaliation for his lawsuit. The Court therefore dismisses Plaintiff's claims of retaliation under the Rehabilitation Act for failure to state a claim on which relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), but grants Plaintiff leave to replead these claims against these defendants in an amended complaint in which he alleges facts sufficient to state such a claim.

## C. Claims under Title II of the ADA

Plaintiff also asserts claims under Title II of the ADA. Title II forbids discrimination against persons with disabilities in, among other areas of public life, public services, programs, and activities. *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004). It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Under the ADA, a "public entity" includes "(A) any State or local government; [and] (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(A)-(B). The Court construes these claims as asserted against NYSOMH only, since the other defendants are considered to be private entities not subject to the ADA. *See id.*; *Matagrano*, 2020 WL 7338586, at *12.

### 1. Discrimination claims against NYSOMH

**\*6** The standard to state a claim of discrimination under Title II of the ADA is the same as the standard to state a claim of discrimination under the Rehabilitation Act, though without the additional requirement that the defendant must be a federal executive agency, the USPS, or receive federal funding. *See Shomo*, 579 F.3d at 185; *Henrietta D.*, 331 F.3d at 272. Here, Plaintiff's allegations are insufficient to show that NYSOMH denied him the opportunity to participate in or benefit from its services, programs, or activities, or has otherwise discriminated against him, by reason of his disability. The Court therefore dismisses Plaintiff's claims of discrimination under Title II of the ADA against the NYSOMH for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). As above, the Court grants Plaintiff leave to replead these claims in an amended complaint in which he alleges facts sufficient to state such a claim against this defendant. [9]

### 2. Retaliation claims against NYSOMH

The Court must dismiss Plaintiff's claims of retaliation under the ADA against the NYSOMH. The ADA's antiretaliation provision provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful [under the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). The pleading requirements for a claim of retaliation under the ADA are the same as those for claims of retaliation under the Rehabilitation Act (without the requirement that the defendant be a federal executive agency, the USPS, or receive federal funding). *See Tafolla*, 80 F.4th at 125-26; *Natofsky*, 921 F.3d at 353; *Currytto v. Doe*, No. 3:18-CV-1392, 2019 WL 2062432, at *8 (D. Conn. May 9, 2019) ("The same standards apply to a claim of retaliation under ... the Rehabilitation Act as under the ADA." (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002))). For the same reasons that the Court dismissed Plaintiff's claims of retaliation under the Rehabilitation Act, the Court dismisses Plaintiff's claims of retaliation under the ADA against the NYSOMH for failure to state a claim on relief may be granted. [10] *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to replead these claims against NYSOMH in an amended complaint in which he alleges facts sufficient to state a such a claim against this defendant.

## D. Claims under state law

Plaintiff asserts claims under state law for retaliation under N.Y. R.P.P. § 233-B and claims for breach of contract. A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon*

Case 5:25-cv-00822-AJB-MJK     Document 6     Filed 07/25/25     Page 25 of 91

Avila v. Promesa, Inc., Not Reported in Fed. Supp. (2024)

*Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.' " (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

### E. Motion for preliminary injunctive relief

 **\*7**  Plaintiff has filed an application for preliminary injunctive relief. (ECF 1, at 12-21; ECF 3.) To obtain such relief, Plaintiff must show: (1) that he is likely to suffer irreparable harm and (2) either (a) a likelihood of success on the merits of his case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in his favor. *See UBS Fin. Servs., Inc. v. W.V. Univ. Hosps., Inc.*, 660 F. 3d 643, 648 (2d Cir. 2011) (citation and internal quotation marks omitted); *Wright v. Giuliani*, 230 F.3d 543, 547 (2000). Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted).

As set forth above, Plaintiff fails to state a claim for relief under the Rehabilitation Act or the ADA. The Court therefore finds that Plaintiff has not, at this time, shown: (1) a likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in his favor. Accordingly, Plaintiff's request for preliminary injunctive relief is denied without prejudice.

### LEAVE TO AMEND GRANTED

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state valid claims under the Rehabilitation Act and ADA, the Court grants Plaintiff 30 days' leave to amend his complaint to detail his claims.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action.

### CONCLUSION

Plaintiff's complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed for failure to state a claim on which relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), with 30 days' leave to replead.

To the extent Plaintiff is asserting in this action claims against Douglas, NYSOMH, and 1412 College Avenue, LLC, arising from the terms of the relocation agreement that he has previously raised in No. 24-CV-0884, the Court dismisses those claims without prejudice to Plaintiff litigating them, as permitted, in No. 24-CV-0884.

Plaintiff's request for preliminary injunctive relief is denied without prejudice. (ECF 3.)

The Court declines to exercise supplemental jurisdiction of Plaintiff's claims under state law. *See* 28 U.S.C. § 1367(c)(3).

Avila v. Promesa, Inc., Not Reported in Fed. Supp. (2024)

Case 5:25-cv-00822-AJB-MJK    Document 6    Filed 07/25/25    Page 26 of 91

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 2747822

---

### Footnotes

1    Although Plaintiff does not state it in the complaint, the Court understands Basics, Inc. to also be known as Bronx Addiction Services Integrated Concept System, Inc.

2    Plaintiff attaches to the complaint a copy of an excerpt from a relocation agreement and one-year sublease agreement in which he appears to agree to end his lease or sublease with Basics, as to his previous apartment, and enter into another sublease with Basics, as to his current apartment. (ECF 1, at 24-28.) He also attaches a sublease agreement for his current apartment that is written on Acacia Network letterhead and that, while acknowledging that his apartment building is owned by "1412 College Avenue COL, LLC," treats Basics as his landlord. (*Id.* at 29-33.) This relocation agreement and Plaintiff's allegations that he signed it under duress are the subject of another action Plaintiff recently filed in this court. *See Avila v. Acacia Network, Inc.*, No. 24-CV-0884 (LTS) (S.D.N.Y. filed Feb. 2, 2024).

3    Plaintiff attaches to the complaint a document from the New York City Department of Housing Preservation & Development ("HPD"), which, using check boxes, appears to indicate that on January 27, 2024, an HPD inspection of Plaintiff's apartment found "[n]o [e]lectricity" and "[o]ther" violations. (*Id.* at 51.) No further information about the alleged violations is provided on the form.

4    *See also Avila v. Sun River Health, Inc.*, ECF 1:22-CV-9254, 6 (LTS) (S.D.N.Y. Feb. 10, 2023) (dismissing complaint as duplicative); *Avila v. 1212 Grant Realty, LLC*, ECF 1:18-CV-7851, 130 (LGS) (GWG) (S.D.N.Y. Apr. 26, 2021) (dismissing action under stipulated settlement); *Avila v. Slaughter*, ECF 1:15-CV-3188, 20 (LGS) (S.D.N.Y. July 28, 2015) (voluntarily dismissing complaint).

5    Plaintiff may also be attempting to assert Rehabilitation Act claims against Albors, Douglas, and Abate. Plaintiff, however, cannot assert Rehabilitation Act claims for damages against individual defendants. *See Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("Insofar as [the plaintiff] is suing the individual defendants in their individual capacities, neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits...."); *J.L. on behalf of J.P v. New York City Dep't of Educ.*, 324 F. Supp. 3d 455, 467 (S.D.N.Y. 2018) ("There is no individual liability under the ADA or § 504 of the Rehabilitation Act.").

6    For the purposes of the Rehabilitation Act, the term "individual with a disability" incorporates by reference the definition of "disability" in the ADA. 29 U.S.C. § 705(20)(B). Under the ADA, a "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C).

Avila v. Promesa, Inc., Not Reported in Fed. Supp. (2024)

Case 5:25-cv-00822-AJB-MJK    Document 6    Filed 07/25/25    Page 27 of 91

7    Following the ruling of the Supreme Court of the United States in *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176-77 (2009), in which it held that "age discrimination must be the 'but-for' cause of an adverse employment action for ... liability to attach" under the Age Discrimination in Employment Act of 1967 ("ADEA"), the United States Court of Appeals for the Second Circuit has not decided whether "but-for" causation or "mixed motive" causation is required to state a non-employment discrimination claim under the Rehabilitation Act or Title II of the ADA. *Bolmer v. Oliveira*, 594 F.3d 134, 148-49 (2d Cir. 2010) (discussion in the context of Title II of the ADA); *see Wright v. N.Y. State Dep't of Corrs.*, 831 F.3d 64, 72 (2d Cir. 2016) (standards under Title II of the ADA and the Rehabilitation Act "are generally the same"). *But cf. Natofsky v. City of New York*, 921 F.3d 337, 345 (2d Cir. 2019) (holding that "but-for" causation applies to employment discrimination claims brought under the Rehabilitation Act).

8    A showing that the NYSOMH receive federal funding is not only necessary in order to state a claim of discrimination against it under the Rehabilitation Act; it is also a requirement to show the State of New York's waiver of Eleventh Amendment immunity as to such claims. *Cf. Matagrano v. N.Y. State Dep't of Corrs. & Cmty. Supervision*, 9:19-CV-0763, 2020 WL 7338586, at *11 n.18 (N.D.N.Y. Dec. 14, 2020) ("New York's acceptance of federal funds on behalf of [the NYS]OMH ... waives its Eleventh Amendment defense to Plaintiff's Rehabilitation Act claims against" that entity).

9    "[I]f a plaintiff cannot state a Title II [ADA] claim [against a state agency], the court's [Eleventh Amendment] sovereign immunity inquiry is at an end." *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 152 (2d Cir. 2013). Thus, if Plaintiff fails to state a claim of discrimination against the NYSOMH, it appears that such a claim is also precluded by Eleventh Amendment sovereign immunity. *See id.* (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)).

10    "The law is not presently settled on the issue of whether Congress validly abrogated [Eleventh Amendment] sovereign immunity for retaliation claims under [the ADA] when such claims are predicated on ... claims [under Title II of the ADA]." *Puccinelli v. S. Conn. State Univ.*, No. 3:21-CV-0763, 2023 WL 4838291, at *6 n.8 (D. Conn. July 28, 2023); *Constantine v. Merola*, No. 1:20-CV-1012, 2020 WL 8450544, at *5 n.8 (N.D.N.Y. Nov. 6, 2020), *report & recommendation adopted sub nom.*, *Constantine v. NYS Deaf Cmty.*, No. 20-CV-1012, 2021 WL 392487 (N.D.N.Y. Feb. 4, 2021).

---

**End of Document**        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag

Distinguished by  Gorenflo v. Penske Logistics,  N.D.N.Y.,  January 8, 2009

225 F.3d 645

Unpublished Disposition

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions"
appearing in the Federal Reporter. See Federal Rule of Appellate Procedure 32.1 and
this court's local Rule 32.1.1. for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Second Circuit.

Michele M. CARROLL, Plaintiff-Appellant,

v.

UNITED PARCEL SERVICE, Defendant-Appellee,

Local 317, International Brotherhood of Teamsters, AFL-CIO, Defendant.

No. 00-7037.

|

Aug. 21, 2000.

Appeal from the United States District Court for the Northern District of New York, Howard G. Munson, Senior Judge.

**Attorneys and Law Firms**

Alan R. Peterman, Hiscock & Barclay, Syracuse, NY, for appellant.

Stephen J. Vollmer, Thomas G. Eron, Bond, Schoeneck & King, LLP, Syracuse, NY, for appellee.

Present CALABRESI, CABRANES, and POOLER, Circuit Judges.

*SUMMARY ORDER*

**\*1**  UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court be and it hereby is AFFIRMED.

Plaintiff-appellant Michele M. Carroll ("Carroll") appeals from a judgment of the United States District Court for the Northern District of New York (Munson, *J.*) granting the motion of defendant-appellee United Parcel Service ("UPS") for summary judgment. Carroll had sued UPS, alleging violations of the New York Human Rights Law ("NYHRL"), N.Y. EXEC. LAW §§ 290 *et seq.* The district court dismissed plaintiff's claim, deeming it barred by the doctrine of election of remedies, codified in N.Y. EXEC. LAW § 297(9). We affirm.

BACKGROUND

Michele Carroll worked as a package sorter for UPS between 1993 and 1997. For most of this period, she was assigned to the "primary sort aisle," an assignment that entails repetitive lifting of packages weighing up to 150 pounds. In May 1997, Carroll informed her employers that she was experiencing back pain, and requested that she be assigned to less strenuous work. UPS temporarily placed plaintiff in the small package sort area, but returned her to the primary sort aisle in August 1997.

Carroll resisted reassignment, claiming that her back pain prevented her from performing the work required at that position. UPS requested medical documentation to support her claim, and Carroll provided a note from her doctor's office. The note indicated that she was able to work, but also requested, without explanation, that she not be assigned to the primary sort aisle. Plaintiff's reassignment was tabled pending clarification of her condition by her physician. None came.

In December 1997, managers at UPS discovered that Carroll had been working as a driver's helper and as a Saturday driver in the delivery of air packages. Because UPS considers these jobs to be as physically demanding as work on the primary sort aisle, it requested once again that Carroll provide a note from her physician explaining the nature of her medical condition. Plaintiff submitted another note from the same office indicating that she was able to work but requesting, without explanation, that she not be assigned to the primary sort aisle. On December 17, 1997, plaintiff was informed that she would not be permitted to work for UPS in any capacity until she provided proper documentation of her medical condition from a physician. Plaintiff has not worked for UPS since that date.

On January 22, 1998, Carroll filed a grievance under the collective bargaining agreement between her union, Local 317, International Brotherhood of Teamsters, AFL-CIO ("Local 317") and her employer, alleging that she had been wrongfully removed from work. An arbitrator found in favor of UPS, deeming it proper for defendant to refuse to employ plaintiff until she provided more detailed information about her medical condition.

Plaintiff then filed a claim with the New York State Division of Human Rights ("NYSDHR") alleging disability discrimination in violation of state law. In an Order dated April 8, 1999, the NYSDHR found no probable cause to believe that UPS had engaged in any unlawful discriminatory practice. Specifically, UPS was found to have taken reasonable steps to accommodate Carroll's disability and was deemed not to have acted unlawfully by insisting that she provide proper documentation of her medical condition.

 **\*2**  Instead of appealing the ruling of the NYSDHR administratively, Carroll filed suit in the New York State Supreme Court for Onondaga County. In that suit, plaintiff named both UPS and Local 317 as defendants, alleging that the former retaliated against her unlawfully for pursuing her rights under the NYHRL and that the latter had engaged in unlawful retaliation through its inadequate representation of her during the arbitration proceeding.

Defendant Local 317 filed a Notice of Removal with the United States District Court for the Northern District of New York, claiming that the "retaliation" claim brought against it was actually a suit for breach of the duty of fair representation under the Labor Management Relations Act, 29 U.S.C. §§ 158-59, and was therefore appropriate for federal jurisdiction. Defendant UPS consented to the removal and, thereby, implicitly asked the district court to exercise supplemental jurisdiction over plaintiff's state law claims against it. Carroll responded by moving to remand to State Court. Defendants opposed this motion and also sought summary judgment. Local 317 asserted that plaintiff's claims against it were barred by the statute of limitations and were, in any event, insufficient as a matter of law. UPS, instead, contended that plaintiff's claim against it, being purely a state law claim, was barred by the election of remedies provision of N.Y. EXEC LAW § 297(9).

The district court denied plaintiff's motion to remand and granted summary judgment for both defendants. *Carroll v. Local 317, International Brotherhood of Teamsters, AFL-CIO,* No. 99-CV-1362, 1999 WL 1138596, *3-*5 (N.D.N.Y. Dec. 6, 1999).

Carroll has not appealed the judgment in favor of Local 317, and, therefore, that case is not before us. [1]  Ruling in favor of UPS, the court found that New York State law "precludes plaintiff from commencing an action in court based on the same incident she disputed before the NYSDHR." *Id.* at *5. Senior U.S. District Judge Munson emphasized that the issues before him were "precisely" those presented to the NYSDHR, and, refusing to grant Carroll another "bite at the apple," dismissed her complaint. *Id.*

This appeal followed.

DISCUSSION

Plaintiff's cause of action is predicated entirely on state law grounds. Therefore, if her claim would be jurisdictionally prohibited in state court, then it is also barred in the federal courts. The election of remedies provision of the NYHRL provides, in pertinent part:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction ... unless such person had filed a complaint hereunder or with any local commission on human rights, ... provided that, where the [D]ivision [of Human Rights] has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

**\*3** N.Y. EXEC LAW § 297(9) (McKinney 2000). "[W]hen a party files a complaint with the Division of Human Rights regarding alleged discrimination, that party is thereafter barred from 'commencing an action' in court regarding that discrimination." *Moodie v. Fed. Reserve Bank,* 58 F.3d 879, 882 (2d Cir.1995). "[T]he statute ... precludes [a] plaintiff from commencing an action in court based on the same incident." *Emil v. Dewey,* 49 N.Y.2d 968, 969 (1980) (citation omitted).

Though appellant filed a grievance with the NYSDHR alleging unlawful discrimination on the part of UPS, she urges that the instant suit for retaliation is not prohibited by § 297(9) because the factual bases and legal theories underlying the two claims differ. This argument is without merit. In both actions, Carroll challenges her employer's failure to accommodate her disability. Though the claim before this court is nominally one of "retaliation" and plaintiff's allegations describe some "retaliatory" conduct by UPS that appears not to have been presented to the NYSDHR, decisions of this court and the New York State courts indicate that this is of no moment.

A "[c]laimant cannot avoid the jurisdictional bar [presented by § 297(9) ] by merely adding additional elements of damage arising out of the same underlying conduct [or] by changing his legal theory ." *Bhagalia v. State,* 644 N.Y.S.2d 398, 399 (1996). "[A]ttempts to recover for [the same] injuries under ... slightly different labels" are subject to dismissal. *Horowitz v. Aetna Life Ins.,* 539 N.Y.S.2d 50, 52 (1989); *see also James v. Coughlin,* 508 N.Y.S.2d 231, 232 (1986) (affirming the dismissal of plaintiff's complaint under § 297(9) and emphasizing that while plaintiff "couch[ed] it in the terminology of [a different statute], its essential thrust is the same."). "The question is whether a sufficient identity of issue exists between the complaint before the division and the instant claim." *Spoon v. American Agriculturalist, Inc.,* 478 N.Y.S.2d 174, 175 (1984); *see also Bhagalia,* 644 N.Y.S.2d at 398 (holding that only "sufficient identity of issue" is required for § 297(9)'s jurisdictional bar to take hold).

Before the Division of Human Rights, Carroll claimed that UPS had failed to accommodate her disability and had unfairly refused to employ her. The complaint in the action before us includes allegations that UPS refused "to allow plaintiff to work overtime in her light duty position, ... remov[ed] plaintiff from driver helper duty and Saturday delivery duty despite the fact that the duties associated with these positions did not require ... heavy lifting, ... [and] plac[ed] plaintiff on indefinite leave." None of the facts alleged in support of Carroll's claim of "retaliation" occurred after the filing of her grievance with the NYSDHR. Because Carroll's two sets of claims arise out of the same group of facts, the matter before this court is jurisdictionally barred. *See Pass v. National Broad. Co.,* No. 92 Civ. 9266, 1994 WL 9678, at \*3 (S.D.N.Y. Jan. 10, 1994) (plaintiff cannot commence an action arising out of the same facts as the claim she presented to NYSDHR); *Emil,* 49 N.Y.2d at 969; *Craig-Oriol v. Mount Sinai Hosp.,* 607 N.Y.S.2d 391, 391 (1994) (same). The jurisdictional bar posed by § 297(9) required the district court to dismiss Carroll's claims for lack of jurisdiction, rather than granting summary judgment against her.

CONCLUSION

 **\*4** We have considered all of Carroll's contentions and find them to be without merit. Accordingly, we vacate the grant of summary judgment and remand to the district court with instructions to dismiss Carroll's claims against UPS for lack of jurisdiction.

**All Citations**

225 F.3d 645, 2000 WL 1185583 (Table)

---

**Footnotes**

1    Carroll appealed the denial of her motion to remand as to UPS, but she makes no arguments on this issue in her brief. Since that motion raised jurisdictional questions, the propriety of the removal to federal court is, nonetheless, before us. We address the matter of jurisdiction in our review of the district court's grant of summary judgment in favor of UPS.

---

**End of Document**                                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4870495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,

v.

Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)

|

Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

## REPORT-RECOMMENDATION & ORDER

CHRISTIAN F. HUMMEL, United States Magistrate Judge

### I. In Forma Pauperis

**\*1**  Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint. [1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

### II. Initial Review

#### A. Legal Standards

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they

"suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

**\*2** Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

**\*3** This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.'" Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) [3] (quoting Livingston v. Adirondack

Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

### B. Complaint

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983. See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel." [4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of charcter [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

> **4**  Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga Disrict Attorney's Office, and the Supreme Court Appellate Division Third department. ** This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts [5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

### C. Discussion [6]

#### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

#### 2. Heck v. Humphrey

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

**\*5** As this Court, citing the District of Connecticut, has set forth:

In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).

[ ]

Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at *3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards,

No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at *7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at *7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/ or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction. [7]

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge" [8] such claims would be barred by judicial immunity.

 *6  "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted); see Positan v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Zavalidroga, 2017 WL 8777370, at *8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " Id. (quoting Mireles, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Ceparano, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " Ceparano, 404 F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." McCray v. Lewis, No. 16-CV-3855 (WFK/ VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official

capacities, the suit is barred by the Eleventh Amendment. See Pacherille v. Burns, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

**\*7** In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." Benyi v. New York, No. 3:20-CV-1463 (DNH/ML), 2021 WL 1406649, at \*5 (N.D.N.Y. Mar. 23, 2021), report and recommendation adopted, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. See Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the Heck issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997)).

Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see also Flagler, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at \*5 (N.D.N.Y. June 11, 2024), report and recommendation adopted, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the Heck barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." Phillips v. New York, No. 5:13-CV-927, 2013 WL 5703629, at \*5 (N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 223 (2d Cir. 2000)). [9]

### III. Conclusion

**\*8** It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have
**FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

**All Citations**

Slip Copy, 2024 WL 4870495

---

### Footnotes

1    The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

2    Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

3    Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    7

4    Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

5    Plaintiff did not provide any transcripts.

6    As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

7    The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a Heck dismissal. The undersigned has included the Heck review for sake of completeness.

8    Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by Rooker-Feldman, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by Younger. See Porter v. Nasci, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), report and recommendation adopted, 2024 WL 3158645 (N.D.N.Y. June 25, 2024) ("Under the Rooker-Feldman doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); see also Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

9    Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. See Dkt. No. 7 (citing 28 U.S.C. § 1441). However, in addition to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. See, e.g., 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See id. § 1446(a).

10    The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

11    If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag

Distinguished by   CNY Fair Housing, Inc. v. Welltower Inc.,   N.D.N.Y.,   February 28, 2022

2011 WL 666340

Only the Westlaw citation is currently available.

United States District Court,

S.D. New York.

Debra HEVNER, Plaintiff,

v.

VILLAGE EAST TOWERS, INC., Barbara McLoughlin and David Baron, Defendants.

No. 06 Civ. 3983(GBD)(FM).

|

Feb. 7, 2011.

*MEMORANDUM DECISION AND ORDER*

GEORGE B. DANIELS, District Judge.

**\*1** *Pro se* Plaintiff Debra Hevner ("Hevner") brings this housing discrimination action pursuant to the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, against defendants Village East Towers, Inc. ("VET"), Barbara McLoughlin, and David Baron (collectively, "Defendants"). [1] Hevner alleges that Defendants, a limited equity cooperative housing development and its officers, failed to provide her reasonable housing accommodations for her depression. Defendants move for summary judgment pursuant to Fed.R.Civ.P. 56.

This Court referred the matter to Magistrate Judge Frank Maas. Magistrate Judge Maas issued a Report and Recommendation ("Report") recommending that the Court grant the motion for summary judgment and dismiss the case.

The Court may accept, reject or modify, in whole or in part, the findings and recommendations set forth within the Report. 28 U.S.C. § 636(b)(1). When there are objections to the Report, the Court must make a *de novo* determination of those portions of the Report to which objections are made. *Id.; see also Rivera v. Barnhart,* 432 F.Supp.2d 271, 273 (S.D.N.Y.2006). The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. *See* Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1)(c). It is not required, however, that the Court conduct a *de novo* hearing on the matter. *See United States v. Raddatz,* 447 U.S. 667, 676 (1980). Rather, it is sufficient that the Court "arrive at its own, independent conclusions" regarding those portions to which objections were made. *Nelson v. Smith,* 618 F.Supp. 1186, 1189–90 (S.D.N.Y.1985) quoting *Hernandez v. Estelle,* 711 F.2d 619. 620 (5th Cir.1983). When no objections to a Report are made, the Court may adopt the Report if "there is no clear error on the face of the record." *Adee Motor Cars, LLC v. Amato,* 388 F.Supp.2d 250, 253 (S.D.N.Y.2005) (citation omitted).

In his Report, Magistrate Judge Maas advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). Plaintiff timely filed an objection to which the Defendant responded. Plaintiff's substantive objections were not meritorious and the new evidence she provided was of no probative value. Therefore, this Court adopts the Report in its entirety.

**Allegations of Discrimination**

Hevner suffers from asthma, anxiety, and "chronic major depression exacerbated by bouts of severe clinical depression," Hevner Dep. at 16:2–3, 14:10–16, 70:19–21. Her principal claim is that VET's failure to consider and to grant her requests for the Skewed Rent Program ("SRP") violated the FHAA's requirement that landlords and sellers provide "reasonable accommodations" for handicapped individuals. *See* 42 U.S.C § 3604(f)(3)(B). Hevner also alleges that VET discriminated against her by making "false claims" against her including (i) falsely claiming that she had not submitted a required income affidavit for 2004; (ii) falsely claiming she owed VET tens of thousands of dollars in 2010; (iii) falsely claiming that she had failed to fill out a window guard form in 2009; (iv) failing to act on her noise complaints; (v) falsely submitting an application for Section 8 housing benefits and listing someone elses name as owner of her apartment.

**\*2** After careful review of the entire record including Plaintiff's voluminous submissions, Magistrate Judge Maas properly concluded that there is no genuine issue of material fact and summary judgment was warranted. Even a pro se litigant cannot overcome a motion for summary judgment by relying on "bald assertion[s], completely unsupported by evidence." *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991).

To prevail on her FHAA discrimination claim, Hevner must show that the landlord "refus[ed] to make reasonable accommodations in rules, policies, practices, or service, when such accommodation may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). A plaintiff may establish discrimination under the FHA under one of three theories: disparate treatment, disparate impact, or failure to make reasonable accommodations. *Reid v. Zackenbaum,* 2005 WL 1993394, at *3 (E.D . N.Y. Aug. 17, 2005) (citing *Tsombanidis v. West Haven Fire Dep't,* 352 F.3d 565, 573 (2d Cir.2003)).

As to her reasonable accommodation claim, Plaintiff must establish:

> (1) that she is handicapped within the meaning of § 3602(h) and defendant knew or should have known of this fact; (2) that an accommodation is necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (3) that such accommodation is reasonable; and (4) that the defendant refused to make the requested accommodation.

*Echeverria v. Krystie Manor, LP,* 2009 WL 857629, at *6 (E.D.N.Y. Mar. 30, 2009) (citing 42 U.S.C. § 3604(f)(3)(B)). However, the FHAA does not require that landlords and sellers provide economic accommodations. *See Salute,* 136 F.3d at 302. The FHAA "addresses the accommodation of *handicaps,* not the alleviation of economic disadvantages that may be correlated with having handicaps." *Id.* at 310 (emphasis added).

Hevner fails to establish that any accommodations are "necessary to afford [her] an equal opportunity to use and enjoy the dwelling." *See id.* Hevner seeks reduced maintenance fees, contending that VET should "waive her arrears from 2002 to 2005 and by provide her with skewed rent beginning in June 2005" because of the financial strain her depression causes. Providing such a remedy would only "remedy her economic status" not provided her with "reasonable accommodations." *See Salute,* 136 F.3d at 301. This is insufficient to state an FHAA claim. *Salute,* 136. F.3d at 302.

Magistrate Judge Maas properly concluded that Hevner would not be entitled to relief under either an intentional discrimination or disparate impact theory. She has not shown that Defendants were motivated by a discriminatory animus in rejecting her requests. Further, Hevner provides no evidence that the administration of the reduced rent program had a discriminatory impact on disabled shareholders as a class.

Magistrate Judge Maas correctly concluded that all her "false claims" discrimination allegations are independent of her requests for reduced rent and do not involve any accommodation of Plaintiff's depression. Such an FHAA claim can only be sustained under an intentional discrimination or disparate impact theory. *See Roffman v. Knickerbocker Plaza Assocs.,* 2008 WL 919613, at *13 (S.D.N.Y. Mar. 31, 2008) (citing *Tsombanidis v.W. Haven Fire Dep't,* 352 F.3d 565, 573 (2d Cir.2003)). There is no evidence in the record that would support either theory. Accordingly, no reasonable jury could find that Defendants' actions were discriminatory.

### Conclusion

**\*3** Defendant's motion for summary judgment is granted. Plaintiff's complaint is dismissed.

SO ORDERED:

### All Citations

Not Reported in F.Supp.2d, 2011 WL 666340

### Footnotes

1    Hevner, filed her complaint pro se and is now currently without counsel, but she was represented by counsel at various points of the proceeding.

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:25-cv-00822-AJB-MJK    Document 6    Filed 07/25/25    Page 43 of 91

Matagrano v. New York State Department of Corrections..., Not Reported in Fed....

2020 WL 7338586

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Matthew John MATAGRANO, [1] Plaintiff,

v.

NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, Central New York

Psychatric Center, New York State Office of Mental Health, Jacqueline Levitt, [2] MD, and Stewart T. Eckert, Defendants.

9:19-CV-00763 (BKS/DJS)

|

Signed 12/13/2020

|

Filed 12/14/2020

**Attorneys and Law Firms**

For Plaintiff: Amy Jane Agnew, Law Office of Amy Jane Agnew, P.C., 24 Fifth Avenue, Suite 1701, New York, NY 10011

For Defendants: Letitia James, Attorney General of the State of New York, Denise P. Buckley, Assistant Attorney General, The Capitol, Albany, New York 12224

**MEMORANDUM-DECISION AND ORDER**

Brenda K. Sannes, U.S. District Judge

**I. INTRODUCTION**

**\*1** Plaintiff Matthew John Matagrano commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), Title II of the Americans With Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq. ("Rehabilitation Act") on June 27, 2019, by filing a pro se civil rights complaint (the "Original Complaint"), (Dkt. No. 1), together with an application for leave to proceed in forma pauperis (the "IFP Application"), (Dkt. No. 2). By Decision and Order filed August 5, 2019, this Court granted Plaintiff's IFP Application and, following review of the Original Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), dismissed some of Plaintiff's claims and some of the named Defendants, and directed service and a response for the claims that survived sua sponte review. (Dkt. No. 4).

On September 25, 2019, Plaintiff filed a pro se amended complaint (the "First Amended Complaint" or "FAC"). (Dkt. No. 9). Following review of the FAC pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the Court found that the following claims survived sua sponte review and required a response: (1) Plaintiff's ADA and Rehabilitation Act claims against Defendants New York State Department of Corrections and Community Supervision ("DOCCS"), Central New York Psychiatric Center ("CNYPC"), and New York State Office of Mental Health ("OMH"); (2) Plaintiff's First Amendment retaliation claims against individual Defendants Stewart T. Eckert, Betty Jo Gabel, Elena Marrone, Jaqueline Levitt, and Brigid McDonald; and (3) Plaintiff's Eighth Amendment medical indifference claims against individual Defendants Margaret Stirk, Eckert, Gabel, Marrone, Levitt, and McDonald. (Dkt. No. 16). On March 5, 2020, Plaintiff, now represented by counsel, filed a motion, (Dkt. Nos. 30-32), for leave to file a second amended complaint (the "SAC"), (Dkt. No. 31-2), which "endeavored to clarify Plaintiff's allegations and causes of action for the Court and parties" and added "a few supplemental allegations to the very end of the complaint" describing events that occurred in October 2019, after the FAC was filed. (Dkt. No. 31, at ¶¶ 4, 6). [3]

Presently before the Court are Plaintiff's motion to amend his complaint, (Dkt. Nos. 30-32), and Defendants' motion: (1) "pursuant to Federal Rule of Civil Procedure 56(a) for an order granting defendants Stewart T. Eckert and Jacqueline Levitt ... summary judgment dismissing [P]laintiff's claims against them in their entirety based on [P]laintiff's failure to exhaust his administrative remedies"; (2) "pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) for an order dismissing [P]laintiff's claims pursuant to [the ADA] against defendants DOCCS, CNYPC, and OMH in their entirety as [P]laintiff has not stated a claim pursuant to the ADA upon which relief may be granted sufficient to overcome the Eleventh Amendment's statutory bar"; and (3) "pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the remainder of the claims in the First Amended Complaint and proposed Second Amended Complaint in their entirety based on [P]laintiff's failure to state a claim upon which relief may be granted," (Dkt. No. 39, at 1-2). Plaintiff has responded to Defendants' motion, (Dkt. Nos. 40-42), and Defendants have submitted a reply, (Dkt. No. 47).

**\*2**  On June 2, 2020, while Plaintiff's motion to amend his complaint and Defendants' motion to dismiss were still pending, the Court granted Plaintiff's request for voluntary dismissal without prejudice of all claims against individual Defendants Stirk, Gabel, McDonald and Marrone pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). (Dkt. No. 44). Therefore, Plaintiff's remaining claims, all of which Defendants seek to dismiss, are: (1) Plaintiff's Eighth Amendment deliberate medical indifference claim against Defendants Eckert and Levitt in their individual capacities, and (2) Plaintiff's ADA and Rehabilitation Act claims against Defendants DOCCS, OMH and CNYPC. (Dkt. No. 31-2, at 30-35). On these claims, Plaintiff seeks compensatory damages, attorneys' fees and costs from all Defendants, as well as punitive damages from Defendants Eckert and Levitt, and does not seek injunctive relief. (*Id.* at 35). [4]

For the reasons set forth below, Plaintiff's motion to amend is granted and Defendants' motion for summary judgment and dismissal is granted in part.

## II. FACTS [5]

### A. Facts Relevant to Plaintiff's Eighth Amendment Claim [6]

Plaintiff is an inmate in the custody of DOCCS, who was incarcerated at Wende Correctional Facility ("Wende") during the events relevant to his claims. [7]  (Dkt. No. 40, at ¶ 1). Plaintiff "suffers from a severe and chronic mental illness, that without psychiatric care limits his functionality" and "has been under psychiatric care and has been prescribed various psychotropic medication(s) [sic] since December of 1986." (*Id.* ¶¶ 34-35). As a result of his illness, Plaintiff "has an approximate[ly] thirty-one year history of self-mutilation and suicide attempts." (*Id.* ¶ 37). Plaintiff has received treatment for his mental illness while in DOCCS custody, and therefore, Defendants DOCCS, CNYPC, OMH and Levitt all "had personal knowledge of Plaintiff's extensive and documented psychiatric history." (*Id.* ¶ 36).

On three occasions prior to September 2017, Wende security staff confiscated Plaintiff's DOCCS-issued shaving razor, then returned it within a few days. (*Id.* ¶ 39). On September 17, 2017, Plaintiff cut himself with the shaving razor, resulting in an extreme amount of blood loss and loss of consciousness. (*Id.* ¶ 38). Following that incident, Plaintiff's shaving razor was confiscated, and from September 18, 2017 to June 23, 2019, Plaintiff did not have a DOCCS-issued razor in his possession. (*Id.* at ¶ 44). Then, on June 23, 2019, security staff at Wende attempted to force Plaintiff to accept a razor, citing a DOCCS policy that "all inmates housed in general population must have a razor, without exception." (*Id.* ¶¶ 43, 46). When Plaintiff attempted to refuse the razor, citing the significant risk the razor posed to his health and safety, he was placed in the Residential Crisis Treatment Program ("RCTP") for observation, despite the fact that at the time, he was not suicidal, homicidal, suffering from hallucinations or posing a threat to himself or others. (*Id.* ¶¶ 45, 47). Plaintiff was discharged from the RCTP the following day. (*Id.* ¶ 48).

**\*3**  On June 24, 2019 [8]  Plaintiff filed a grievance (the "Razor Grievance") with Wende's Inmate Grievance Resolution Committee ("IGRC"), seeking an exemption from Wende's mandatory razor policy and explaining that possessing a razor posed a significant risk of harm to his health and safety. (*Id.* ¶ 14; Dkt. No. 41-24, at 1). IGRC held a hearing on Plaintiff's grievance on

Matagrano v. New York State Department of Corrections..., Not Reported in Fed....

Case 5:25-cv-00822-AJB-MJK    Document 6    Filed 07/25/25    Page 45 of 91

July 16, and on July 23, IGRC sent Plaintiff a written decision denying the grievance and citing Wende's policy requiring inmates to possess state-issued razors. (Dkt. No. 40, at ¶¶ 52, 55; Dkt. No. 41-24, at 2). Plaintiff appealed IGRC's denial to Defendant Eckert, the Superintendent at Wende, who denied the appeal via written decision on July 30, again citing Wende's mandatory razor policy. (Dkt. No. 40, at ¶¶ 56-57; Dkt. No. 41-24, at 3). That same day, Plaintiff appealed the Superintendent's decision to CORC, whose records reflect that they received the appeal on August 13, 2019. (Dkt. No. 40, at ¶¶ 14, 58, 61; Dkt. No. 41-24, at 3; Dkt. No. 39-1, at 12). As of April 7, 2020, CORC still had not issued a decision on Plaintiff's appeal. (Dkt. No. 40, at ¶ 15; Dkt. No. 39-1, at 12). [9] During this period, Plaintiff also advocated for an exemption to the mandatory razor policy by writing letters to CNYPC officials, verbally discussing the policy with a DOCCS Captain, and having a representative from the Legal Aid Society write letters to DOCCS officials, including Defendant Eckert, on his behalf. (Dkt. No. 40, at ¶¶ 50-51, 53-54).

On August 2, 2019 during an examination by Defendant Levitt, Wende's Facility Health Services Director and Plaintiff's primary care provider, Plaintiff told Levitt that he did not want to possess a razor because his impulses to use it to self-harm during periods of high stress were uncontrollable. (*Id.* ¶ 59). Dr. Levitt told Plaintiff to raise his concerns about the razor to Wende's mental health unit, but otherwise took no action with respect to the razor policy. (*Id.* ¶ 60). [10]

Plaintiff's Original Complaint, filed on June 27, 2019—only three days after the date on his Razor Grievance—did not include an Eighth Amendment claim based on Defendants' failure to create an exception to Wende's mandatory razor policy. (Dkt. No. 1; Dkt. No. 40, at ¶ 33). In his FAC, filed on September 25, 2019—more than 30 days after August 13, the date CORC received his appeal of the Razor Grievance—Plaintiff added allegations and claims related to the razor policy. (Dkt. No. 9; Dkt. No. 40, at ¶¶ 62-63). The SAC includes an Eighth Amendment deliberate indifference claim against Defendants Eckert and Levitt, alleging that they had personal knowledge of Plaintiff's mental illness and history of suicide attempts, that Plaintiff raised to both Defendants his concerns that forcing him to possess a state-issued razor endangered him, and that both Defendants' refusal to intervene and create an exception to the razor policy constituted deliberate indifference to Plaintiff's medical needs. (Dkt. No. 41-27, at ¶¶ 250-61).

### B. Facts Relevant to Plaintiff's ADA and Rehabilitation Act Claims [11]

#### 1. Plaintiff's Disability

**\*4**  In addition to his mental illness, Plaintiff suffers from a hearing disability stemming from trauma as a young child. (Dkt. No. 41-27, at ¶ 5). An audiology assessment conducted in September 2013, shortly after Plaintiff entered DOCCS' custody, determined that his hearing capacity was HL 20, meaning he demonstrated "significant hearing impairment." (*Id.* ¶¶ 6, 30). The audiologist recommended that Plaintiff be accommodated with an amplifier, a Teletype device ("TTY"), a phone amplifier, bilateral hearing aids and other accommodating devices based on his individualized assessment of Plaintiff's hearing and functional capabilities. (*Id.* ¶ 38). Subsequently, Plaintiff's most recent assessment in July 2019 determined that his hearing capacity had deteriorated to HL 10, meaning he demonstrated "severe, profound hearing loss." (*Id.* ¶¶ 7, 30, 127-29). In perfect conditions, including small rooms without any ambient noise, Plaintiff can lip read and hear subtly when he is wearing hearing aids that are both in place and operational. (*Id.* ¶ 32). However, when he is in a room with other voices or surrounding sounds, or when he is not wearing hearing aids, Plaintiff is unable to hear well enough to distinguish voices and words. (*Id.* ¶ 33).

Plaintiff wears hearing aids in both ears and relies on a suite of accommodating devices to understand and communicate, including a TTY, a T-COIL induction loop, a telephone amplifier, closed caption television, sound amplification systems, a visual smoke detector, preferred seating, a shake awake alarm, a pocket talker, and the use of American Sign Language ("ASL") to communicate. (*Id.* ¶ 8). DOCCS, CNYPC, OMH and their employees have been aware of Plaintiff's hearing disability throughout his incarceration. (*Id.* ¶ 9).

Case 5:25-cv-00822-AJB-MJK    Document 6    Filed 07/25/25    Page 46 of 91

Matagrano v. New York State Department of Corrections..., Not Reported in Fed....

## 2. Alleged Discrimination by DOCCS

### a. DOCCS' "Call Home" Program

DOCCS allows inmates to take advantage of a "Call Home" program, which allows each inmate a list of up to fifteen people they can call using phones in the facilities, subject only to disciplinary sanctions or other security-related restrictions. (Dkt. No. 41-27, at ¶ 41). The purpose of the program is to encourage contact between the inmate and friends and family at home. (*Id.*). Because using a normal telephone is "almost impossible" for Plaintiff due to his hearing disability, he is only able to take advantage of the Call Home program by using a TTY, a device "whereon he types words and an operator 'reads' them aloud to the person on the other line," and "[t]he operator then types the words the other person says back to [Plaintiff] and the words appear in typed form for him to read." (*Id.* ¶¶ 34, 42).

Wende possesses five TTY devices: one in D-23 Company, a housing unit in the facility for sensorially disabled inmates; one in D-Block yard, where the sensorially disabled prisoners have recreation time; one in the Gym; one in the Ballfield; and one in the Honor Block. (*Id.* ¶ 43). Inmates do not have independent access to the TTYs; rather, because all the TTYs are kept in locked cabinets for their protection, a hearing-impaired inmate must ask a corrections officer to unlock a TTY in order to use it. (*Id.* ¶ 44).

In July 2015 and November 2015, class counsel for *Clarkson v. Coughlin* [12] wrote to DOCCCS' general counsel's office advising that the TTY devices at Wende were inoperable, preventing hearing-impaired inmates like Plaintiff from utilizing the Call Home program, but no response was received. (*Id.* ¶¶ 45-48). On December 22, 2015, Plaintiff himself wrote to DOCCS' ADA Coordinator complaining that Wende's TTY devices were broken, but received no response. (*Id.* ¶¶ 53-54).

On June 6, 2016, Plaintiff's right to use the TTYs was revoked, rendering him unable to participate in the Call Home program. (*Id.* ¶ 56). Two days later, Plaintiff filed a grievance challenging this revocation, which was denied, submitted an appeal to the Superintendent, which was also denied, and ultimately appealed to CORC. (*Id.* ¶¶ 61, 65). In addition to the grievance process, Plaintiff engaged in other efforts to restore his access to the TTYs, including writing a letter to Wende's Nurse Administrator, (*Id.* ¶ 57), submitting multiple new reasonable accommodation requests, (*id.* ¶¶ 62-64, 69), meeting with a Sensorial Disabled Unit employee, (*id.* ¶ 66), obtaining another audiogram which confirmed his hearing ability as HL 20, (*id.* ¶ 67), and filing a complaint with the U.S. Department of Justice's Office of Civil Rights, (*id.* ¶ 68). Finally, on September 9, 2016, Plaintiff's permission to use the TTYs was reinstated. (*Id.* ¶ 70). Subsequently, CORC issued a decision upholding the Superintendent's decision on Plaintiff's grievance and stating that "the grievant has been approved to use the TTY since 8/31/16." (*Id.*). Plaintiff alleges that, as a result of DOCCS' revocation of his TTY access, he was unable to use the TTYs to take advantage of the Call Home program from June 6, 2016 through August 31, 2016. (*Id.* ¶ 71).

*5 On February 13, 2018, upon his return from an inpatient stay at CNYPC, Plaintiff was once again approved for use of TTYs, along with other reasonable accommodations. (*Id.* ¶ 86). On April 20, 2018, Plaintiff wrote to Wende's Deputy Superintendent of Programs informing her that the TTY devices in the D-block housing area and yard were once again not working. (*Id.* ¶ 87). On April 23, 2018, Plaintiff received a response stating that "the TTY is currently working"; however, in fact, the TTYs were not repaired until April 25, 2018. (*Id.* ¶ 88). During this period, Plaintiff was denied access to other operable TTYs in the facility, while inmates without hearing disabilities could make calls during any recreation or free time. (*Id.*).

Even during periods when the TTYs were operational, Plaintiff's access to them was sometimes prevented by security personnel who refused to unlock the box upon his request during hours where they were supposed to available. (*Id.* ¶¶ 89-97). On June 13, 2018 and again on July 5, 2018, Plaintiff filed grievances citing specific instances in which this occurred, both of which were denied by the IGRC, appealed to the Superintendent and then to CORC, and ultimately denied on appeal, with those denials

Case 5:25-cv-00822-AJB-MJK    Document 6    Filed 07/25/25    Page 47 of 91

Matagrano v. New York State Department of Corrections..., Not Reported in Fed....

relying on allegedly false statements by correctional officers claiming that Plaintiff had not, in fact, been denied access. (*Id.* ¶¶ 91-97).

On August 20, 2018, Plaintiff was told by a correctional officer that his name had been crossed off the list of inmates approved to use TTYs, and that he therefore could no longer use them. (*Id.* ¶ 101). Based in part on a memo written to another inmate, Plaintiff alleges that Wende's Deputy Superintendent of Mental Health was arbitrarily and improperly basing TTY access approvals on "nothing more than audiology results," without conducting an individualized assessment of each inmate's needs, and had revoked Plaintiff's access solely based on his HL20 designation. (*Id.* ¶¶ 99-100, 112). On August 21, the same officer advised Plaintiff that he spoke with Elena Marrone, a translator at Wende responsible for working with disabled inmates, and she confirmed that Plaintiff was not authorized to use the TTY. (*Id.* ¶ 102). However, when Plaintiff spoke with Marrone that same day, she told him, allegedly falsely, that she had not revoked Plaintiff's access to the TTY, and suggested that only the medical department would have the authority to revoke his access. (*Id.* ¶¶ 103-04). Later that day, Plaintiff received a letter stating that "a new approval sheet has been given to D Block with your name on it," but the following day, Plaintiff received a letter stating, "TTY accommodation approval or denial is pending the results of your upcoming medical appointment." (*Id.* ¶¶ 105-06). Plaintiff filed a grievance challenging the revocation of his TTY accommodation, and on September 12, IGRC issued a response stating, allegedly falsely, that Plaintiff had been reevaluated regarding his hearing loss and found not eligible for the TTY. (*Id.* ¶¶ 108-12). Plaintiff appealed the IGRC response, his appeal was denied, and he appealed to CORC. (*Id.* ¶¶ 113-14). Finally, after the *Clarkson* class counsel wrote a letter to DOCCS' *Clarkson* ombudsperson on his behalf, Plaintiff was informed on October 29, 2018 that his access to the TTYs had been reinstated. (*Id.* ¶¶ 115-18). At that point, Plaintiff had been denied access to the TTYs for over two months. (*Id.* ¶ 119).

In May and June 2019, Plaintiff submitted further letters and yet another grievance complaining that the TTY devices in D-Block yard and the ball field were broken. (*Id.* ¶¶ 120-23). He received a response from IGRC on June 7, 2019 saying that the "TTY in the ball field has a problem with the wiring and maintenance has been made aware via work order." (*Id.* ¶ 124). At that time, "[n]o effort had been made to fix the TTY in ball field since August 2018," and the IGRC's response did not address the broken TTY in D-Block yard. (*Id.* ¶ 125). Plaintiff appealed to Eckert. (*Id.* ¶ 126).

### b. Ban on ASL in the Mess Hall

**\*6**  On or around November 20, 2015, Plaintiff was advised by a correctional officer at Wende that he was not allowed to use ASL to communicate in the mess hall. (Dkt. No. 41-27, at ¶ 49). Plaintiff claims that this ban on using ASL in the mess hall discriminates against hearing-impaired inmates, since inmates without hearing disabilities are allowed to communicate in any language when in the mess hall. (*Id.* ¶ 50). Plaintiff filed a grievance and proceeded through the three-step grievance process mandated by DOCCS, until CORC ultimately issued a final decision denying his grievance on February 3, 2016. (*Id.* ¶¶ 49, 51). Plaintiff alleges that this "violation [of the ADA and Rehabilitation Act] was on-going thereafter as at no time were [Plaintiff] and his hearing-impaired and deaf cohort allowed to communicate with ASL in the mess hall of Wende without risk of receiving a disciplinary ticket." (*Id.* ¶ 52).

### c. Lack of Access to the "Resource Room"

Plaintiff also faced difficulties accessing Wende's "resource room" for hearing-impaired inmates, which contained T-Coils, pocket talkers and other aids and devices designed to accommodate such inmates. (Dkt. No. 41-27, at ¶ 171). On April 21, 2017, Plaintiff attended an Inmate Liaison Committee meeting, where he informed DOCCS officials, including Defendant Eckert, that inmates with hearing disabilities were unable to access the resource room because it was under lock and key and there was no staff coverage to facilitate access. (*Id.* at ¶¶ 75, 77). In response to his concerns, Plaintiff received a letter from DOCCS' general counsel's office advising him that, "according to facility staff, deaf/hard of hearing inmate[s]" were being "accommodated" by a Wende employee, but in fact, no such access to the resource room was provided. (*Id.* ¶¶ 78-79). On May 16, 2017, class

counsel for the *Clarkson* case wrote DOCCS' general counsel's office raising concerns about hearing-impaired inmates' lack of access to the resource room, but Wende staff continued to argue that "they did not have the staff coverage and security staff did not have the keys to the resource room to provide access to hard of hearing/deaf inmates." (*Id.* ¶¶ 75-76). On July 26, 2017, Plaintiff received a memorandum stating that, from July 2017 onward, access to the Resource Room would be by "call out" only, a process which "generally takes days to request and be granted." (*Id.* ¶¶ 80-81).

On July 27, 2017, Plaintiff filed a grievance regarding his inability to access the resource room to obtain replacement batteries for his hearing aids and access to other auxiliary aids, which was denied by IGRC with the explanation that there was a shortage of staff in Wende's Sensorial Disability Program unit. (*Id.* ¶¶ 82-83). Plaintiff appealed the grievance to the Superintendent, and then to CORC.[13] (*Id.* ¶ 84). On July 6, 2018, Plaintiff filed another grievance alleging that the resource room was closed from June 25, 2018 to June 29, 2018 and July 2, 2018 to July 6, 2018, denying Plaintiff access to accommodations like a T-Coil, Pocket talker and other aids and devices. (*Id.* ¶ 171). Plaintiff alleges that, despite limited staffing, visually impaired inmates were being given full access to their resource room, while hearing impaired inmates were not. (*Id.* ¶ 173). Both the IGRC and the Superintendent denied the appeal, and Plaintiff appealed to CORC.[14] (*Id.* ¶ 172).

### d. Failure to Provide Replacement Hearing Aid Batteries

Plaintiff also alleges several incidents in which DOCCS failed to timely provide him with replacement batteries for his hearing aids. On June 6 and June 7, 2019, Plaintiff requested "sick call" to obtain replacement batteries, but no one came to take him to sick call. (Dkt. No. 41-27, at ¶ 141). Plaintiff could not request sick call on June 8 and 9, as those dates fell on a weekend; however, on June 8, Plaintiff sent a letter to Wende's Deputy Superintendent of Health informing her of his failed attempts to obtain replacement batteries. (*Id.* ¶¶ 141-42). Plaintiff continued to request sick call on June 10 and 11, to no avail. (*Id.* ¶ 147). At a scheduled appointment with Defendant Levitt on June 10, Plaintiff informed her that he had been without batteries for five days and requested replacements, but Levitt did not give him replacements, and instead told him to make a request through the sick call process. (*Id.* ¶¶ 143-45). On June 10, Plaintiff filed a formal grievance. (*Id.* ¶ 146). On June 11, Plaintiff wrote to Defendant Eckert and also complained to prison officials that he saw in person, who advised him to write to Wende's Health Services department. (*Id.* ¶¶ 147-49). Plaintiff was never taken to sick call for replacement batteries, but on June 12, Plaintiff was finally given replacement batteries by a correctional officer in D-Block. (*Id.* ¶ 152). The next day, Plaintiff received a response from IGRC stating incorrectly that "grievant was seen at sick call on 6/11/19 and given replacement batteries"; Plaintiff appealed to the Superintendent and then to CORC complaining of his difficulties obtaining replacement batteries through the ordinary sick call process. (*Id.* ¶¶ 150-51, 153). By the time he obtained replacement batteries, Plaintiff had been without batteries or the ability to hear for six days. (*Id.* ¶ 152).

**\*7** On August 3, 2019, Plaintiff's hearing aids were confiscated at the direction of Defendant Levitt, in connection with his transfer to the RCTP for treatment for a short-term mental health crisis. (*Id.* ¶¶ 154-55). On August 5, Plaintiff was released from the RCTP, but his hearing aids were not returned to him. (*Id.* ¶¶ 156-57). On August 9, Plaintiff attempted to retrieve his hearing aids through the sick call program, but no one in the medical department could find Plaintiff's hearing aids. (*Id.* ¶¶ 158-59). Plaintiff wrote letters to Defendant Levitt on August 9 and to Defendant Eckert on August 14 requesting assistance finding his hearing aids, but received no response to either letter. (*Id.* ¶¶ 160-62). On August 16, Plaintiff filed a grievance requesting that the hearing aids be immediately returned or that he be immediately scheduled to receive new hearing aids. (*Id.* ¶ 163). On August 19, Plaintiff informed Levitt in person that he did not have his hearing aids, but she "did nothing." (*Id.* ¶ 164). On August 30, 2019, IGRC responded to Plaintiff's grievance, stating that the hearing aids and batteries had been found and would be provided to Plaintiff at that day's sick call. (*Id.* ¶ 165). However, Plaintiff did not see anyone in the medical department until September 3, when Defendant Levitt returned his rubber hearing aid molds and batteries, but not the actual hearing aids. (*Id.* ¶ 166). As his actual hearing aids were still missing, Plaintiff appealed IGRC's response to his grievance to Defendant Eckert and then to CORC. (*Id.* ¶ 169). By the time Defendant Levitt submitted a request for Plaintiff to be seen at the audiology clinic and receive new hearing aids, he had been without hearing aids and unable to hear for over a month. (*Id.* ¶¶ 167-68).

Case 5:25-cv-00822-AJB-MJK    Document 6    Filed 07/25/25    Page 49 of 91

Matagrano v. New York State Department of Corrections..., Not Reported in Fed....

### e. Denial of Reasonable Accommodations for Program Committee Call-Out

On September 5, 2019 Plaintiff wrote to Marrone advising her that he had not been added to call out for the Resource Room, that he needed a Hard of Hearing sign for over his cell, and that the TTY device in D-Block yard was malfunctioning. (Dkt. No. 41-27, at ¶ 132). On September 10, Plaintiff saw Marrone in person, inquired as to the status of his requests, told her he did not have his bilateral hearing aids, and informed her that he would need a pocket talker for his mandatory Program Committee call-out. (*Id.* ¶¶ 133-34). Despite his request, no Pocket Talker was provided to Plaintiff, and no response was ever received to his September 5 letter. (*Id.* ¶ 135-36). As a result, Plaintiff could not attend his mandatory Program Committee call-out to participate in the selection of his programming, resulting in him being placed in a program by default. (*Id.* ¶ 135). The Complaint does not allege whether Plaintiff ever filed a grievance with respect to these incidents.

### 3. Alleged Discrimination by OMH and CNYPC

CNYPC is a facility that provides mental health services to people incarcerated in the New York State and County Correctional Systems, including DOCCS. (Dkt. No. 41-27, at ¶ 21). CNYPC is operated by OMH, the New York state agency responsible for providing all mental health services and programming for people incarcerated in DOCCS facilities. (*Id.* ¶ 20). Both CNYPC and OMH receive federal and state funding to support their programs and services. (*Id.* ¶¶ 20-21).

Between October 5, 2017 and January 31, 2018, Plaintiff was hospitalized at CNYPC following his September 17, 2017 attempt to commit suicide with a DOCCS-issued razor. (*Id.* ¶¶ 176-83, 185). [15] Upon arrival at CNYPC, Plaintiff informed CNYPC staff of his hearing disability and requested accommodations, including TTY usage for phone calls, a phone amplifier, closed-captioned programming for video and a sound amplifier. (*Id.* ¶¶ 184, 186). CNYPC also had access to Plaintiff's medical records from DOCCS, which included his audiogram results and records of the accommodations DOCCS had approved for him. (*Id.* ¶ 189). CNYPC provided Plaintiff with replacement batteries for his hearing aids, but did not provide him with any of the other accommodations he had requested. (*Id.* ¶ 187).

As a result, during his entire period of hospitalization at CNYPC, Plaintiff could not meaningfully participate in "Treatment Mall" activities (group therapy) or therapeutic programming exercises that other patients without hearing disabilities could participate in. (*Id.* ¶ 191). He also could not understand the videos shown during therapeutic programming sessions, since they did not have closed captioning and he did not have the necessary equipment (such as a pocket talker or a sound amplification system) that would have allowed him to watch the videos without closed captioning. (*Id.*). Plaintiff claims that the failure of OMH and CNYPC to provide him with reasonable accommodations for his hearing disability, and his resulting exclusion from the therapeutic programming offered by CNYPC and OMH, violated the ADA and the Rehabilitation Act. (*Id.* ¶¶ 269-76).

## III. MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Standard of Review

**\*8**  Defendants move for summary judgment, pursuant to Fed. R. Civ. P. 56(a), on Plaintiff's Eighth Amendment claim against Defendants Eckert and Levitt on the ground that Plaintiff has failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"). Under Rule 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Jeffreys*

*v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (summary judgment appropriate where the nonmoving party fails to " 'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir.2010))).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250, 106 S.Ct. 2505; *see also Celotex*, 477 U.S. at 323-24, 106 S.Ct. 2548; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials ... cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

### B. Legal Standard for Exhaustion of Remedies

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

To properly exhaust his administrative remedies, an inmate must complete the administrative review process in accord with the applicable state procedural rules.[16] *Jones v. Bock*, 549 U.S. 199, 218-19, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). The PLRA contains one "textual exception to mandatory exhaustion." *Ross v. Blake*, ––– U.S. ––––, 136 S. Ct. 1850, 1858, 195 L.Ed.2d 117 (2016). "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Second Circuit has explained that "an administrative remedy may be unavailable when": (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123-24 (2d Cir. 2016) (quoting *Ross*, 136 S. Ct. at 1859-60).

**\*9** Because "[f]ailure to exhaust administrative remedies is an affirmative defense," it is "not a pleading requirement." *Id.* at 122, 126 S.Ct. 2378. Thus, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* (quoting *Jones*, 549 U.S. at 216, 127 S.Ct. 910). "However, a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Id.*

### C. Discussion

Defendants argue that Plaintiff's Eighth Amendment claim against Defendants Eckert and Levitt concerning the razor policy must be dismissed because, at the time he filed his Original Complaint on June 27, 2019, he had not completed the three-step grievance process mandated by DOCCS with respect to this claim. (Dkt. No. 39-3, at 12-15). Plaintiff contends that, because he asserted this claim for the first time in his FAC filed in September 2019, the Court should examine whether his remedies

Matagrano v. New York State Department of Corrections..., Not Reported in Fed....

Case 5:25-cv-00822-AJB-MJK    Document 6    Filed 07/25/25    Page 51 of 91

were exhausted as of *that* complaint's filing, not as of the Original Complaint's filing. (Dkt. No. 42, at 18-19). Plaintiff further contends that, at the time he filed his FAC, CORC's mandatory 30-day timeline for issuing a decision on his appeal had passed, rendering the process "unavailable" to him and permitting him to file suit. (*Id.* at 19-23).

As an initial matter, Plaintiff's argument that the Court should look to the date of the FAC, rather than the Original Complaint, in evaluating the exhaustion question is unavailing. Plaintiff relies on a body of case law suggesting that the "PLRA does not bar a prisoner's motion for leave to supplement his pleading, pursuant to Rule 15(d), to set out any transaction, occurrence, or event that happens after the date of the pleading to be supplemented, as long as the prisoner has exhausted his administrative remedies related to that transaction, occurrence, or event, properly, prior to making such a motion." *Tolliver v. Malin*, No. 12-cv-971, 2014 WL 1378447, at *9, 2014 U.S. Dist. LEXIS 47970, at *23 (S.D.N.Y. April 4, 2014); *see also Anderson v. Spizziota*, No. 11-cv-5663, 2016 WL 11480707, at *29 n.21, 2016 U.S. Dist. LEXIS 18600, at *100 n.2 (E.D.N.Y. Feb. 12, 2016) (citing *Tolliver* with approval); *Miller v. Annucci*, No. 17-cv-4698, 2019 WL 4688539, at *11-12, 2019 U.S. Dist. LEXIS 165759, at *31-36 (S.D.N.Y. Sept. 26, 2019) (following *Tolliver* in ruling on a plaintiff's motion for leave to amend pursuant to Fed. R. 15(a)). However, the events giving rise to Plaintiff's Razor Grievance, and thus Plaintiff's Eighth Amendment claim, did not occur "after the date of the pleading to be supplemented"; the Wende officials forced Plaintiff to accept a DOCCS-issued razor, and Plaintiff submitted his Razor Grievance to the IGRC, *before* the Original Complaint was filed on June 27, 2019. Therefore, the ordinary rule that "a post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced" applies. *Shepherd v. Lempke*, No. 10-cv-1524, 2017 WL 1187859, at *3, 2017 U.S. Dist. LEXIS 48054, at *6-8 (N.D.N.Y. Mar. 30, 2017) (affirming magistrate judge's conclusion that "[w]hile some circuits ... have permitted plaintiffs to litigate the causes of action that were newly included in an amended complaint and fully exhausted by the time the plaintiffs filed the amended complaint, the Second Circuit squarely addressed those facts in [*Neal v. Goord*, 267 F.3d 116 (2d Cir. 2001)] and concluded otherwise"). Because Plaintiff had not exhausted his administrative remedies with respect to his Eighth Amendment claim at the time he commenced this action, that claim must be dismissed on exhaustion grounds.

**\*10**  At the same time, given that Plaintiff now appears to have completed the three-step grievance process with respect to the Razor Grievance filed in June 2019, he need not wait until CORC issues a decision on his appeal before bringing his claim, at least to the extent his claim is based on the same facts that form the basis of the Razor Grievance. Until very recently, District Courts in this Circuit were divided as to whether, and when, "delay by the CORC in issuing a timely decision to a prisoner's grievance renders exhaustion unavailable" as defined by the Supreme Court and the Second Circuit. *Bowie v. Woodruff*, No. 18-cv-00266, 2019 WL 5445519, at *1, 2019 U.S. Dist. LEXIS 183609, at *3-4 (N.D.N.Y. Oct. 23, 2019) (collecting cases). However, the Second Circuit has now definitively resolved this question, holding unequivocally that:

> [B]ecause the DOCCS Inmate Grievance Procedure imposes a mandatory deadline for the CORC to respond, an inmate exhausts administrative remedies when he follows the procedure in its entirety but the CORC fails to respond within the 30 days it is allocated under the regulations. We decline to impose a "reasonableness" requirement found nowhere in the text, which would leave inmates—and courts—to blindly speculate how long one must wait before filing suit.

*Hayes v. Dahlke*, 976 F.3d 259, 270 (2d Cir. 2020). Assuming CORC still has not issued a decision on Plaintiff's appeal (in which case Plaintiff's administrative remedies with respect to the Razor Grievance would now be exhausted in any event), CORC has now exceeded their mandatory 30-day deadline for doing so by well over a year. Under *Hayes*, this delay clearly renders the exhaustion process "unavailable" to Plaintiff.

Therefore, to the extent Plaintiff's claim is based on the same facts underlying the Razor Grievance, Plaintiff is free to reinstitute his claim in Court by filing a new and separate action. *See Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004) (noting that where a plaintiff fails to exhaust administrative remedies, and the defect can be cured, dismissal without prejudice is proper).

Case 5:25-cv-00822-AJB-MJK    Document 6    Filed 07/25/25    Page 52 of 91

Matagrano v. New York State Department of Corrections..., Not Reported in Fed....

## IV. MOTION TO DISMISS

### A. Standard of Review

Defendants move to dismiss Plaintiff's ADA and Rehabilitation Act claims against Defendants DOCCS, OMH and CNYPC pursuant to Fed. R. Civ. P. 12(b)(6). [17]  To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.' " *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.' " *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

 **\*11**  As to Plaintiff's motion to amend his complaint, Defendants' position is that "the claims raised in [P]laintiff's proposed Second Amended Complaint should be dismissed for the reasons discussed in [their] motion [to dismiss] in the event that the court grants [P]laintiff's motion for leave to file a Second Amended Complaint." (Dkt. No. 39, at 2 n.1). As Defendants' only ground for opposing Plaintiff's motion to amend is that amendment is "futile" because the SAC fails to state a claim on which relief could be granted, (Dkt. No. 39-3, at 27), the Court will review the allegations set forth in the SAC for purposes of Defendants' motion, and will grant Plaintiff's motion to amend to the extent that his claims as alleged in the SAC survive dismissal.

### B. Legal Standards for ADA and Rehabilitation Act Claims

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A qualified individual with a disability is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices ... meets the essential eligibility requirements for ... participation in programs or activities provided by a public entity." *Id.* § 12131(2). A public entity includes a state or local government body or any instrumentality thereof. *Id.* § 12131(1). Similarly, section 504 of the Rehabilitation Act provides, in pertinent part, that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" receiving federal financial support. 29 U.S.C. § 794(a).

Both the ADA and the Rehabilitation Act "prohibit discrimination against qualified disabled individuals by requiring that they receive 'reasonable accommodations' that permit them to have access to and take a meaningful part in public services and public accommodations." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004), *corrected*, 511 F.3d 238 (2d Cir. 2004). The ADA defines "discriminate" as, inter alia, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless [the provider of the service] can demonstrate that the accommodation would impose an undue hardship on" its operations. 42 U.S.C. § 12112(b)(5)(A). Similarly, the Rehabilitation Act provides that "an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers ... [T]o assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." *Alexander v. Choate*, 469 U.S. 287, 301, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985).

### C. Discussion

Case 5:25-cv-00822-AJB-MJK    Document 6    Filed 07/25/25    Page 53 of 91

Matagrano v. New York State Department of Corrections..., Not Reported in Fed....

Defendants raise an Eleventh Amendment defense to Plaintiff's ADA claims for monetary damages, but do not raise a similar defense with respect to Plaintiff's Rehabilitation Act claims.[18] (Dkt. No 39-3, at 15-19). "[I]f Plaintiff fails to allege an actionable ADA violation at the outset, then questions of sovereign immunity are irrelevant." *Colón v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 15-cv-7432, 2017 WL 4157372, at *6, 2017 U.S. Dist. LEXIS 151035, at *16 (S.D.N.Y. Sept. 15, 2017). Therefore, the Court will first determine whether the SAC states prima facie claims under the ADA and the Rehabilitation Act. If the Court finds that the SAC does state a prima facie ADA claim, the Court will then turn to the question of whether that claim is barred by the Eleventh Amendment.

### 1. Prima Facie Case

**\*12**  "As the standards for actions under [Title II] of the ADA and the Rehabilitation Act are generally equivalent, [the Court analyzes] such claims together" for purposes of determining whether the SAC has stated a prima facie claim. *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 187 (2d Cir. 2015) (citing *Harris v. Mills*, 572 F.3d 66, 73-74 (2d Cir. 2009)). "To establish a prima facie violation under these acts, a plaintiff must demonstrate (1) that [ ]he is a qualified individual with a disability; (2) that the defendants are subject to one of the Acts; and (3) that [ ]he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disability." *Id.* (quoting *Powell*, 364 F.3d at 85) (internal quotation marks omitted). "Discrimination under the third prong can include 'failure to make a reasonable accommodation' for the inmate." *McFadden v. Noeth*, 827 F. App'x 20, 28 (2d Cir. 2020) (quoting *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003)).

For purposes of the present motion, there is no dispute that the SAC sufficiently alleges that Plaintiff is a qualified individual with a disability, (Dkt. No. 41-27, at ¶¶ 5-9, 30-36), that DOCCS, OMH and CNYPC are all state agencies and are thus "public entities" for purposes of the ADA, (*id.* ¶¶ 19-21, 272), and that DOCCS, OMH and CNYPC all receive federal funding that subjects them to the Rehabilitation Act, (*id.* ¶¶ 19-21, 272). Defendants argue primarily that the allegations in the SAC are insufficiently detailed to support a finding that Defendants discriminated against Plaintiff by reason of his disability, for purposes of either statute. (Dkt. No. 39-3, at 17-19, 25-26; Dkt. No. 47, at 13-14).

### a. Claims against DOCCS

The Court finds that the SAC sufficiently alleges a prima facie claim of discrimination against DOCCS under the ADA and the Rehabilitation Act. Plaintiff alleges that, for periods spanning months at a time in 2015, 2016 and 2018, he was effectively denied access to DOCCs' "Call Home" program because of DOCCs' failure to fix the broken TTY devices he needed to make phone calls despite repeated requests, DOCCs' arbitrary and improper revocations of his right to use these devices, and correctional officers' refusal to provide him with access to the devices at times when non-disabled prisoners were free to make phone calls. *See* Section II.B.2.a *supra* (detailing relevant factual allegations); *see, e.g., Bartshe v. Comm'r of Vermont Dep't of Corr.*, No. 18-cv-166, 2020 WL 4754971, at *3-4, 2020 U.S. Dist. LEXIS 147701, at *8-12 (D. Vt. July 17, 2020) (denying summary judgment to the defendants on a prisoner's ADA claim where factual issues existed regarding the plaintiff's access to TTY devices and the effectiveness of other reasonable accommodations designed to give him equal access to telecommunications); *Fowler v. Dep't of Corr.*, No. 18-cv-01635, 2019 WL 2176304, at *4, 2019 U.S. Dist. LEXIS 84307, at *9-10 (D. Conn. May 20, 2019) (finding that a prisoner's allegations that correctional officers denied him sufficient TTY access stated an ADA claim for failure to reasonably accommodate and survived sua sponte review).

Plaintiff also alleges that, from approximately November 2015 through the remainder of his incarceration at Wende, he was barred from using ASL to communicate while in the mess hall, while other non-disabled inmates were allowed to communicate in any language. *See* Section II.B.2.b *supra* (detailing relevant factual allegations). Especially in light of the fact that Plaintiff allegedly struggles to distinguish voices and words in crowded, noisy rooms even with hearing aids, (Dkt. No. 41-27, at ¶ 33),

it is plausible to infer that this effectively deprived him of the basic right to communicate with other inmates that non-disabled inmates enjoy.

**\*13**  Plaintiff further alleges that, during specific periods in 2017 and 2018, he was denied access to Wende's "resource room" for hearing-impaired inmates and thus deprived of T-Coils, pocket talkers and other aids and devices necessary to accommodate Plaintiff's disability. *See* Section II.B.2.c *supra* (detailing relevant factual allegations). From these allegations, it is reasonable to infer that Plaintiff's inability to access the resource room at least temporarily prevented him from obtaining equipment that he was entitled to, and that he needed, in order to participate in Wende's programs and services on equal footing with non-disabled inmates. Furthermore, while DOCCS employees argued to Plaintiff that they were unable to provide him with full access to the resource room due to inadequate staffing, they allegedly were able to ensure that a different class of disabled inmates—visually impaired inmates—had full access to *their* resource room despite these staffing concerns, while failing to ensure that hearing-impaired inmates like Plaintiff received their necessary accommodations. (Dkt. No. 41-27, at ¶ 172-73).

Plaintiff also alleges that, for six days in June 2019, he was not taken to sick call to receive replacement batteries for his hearing aids despite repeated requests, and that in August 2019, he was again deprived of the ability to hear for over a month when Defendants confiscated his hearing aids, lost them, and failed to timely provide him with new ones. *See* Section II.B.2.d *supra* (detailing relevant factual allegations). Given Plaintiff's allegations that he cannot hear without the use of hearing aids, (Dkt. No. 41-27, at ¶¶ 31-33), these allegations suggest that Defendants' failure to timely ensure that he had working hearing aids deprived him, at least temporarily, of the accommodations he needed to be able to fully participate in Wende's programs and services. *See McFadden*, 827 F. App'x at 28 (finding that allegations regarding defendants' failure to provide the plaintiff with working hearing aids sufficiently stated a claim under the ADA by alleging that the plaintiff "was denied access to plausible accommodations ... which would have mitigated [his] impairment and permitted him to meaningfully participate in normal programs and activities"); *Degrafinreid*, 417 F. Supp. 2d at 411-13 (finding allegations that correctional officers confiscated and destroyed the plaintiff's hearing aids, and then delayed replacing them for fourteen months, stated a claim under both the Eighth Amendment and the ADA).

Finally, Plaintiff alleges that, in September 2019, he was not provided with a pocket talker that he needed to participate in his mandatory Program Committee call-out, resulting in him being unable to select his own programming and being placed in a program by default. *See* Section II.B.2.e *supra.* He also alleges that he failed to receive other reasonable accommodations during this period. *Id.*

Collectively, these allegations meet Plaintiff's burden, at the pleading stage, to state a prima facie claim that he was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disability," for purposes of both the ADA and the Rehabilitation Act. *Dean*, 804 F.3d at 187 (quoting *Powell*, 364 F.3d at 85). The cases Defendants rely on do not compel a different conclusion. Each of the cases Defendants cite reflect instances where plaintiffs failed to allege that they were excluded from any prison program or activity or treated differently than other similarly situated inmates because of their disability, where their claims were based on inadequate medical treatment rather than disability-based discrimination, where they were granted accommodations that were different from the ones they requested but were nonetheless reasonable, or where the discrimination they faced was based on factors other than their disability. [19]  By contrast, here, Plaintiff has alleged detailed facts suggesting that, at certain times, DOCCS failed to provide him with accommodations such as replacement hearing aid batteries, access to TTY devices, and access to other accommodations in the resource room that were necessary for him to fully participate in Wende's programs and services. Moreover, he has pointed to specific services, programs and benefits Wende offers to inmates that, at times, he was prevented from accessing due to DOCCS' failure to accommodate his disability, including the "Call Home" program, the right to communicate with other inmates in the mess hall, and a programming committee call-out.

**\*14**  Defendants also rely on *Ashcroft v. Lee*, No. 17-cv-0398, 2017 WL 8895116, 2017 U.S. Dist. LEXIS 177235 (N.D.N.Y. Oct. 24, 2017), *report and recommendation adopted* 2018 WL 910569, 2018 U.S. Dist. LEXIS 24829 (N.D.N.Y. Feb. 15, 2018), to argue that Plaintiff's allegations that certain DOCCS employees retaliated against him for filing grievances "cannot form the

basis for [P]laintiff's ADA claims against DOCCS, CNYPC, or OMH." (Dkt. No. 39-3, at 17-18, 26; Dkt. No. 47, at 10-11). In *Ashcroft*, the Court found, based on exhibits the plaintiff attached to the complaint, that many of his requests for reasonable accommodations for his vision impairment had been denied for valid, nondiscriminatory reasons, and that "[w]hile plaintiff [also] complain[ed] that some of the accommodations he was granted were, in practice, denied to him or otherwise inadequate," the complaint suggested that "the denial of accommodations was the result of retaliatory animus by certain prison officials because plaintiff filed requests for accommodation," and there were no allegations "plausibly suggesting a causal connection between plaintiff's disability and the denial of accommodations." *Ashcroft*, 2017 WL 8895116, at *4-5, 2017 U.S. Dist. LEXIS 177235, at *11-14. The Court disagrees that the *Ashcroft* court's conclusion applies to bar Plaintiff's claims here. Here, Plaintiff has pled specific and concrete facts allowing a reasonable inference that, due to the failure of DOCCS and its employees to consistently and properly give him access to reasonable accommodations for his hearing disability, he was unable to fully "participate in or benefit from" the "services, programs, or activities" offered by the Wende facility. *Dean*, 804 F.3d at 187 (quoting *Powell*, 364 F.3d at 85). This is all he need do to make out a prima facie case under the ADA and the Rehabilitation Act. At least at this stage, the fact that certain actions by particular DOCCS employees may have been motivated in part by factors other than discriminatory animus toward Plaintiff's disability—such as a desire to retaliate against Plaintiff for filing grievances—does not defeat his prima facie case. [20]

For the foregoing reasons, the Court finds that the SAC's allegations sufficiently state a prima facie claim against DOCCS under the ADA and the Rehabilitation Act.

### b. Claims against OMH and CNYPC

The SAC also states a prima facie claim against OMH and CNYPC under the ADA and the Rehabilitation Act. Plaintiff alleges that, during his hospitalization at CNYPC from October 2017 through January 2018, these Defendants failed to provide Plaintiff with a slate of reasonable accommodations he requested for his hearing disability. *See* Section II.B.3 *supra* (detailing relevant allegations). He further alleges that the only reasonable accommodation these Defendants provided him with was replacement batteries for his hearing aids, *id.*, which, by themselves, do not allow him to hear well enough to distinguish voices and words unless he is in a room with "perfect conditions," including small rooms without any ambient noise, (Dkt. No. 41-27, at ¶¶ 32-33). Because Defendants provided no accommodations other than hearing aids, Plaintiff alleges that he could not meaningfully participate in programs and services the Defendants offered to patients, including "Treatment Mall" activities and therapeutic programming exercises, and could not understand the videos shown during therapy sessions. *See* Section II.B.3 *supra* (detailing relevant allegations). At the pleading stage, where the Court accepts these facts as true and draws all reasonable inferences in Plaintiff's favor, these allegations sufficiently state a claim that, by rejecting Plaintiff's request for reasonable accommodations, Defendants denied Plaintiff the opportunity to participate in and benefit from the treatment programs they offered on the same footing as non-disabled patients. [21] Thus, the SAC's allegations sufficiently state a prima facie claim against OMH and CNYPC under the ADA and the Rehabilitation Act. [22]

### 2. Eleventh Amendment Immunity

**\*15** Having found that the SAC states a claim against DOCCS, OMH and CNYPC under the ADA, the Court turns to the question of whether Plaintiff's ADA claim against these Defendants, which seeks only monetary damages and not injunctive relief, is barred by the Eleventh Amendment. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Notwithstanding its plain language, the Supreme Court has long held that the Eleventh Amendment bars *all* federal court claims against states, including by the states' own citizens, absent their consent to such suit or an express statutory waiver of immunity. *See, e.g., Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Pennhurst State Sch. & Hosp. v. Halderman*, 465

Matagrano v. New York State Department of Corrections..., Not Reported in Fed....

Case 5:25-cv-00822-AJB-MJK    Document 6    Filed 07/25/25    Page 56 of 91

U.S. 89, 98-100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). State immunity extends not only to the states, but also to state agencies. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf,* 506 U.S. 139, 142-47, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); *McGinty v. New York,* 251 F.3d 84, 95 (2d Cir. 2001)* ("The Eleventh Amendment extends immunity not only to a state, but also to entities considered 'arms of the state.' ").

Plaintiff does not dispute that DOCCS, OMH and CNYPC are all considered state agencies protected by the Eleventh Amendment. *See, e.g., Rother v. N.Y. State Dep't of Corr. and Cmty. Supervision,* 970 F. Supp. 2d 78, 89-90 (N.D.N.Y. 2013) ("DOCCS and its facilities are state agencies for purposes of the Eleventh Amendment."); *Phillips v. Dawes,* No. 16-cv-0219, 2016 WL 11478218, at *4, 2016 U.S. Dist. LEXIS 92245, at *9-10 (N.D.N.Y. July 14, 2016) (taking judicial notice that CNYPC is a state instrumentality and finding that it is entitled to Eleventh Amendment purposes absent waiver or abrogation), *report and recommendation adopted* 2016 WL 5864784, 2016 U.S. Dist. LEXIS 139515 (N.D.N.Y. Oct. 7, 2016); *Dimps v. N.Y. State Office of Mental Health,* 777 F. Supp. 2d 659, 661-62 (S.D.N.Y. 2011) (finding OMH is a state agency for Eleventh Amendment purposes). Thus, the question as to whether the Eleventh Amendment bars Plaintiff's damages claim under the ADA is applicable to all three Defendants.

In *Garcia v. State Univ. of N.Y. Health Scis. Ctr. of Brooklyn,* 280 F.3d 98 (2d Cir. 2001), the Second Circuit addressed the question of whether Congress had validly abrogated state sovereign immunity from claims for monetary damages under Title II of the ADA. The Court held that "it is clear that the Congress fully intended to abrogate state sovereign immunity" from such claims, but that this purported abrogation was not valid, as the enactment of Title II exceeded Congress's authority under § 5 of the Fourteenth Amendment to enforce the protections afforded by that amendment's Equal Protection Clause. *Id.* at 108-10. However, the Court found that Title II could be rehabilitated by requiring "plaintiffs bringing such suits to establish that the Title II violation was motivated by discriminatory animus or ill will based on the plaintiff's disability." *Id.* at 111. Recognizing that "direct proof of [discriminatory animus or ill will] will often be lacking," the Court further held that to establish such animus, a plaintiff may rely on a burden-shifting technique similar to that adopted in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), or a motivating-factor analysis similar to that set out in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 252-58, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). *Id* at 112.

After the Second Circuit's decision in *Garcia,* the Supreme Court decided *Tennessee v. Lane,* 541 U.S. 509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004), in which it held that Congress's abrogation of sovereign immunity under Title II was valid in the specific context of cases challenging barriers to courtroom accessibility. *Id.* at 531, 124 S.Ct. 1978. It reasoned that in enacting Title II, Congress sought to enforce not only the Equal Protection Clause (as recognized in *Garcia*), but also "a variety of other basic constitutional guarantees, infringements of which are subject to more searching judicial review," including rights under the Fourteenth Amendment's Due Process Clause. *Id.* at 522-23, 124 S.Ct. 1978. Put another way, the Supreme Court found that Title II was "not wholly premised on discrimination against the disabled that violates the Equal Protection Clause," arguably opening up the possibility of other avenues for Title II damages claims to clear the Eleventh Amendment hurdle besides the Equal Protection "discriminatory animus" test recognized in *Garcia. Bolmer v. Oliveira,* 594 F.3d 134, 147 (2d Cir. 2010).

**\*16** Following *Lane,* the Supreme Court decided *United States v. Georgia,* 546 U.S. 151, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006), in which it held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id.* at 159, 126 S.Ct. 877. However, because it was unclear whether the petitioner's amended complaint might assert Title II claims not premised on Fourteenth Amendment violations, and because the justices disagreed as to the scope of Congress's "prophylactic" authority to regulate conduct not itself barred by the Fourteenth Amendment, the Court remanded for the lower courts to determine, "on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id.* at 158-59, 126 S.Ct. 877. "Thus, *Georgia* explicitly left open the question of whether Congress may validly abrogate sovereign immunity with respect to a particular class of misconduct that violates Title II but does not violate the Fourteenth Amendment." *Dean,* 804 F.3d at 194.

Case 5:25-cv-00822-AJB-MJK    Document 6    Filed 07/25/25    Page 57 of 91

Matagrano v. New York State Department of Corrections..., Not Reported in Fed....

The Second Circuit has not fully resolved the question of whether, or to what extent, *Garcia* remains valid in light of *Georgia*. In *Bolmer v. Oliveira*, 594 F.3d 134 (2d Cir. 2010), the Second Circuit held that "*Garcia* only applies to Title II claims based on Equal Protection," that "*Garcia* is not applicable when Congress's abrogation is supported by its enforcement of the substantive due process right not to be involuntarily committed absent a danger to self or others," and that "under *Georgia* and *Lane,* Congress validly abrogated states' Eleventh Amendment immunity where the same conduct by the defendant violated both Title II and substantive due process." *Id.* at 145-49. However, *Bolmer* did not address the standards District Courts should use in evaluating whether the Eleventh Amendment bars Title II damages claims based on conduct that does *not* independently implicate constitutional rights. Later, in *Dean v. University at Buffalo School of Medicine and Biomedical Sciences*, 804 F.3d 178, 187 (2d Cir. 2015), the Court recognized that "[c]ontinued uncertainty as to the vitality of *Garcia* has led to a divergence in the approaches adopted by district courts in this Circuit in their assessment of Congress's abrogation of sovereign immunity under Title II," but expressed "no position" as to the issue. *Id.* at 194-95.

In light of this "continued uncertainty," District Courts have taken varying approaches to the continuing validity of *Garcia*. When determining whether Congress has validly abrogated states' sovereign immunity over Title II claims that do not independently implicate a constitutional violation, some courts have continued to apply *Garcia*'s "discriminatory animus or ill will" requirement. *See, e.g., Bobbit v. Marzan*, No. 16-cv-2042, 2020 WL 5633000, at *13, 2020 U.S. Dist. LEXIS 172422, at *39 (S.D.N.Y. Sept. 21, 2020) (stating that, when applying the third clause of the *Georgia* test, "[a]t a minimum, covered claims include those where the plaintiff makes 'a showing of discriminatory animus or ill will,' because in those cases discrimination in contravention of the ADA also threatens the rights protected by the Equal Protection Clause"); *Monroe v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 16-cv-2818, 2019 WL 4688665, at *10, 2019 U.S. Dist. LEXIS 164527, at *26-27 (S.D.N.Y. Sept. 25, 2019) ("Many courts in the Second Circuit have used the discriminatory animus or ill will test laid out in *Garcia* to inform its analysis of the third clause of the *Georgia* test ..."). Others have applied the three-part test articulated in *City of Boerne v. Flores*, 521 U.S. 507, 520, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997) to determine whether, for the particular Title II violation alleged, there is a "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *See, e.g., Lenti v. Connecticut*, No. 20-cv-127, 2020 WL 4275600, at *7-10, 2020 U.S. Dist. LEXIS 131189, at *21-31 (D. Conn. July 24, 2020); *Goonewardena v. New York*, 475 F. Supp. 2d 310, 322-24 (S.D.N.Y. 2007).

**\*17** Here, following this Court's finding on sua sponte review that Plaintiff's allegations did not rise to the level of a violation of the Fourteenth Amendment's Due Process or Equal Protection Clauses, (Dkt. Nos. 4, 16), and Plaintiff's voluntary dismissal of his First Amendment claims against the individual Defendants involved in the alleged ADA and Rehabilitation Act violations, (Dkt. No. 44), Plaintiff does not allege or argue that the conduct forming the basis of his ADA claim independently violates any constitutional right. [23] Thus, Plaintiff's claims appear to fall into the third clause of the *Georgia* analysis, meaning that to determine whether the Eleventh Amendment bars Plaintiff's claims, the Court must choose among the approaches District Courts have taken to decide whether Congress's abrogation of sovereign immunity was valid in the context of the particular conduct giving rise to Plaintiff's claims.

The parties' briefing is not especially helpful in resolving this question. Defendants argue that the Court should apply the *Garcia* test, but do not address the conflicting case law on whether *Garcia* remains valid law after *Lane, Georgia* and the Second Circuit's subsequent decisions. (Dkt. No. 39-3, at 16-19; Dkt. No. 47, at 11-12). Furthermore, beyond their arguments that the SAC fails to state an ADA claim in the first place, which the Court has rejected, Defendants fail to meaningfully explain why Plaintiff's allegations would not survive an Eleventh Amendment challenge under the burden-shifting or motivating-factor frameworks *Garcia* endorses. (*Id.*). Finally, Defendants do not present any argument as to whether Plaintiff's claims could survive an Eleventh Amendment defense under any approach other than *Garcia*, such as the *City of Boerne* test applied by some courts. (*Id.*).

Plaintiff, for his part, argues in conclusory fashion that, even if the Court applies *Garcia*, his claims survive an Eleventh Amendment challenge based on such a burden-shifting or motivating-factor framework, but does not explain *why* applying one or both of these frameworks saves his claims. [24] (Dkt. No. 42, at 23-24). Plaintiff further suggests that *Georgia* abrogated

Case 5:25-cv-00822-AJB-MJK    Document 6    Filed 07/25/25    Page 58 of 91

Matagrano v. New York State Department of Corrections..., Not Reported in Fed....

*Garcia* entirely, and argues that under *Georgia*, the Court should reject Defendants' Eleventh Amendment challenge because "Defendants have not argued that 1) the State's conduct did not violate the ADA; 2) that there are no accompanying violations of other constitutional provisions; or (3) [sic] if there are no other constitutional violations, that Congress's purported abrogation is invalid." (*Id.* at 24-25). But Plaintiff nowhere explains what basis the Court could have to find that his ADA claims involve constitutional violations (and thus survive under the second clause of the *Georgia* test), given the dismissal of all his constitutional claims related to the alleged ADA violations. (*Id.*). Nor does he clearly explain, assuming his claims fall into the third clause of the *Georgia* test and *Garcia* is not applicable, what test the Court should use to determine whether the Eleventh Amendment bars his claims. (*Id.*). Finally, while Plaintiff refers to the *City of Boerne* analysis in a parenthetical, (*id.* at 25), he does not present any argument on how the *City of Boerne* test might apply to his claims.

**\*18** In the absence of more complete briefing from the parties on these questions, the Court need not wade into these turbulent constitutional waters. In the Second Circuit, the state entity asserting an Eleventh Amendment defense "bears the burden of demonstrating that it is ... entitled to dismissal of [the] lawsuit on the ground of Eleventh Amendment immunity." *Woods v. Rondout Valley Ctr. Sch. Dist. Bd. Of Educ.*, 466 F.3d 232, 239 (2d Cir. 2006); *see also Leitner v. Westchester Comty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015) ("All Circuits to have considered the question, including our own, require the party asserting Eleventh Amendment immunity to bear the burden of demonstrating entitlement."). Thus, while both parties' arguments are deficient with respect to the Eleventh Amendment questions at play, Defendants ultimately bear the burden of demonstrating that Plaintiff's claim must be dismissed on Eleventh Amendment grounds, and for the reasons identified above, they have not done so. Therefore, their Eleventh Amendment defense fails at this stage of the proceedings. *See, e.g.*, *Bobbit v. Marzan*, No. 16-cv-2042, 2018 U.S. Dist. LEXIS 120180,[25] at *9-10 (S.D.N.Y. July 17, 2018) (denying motion to dismiss ADA claim based upon sovereign immunity where Defendants have "made no attempt" to "make a showing that Congress's abrogation of sovereign immunity with respect to specific conduct underlying Plaintiff's ADA claim is invalid"); *Saunders v. Ryan*, No. 17-cv-0765, 2018 WL 4275987, at *6, 2018 U.S. Dist. LEXIS 152412, at *15-17 (N.D.N.Y. Sept. 7, 2018) (denying motion to dismiss ADA claim based on sovereign immunity where "Defendants do not discuss the merits of the competing approaches employed by the various district courts" but "simply state that [a finding that the plaintiff's claims are barred by the Eleventh Amendment] 'may' be justified," and declining to "decide such a thorny question" "[w]ithout more substantive briefing on the issue").

The need to resolve the Eleventh Amendment issue at the pleading stage is lessened even further given that the Court has found that Plaintiff's Rehabilitation Act claims against all three Defendants survives a motion to dismiss:

"Because sovereign immunity does not bar [P]laintiff's Rehabilitation Act claim, the [C]ourt has subject matter jurisdiction over this action regardless of [Defendants'] immunity from the ADA claim. Consequently, there is no risk of violating [Defendants'] 'right not to be haled into court' when it is immune from suit. Moreover, the remedies available to plaintiff under Title II of the ADA and the Rehabilitation Act are identical. Thus, as a practical matter, this case will proceed on the same course regardless of whether [Defendants] may later be found immune from [P]laintiff's ADA claim."

*Ross v. City Univ. of New York*, 211 F. Supp. 3d 518, 528 (E.D.N.Y. 2016) (citations omitted); *see also, e.g.*, *Watley v. Dep't of Children & Families*, No. 13-cv-1858, 2019 WL 7067043, at * 7 n.11, 2019 U.S. Dist. LEXIS 219851, at *16 n.11 (D. Conn. Dec. 23, 2019) ("Because I conclude that Connecticut waived its immunity under the [Rehabilitation Act], I do not need to resolve [the question of whether *Garcia* remains valid law for purposes of Defendants' Eleventh Amendment defense to the plaintiff's ADA claim] and therefore do not reach it.").

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's ADA claim against Defendants DOCCS, OMH and CNYPC on Eleventh Amendment grounds is denied.

### 3. Defendants' Remaining Arguments

Matagrano v. New York State Department of Corrections..., Not Reported in Fed....

Case 5:25-cv-00822-AJB-MJK    Document 6    Filed 07/25/25    Page 59 of 91

### a. Exhaustion of Remedies

Defendants assert that, "[a]s [P]laintiff does not make any allegations to support a plausible inference of having exhausting [*sic*] his administrative remedies with regard to his Rehabilitation Act claims, plaintiff's claims under the Rehabilitation Act must dismissed as a matter of law." (Dkt. No. 39-3, at 27). Defendants misconstrue the burden of proof on the exhaustion issue. As noted above, because "[f]ailure to exhaust administrative remedies is an affirmative defense," it is "not a pleading requirement." *Williams,* 829 F.3d at 122. Thus, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* (quoting *Jones,* 549 U.S. at 216, 127 S.Ct. 910). Nonetheless, "a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Id.* Furthermore, "[i]f a prisoner chooses to plead facts regarding exhaustion, and those facts show that he failed to exhaust his available administrative remedies, then his complaint may be dismissed for failure to state a claim." *Zielinski v. Annucci,* No. 17-cv-1042, 2019 WL 2870337, at \*14, 2019 U.S. Dist. LEXIS 46111, at \*41 (N.D.N.Y. Mar. 19, 2019).

 **\*19** Here, Plaintiff pleads specific facts reflecting that, with respect to the majority of events forming the basis of his ADA and Rehabilitation Act claims against DOCCS, he fully exhausted his administrative remedies prior to filing suit by going through the three levels of DOCCS' internal appeal process and either receiving a decision from CORC or allowing CORC's 30-day period for issuing a decision to lapse, which renders exhaustion unavailable under *Hayes*. (Dkt. No. 41-27, at ¶¶ 49, 51, 61, 70, 82-84, 91-97, 108-14, 171-72). For other events alleged in the SAC, it is not "clear on the face of the complaint that [Plaintiff] did not satisfy the PLRA exhaustion requirement," since the facts as alleged do not render it facially impossible that Plaintiff could have proceeded through the three-step grievance process and received a final decision from CORC prior to filing the Original Complaint (for events occurring prior to the filing of the Original Complaint) or the FAC (for events occurring between the filing of the Original Complaint and the FAC). *Williams,* 829 F.3d at 122; (Dkt. No. 41-27, at ¶¶ 45-48, 53-55, 86-88, 120-26, 132-36, 137-70). In light of this, and in the absence of any argument from Defendants (with whom the burden to prove lack of exhaustion lies) as to why these claims should be dismissed on exhaustion grounds, the Court will not dismiss Plaintiff's ADA and Rehabilitation Act claims against DOCCS for failure to exhaust. [26]

As for Plaintiff's ADA and Rehabilitation Act claims against OMH and CNYPC, Plaintiff alleges that CNYPC and OMH are entities "separate and apart from DOCCS," and that "[CNYPC] policies and staff decisions cannot be grieved through DOCCS' Inmate Grievance Program." (Dkt. No. 41-27, at ¶ 190). Defendants have not responded to this contention, nor have they otherwise argued that Plaintiff had any administrative remedies he needed to exhaust before filing his claims against these Defendants. Therefore, the Court will not dismiss Plaintiff's ADA and Rehabilitation Act claims against OMH and CNYPC for failure to exhaust.

### b. Statute of Limitations

Defendants also state that "because plaintiff does not provide a time-line for the acts constituting the alleged ADA violations, it is unknown whether a statute of limitations defense exists," but do not actually seek dismissal of any claim on statute of limitations grounds. (Dkt. No. 39-3, at 19; Dkt. No. 47, at 12-13). [27] The SAC, however, sets forth specific dates for virtually every factual allegation forming the basis of Plaintiff's ADA and Rehabilitation Act claims, and in any event, because Defendants do not actually raise a statute of limitations defense, the Court need not consider this issue. *See Lyn v. Inc. Vill. of Hempstead,* No. 03-cv-5041, 2007 WL 1876502, at \*16 n.13, 2007 U.S. Dist. LEXIS 46957, at \*52-53 n.13 (E.D.N.Y. June 28, 2007) ("Issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived." (citations omitted)).

## V. CONCLUSION

For these reasons, it is hereby

Case 5:25-cv-00822-AJB-MJK    Document 6    Filed 07/25/25    Page 60 of 91

Matagrano v. New York State Department of Corrections..., Not Reported in Fed....

**ORDERED** that Plaintiff's motion to amend his complaint (Dkt. No. 30) is **GRANTED**; and it is further

**ORDERED** that Plaintiff is directed to file an edited Second Amended Corrected Complaint, by December 21, 2020, correcting the spelling of the parties' names in the caption of the complaint and correcting the spelling of Defendant Jacqueline Levitt's name in Dkt. No. 41-27, and that this complaint will be the operative pleading; and it is further

 **\*20  ORDERED** that Defendants' motion for summary judgment and dismissal of Plaintiff's claims (Dkt. No. 39) is **GRANTED** as to Plaintiff's Eighth Amendment claim against Defendants Eckert and Levitt; **DENIED** as to Plaintiff's ADA and Rehabilitation Act claims against Defendants DOCCS, OMH and CNYPC; and **DENIED AS MOOT** in all other respects; and it is further

**ORDERED** that Plaintiff's Eighth Amendment claim against Defendants Eckert and Levitt is **DISMISSED without prejudice** for failure to exhaust administrative remedies.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 7338586

---

### Footnotes

1    While the caption on Plaintiff's Second Amended Complaint uses the spelling "Mattagrano," (Dkt. No. 31-2, at 1), this Court uses the spelling "Matagrano," which is consistent with the spelling used in Plaintiff's pro se original and first amended complaints, and Plaintiff's most recent submissions. (Dkt. No. 1, at 1; Dkt. No. 9, at 1; Dkt. Nos. 30, 42). The Clerk is respectfully requested to change the docket accordingly.

2    While the caption on Plaintiff's Second Amended Complaint uses the spelling "Leavitt," (Dkt. No. 31-2, at 1), Plaintiff's counsel since confirmed that this was an error, and that "Levitt" is the proper spelling, (Dkt. No. 41, at ¶ 33). The Clerk is respectfully requested to change the docket accordingly.

3    Plaintiff subsequently filed a redlined version of the SAC containing additional, non-substantive typographical edits, including corrections to the spelling of Defendant Levitt's name. (Dkt. No. 41-27).

4    The Court has not considered Plaintiff's First Amendment retaliation claim against Defendants Eckert and Levitt because the Plaintiff has not included those claims in his proposed Second Amended Complaint. (Dkt. No. 41-27, at 30).

5    For purposes of this decision, the Court discusses only the facts that are directly relevant to the motions that are presently before it, and not facts that relate to claims that have been voluntarily dismissed.

6    These facts are relevant to Defendants Eckert and Levitt's motion for partial summary judgment and are drawn from Defendants' Statement of Undisputed Material Facts pursuant to Local Rule 7.1(a)(3), (Dkt. No. 39-2), and Plaintiff's response to Defendants' Statement of Undisputed Material Facts, (Dkt. No. 40), together with the evidence attached thereto and cited therein, (Dkt. Nos. 39-1, 41). The facts are construed in the light most favorable to Plaintiff as the non-moving party. *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007).

7    Plaintiff was recently transferred to Sullivan Correctional Facility in Fallsburg, New York to be treated in the Intermediate Care Program, a residential mental health program for severely mentally ill patients that is jointly operated by DOCCS and OMH. (Dkt. No. 41-27, at ¶¶ 4, 39-40).

8    Records maintained by DOCCS' Central Office Review Committee ("CORC") reflect that the grievance was filed with IGRC on June 4, 2019. (Dkt. No. 39-1, at 12). However, the grievance itself is dated June 24, 2019, (Dkt. No. 41-24, at 1), which is more consistent with Plaintiff's allegation that the incident forming the basis of the grievance occurred on June 23.

9    The record does not reflect whether CORC has issued a decision on Plaintiff's appeal since April 7, 2020.

10    While not referenced in his response to Defendants' Statement of Undisputed Facts, Plaintiff's unverified SAC alleges that on October 13, 2019, during a mental health crisis, Plaintiff used his DOCCS-issued razor to cut his arms and attempt to take his own life, resulting in blood loss, lacerations, physical pain and emotional turmoil. (Dkt. No. 41-27, at ¶ 241-42).

11    The facts set forth in this section are drawn from the SAC. The Court cites to the most recent version of the SAC, (Dkt. No. 41-27), which, aside from minor typographical revisions, is substantively identical to the version attached to Plaintiff's motion to amend, (Dkt. No. 31-2). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

12    *Clarkson v. Coughlin*, 91-cv-1792 (S.D.N.Y.) is a "long-resolved class action addressing reasonable accommodations for DOCCS hearing impaired and deaf patients." (*Id.* ¶ 45).

13    CORC's records reflect that CORC did not issue a decision on Plaintiff's appeal until January 8, 2020. (Dkt. No. 39-1, at 10).

14    CORC's records reflect that CORC issued a decision on Plaintiff's appeal over a year later, in October 2019. (Dkt. No. 39-1, at 10; Dkt. No. 41-20, at 5).

15    Plaintiff alleges that, during his stay in Wende's RCTP between September 18, 2017 and October 5, 2017 prior to his transfer to CNYPC, DOCCS staff denied him access to his hearing aids. (*Id.* ¶ 180).

16    "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-91, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The grievance procedure in New York is a three-tiered process. The prisoner must first file a grievance with the IGRC. *See* 7 N.Y.C.R.R. § 701.5(a)(1), (b). An adverse decision of the IGRC may be appealed to the superintendent of the facility. *Id.* § 701.5(c). Adverse decisions at the superintendent's level may be appealed to CORC. *Id.* § 701.5(d).

17    Defendants also move to dismiss Plaintiff's ADA claims under Fed. R. Civ. P. 12(b)(1), on the grounds that the Eleventh Amendment deprives this Court of subject matter jurisdiction over that claim. The legal standards applicable to that defense are discussed in Section IV.C.2 *supra*.

18    Indeed, it is doubtful that Plaintiff's Rehabilitation Act claims would be barred by the Eleventh Amendment. "The Second Circuit, as well as all other intermediate federal courts, has held that Congress intended states' acceptance of federal funds to constitute waiver of their Eleventh Amendment immunity as to claims under the Rehabilitation Act," and Courts in this Circuit have thus concluded that "New York's continued acceptance of federal funds on behalf of [DOCCS] constitutes a waiver of sovereign immunity as to all of [a] plaintiff's Rehabilitation Act claims" arising from DOCCS' programs and services. *Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 413-15 (S.D.N.Y. 2006). Under the same reasoning, New York's acceptance of federal funds on behalf of OMH and CNYPC waives its Eleventh Amendment defense to Plaintiff's Rehabilitation Act claims against those entities. (Dkt. No. 41-27, at ¶¶ 20-21 (alleging that both entities receive federal funding to support their programs and services)).

19    *See* *Kearney v. Adams*, No. 15-cv-824, 2018 WL 3121618, at \*9-10, 2018 U.S. Dist. LEXIS 21706, \*26-30 (N.D.N.Y. Feb. 8, 2018) (recommending that the plaintiff's ADA claim be dismissed at summary judgment stage where the plaintiff "fail[ed] to identify any programs or services that he was excluded from because of DOCCs' " failure to provide him with bilateral knee braces and crutches, where the denial of those accommodations was based on a doctor's medical determination that they were not medically necessary, and where DOCCS provided the plaintiff with reasonable accommodations such as a walker), *report and recommendation adopted* 2018 WL 1470579, 2018 U.S. Dist. LEXIS 49139 (N.D.NY. Mar. 26, 2018); *Hall v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 12-cv-0377, 2015 WL 901010, at \*3-6, 2015 U.S. Dist. LEXIS 25749, \*17-28 (N.D.N.Y. Mar. 3, 2015) (dismissing ADA and Rehabilitation Act claims alleging disparate treatment and failure to reasonably accommodate the plaintiff's mental illness, where the plaintiff's denial of access to programs and services was based largely on his conviction of disciplinary offenses, the complaint failed to allege that "non-mentally-ill inmates convicted of a disciplinary offense and serving a sentence in SHU" received access to those programs, and the complaint largely complained of the adequacy of his mental health treatment rather than discrimination); *Roberts v. City of New York*, No. 14-cv-5198, 2016 WL 4146135, at \*9, 2016 U.S. Dist. LEXIS 101750, at \*25 (S.D.N.Y. Aug. 2, 2016) (dismissing ADA and Rehabilitation Act claims where the plaintiff failed to allege that he "was excluded from participation in any program or activity, or otherwise treated differently, because of" his diabetes, and his claims sounded in medical malpractice rather than disability discrimination); *Rosado v. Herard*, No. 12-cv-8943, 2014 WL 1303513, at \*4-6, 2014 U.S. Dist. LEXIS 40172, at \*11-19 (S.D.N.Y. Mar. 25, 2014) (dismissing ADA and Rehabilitation Act claims where the plaintiff's allegations suggested that he was denied access to therapeutic group sessions because of his ethnicity, not because of his mental illness); *Canales v. New York City Health & Hosps. Corp.*, No. 12-cv-3305, 2014 WL 2217001, at \*4-5, 2014 U.S. Dist. LEXIS 77037, at \*11-13 (S.D.N.Y. May 12, 2014) (dismissing ADA and Rehabilitation Act claims where the complaint was "devoid of any allegation that defendants excluded plaintiff from or denied plaintiff the benefits of any services, programs, or activities because of his carpal tunnel syndrome," and instead merely "assert[ed] that his disability was not adequately treated").

20    Indeed, at least for an ADA claim such as Plaintiff's that is based on a failure to reasonably accommodate his disability, pleading that Defendants' actions were motivated by "discriminatory animus or ill will" is, if anything, a requirement for overcoming an Eleventh Amendment defense, *see* Section IV.C.2 *supra*, not a requirement for stating a prima facie claim. *Cf. Tillman v. Verizon New York, Inc.*, 118 F. Supp. 3d 515, 538 (E.D.N.Y. 2015) (observing, in the context of an employment discrimination claim under the ADA, that "[a] claim based on a failure to make reasonable accommodations does not require the Plaintiff to show a discriminatory animus").

21    The Court rejects Defendants' argument that there are "no allegation[s] that the programming [Plaintiff was denied access to] was run by CNYPC," (Dkt. No. 47, at 14), as the Court must draw all reasonable inferences in Plaintiff's favor at this stage, and the SAC permits a reasonable inference that the programming Plaintiff was unable meaningfully participate in while hospitalized at CNYPC was CNYPC's own programming.

22    The Court notes that the SAC alleges discriminatory actions primarily by CNYPC, (Dkt. No. 41-27, at ¶¶ 183-92), but also alleges that CNYPC is a facility that is entirely "run by" OMH, and that OMH is ultimately responsible for the mental health services and programming CNYPC provides to inmates incarcerated in DOCCS facilities, (*id.* ¶¶ 20-21). Defendants raise no argument that Plaintiff may not maintain a claim against OMH based on CNYPC's actions, and as such, the Court will allow Plaintiff's claim to proceed against both entities at this stage.

23    Plaintiff's only surviving constitutional claim—his Eighth Amendment deliberate medical indifference claim against Defendants Eckert and Levitt, which has been dismissed for failure to exhaust administrative remedies rather than on its merits—is based on facts wholly distinct from and unrelated to his ADA claims.

24    Plaintiff's citation to *Wright v. N.Y. State Dep't of Corr. & Comty. Supervision*, 831 F. 3d 64, 76 (2d Cir. 2016) is inapposite. *Wright* did not involve the application of *Garcia*'s burden-shifting analysis in the context of an Eleventh Amendment challenge, but rather involved a *different* burden-shifting analysis applied in analyzing, at the summary judgment stage, whether a plaintiff received "reasonable accommodations."

Case 5:25-cv-00822-AJB-MJK    Document 6    Filed 07/25/25    Page 63 of 91

Matagrano v. New York State Department of Corrections..., Not Reported in Fed....

25      No parallel Westlaw citation available

26      Because Defendants' motion with respect to Plaintiff's ADA and Rehabilitation Act claims is a motion to dismiss
        pursuant to Fed. R. Civ. P. 12(b)(6), and no party has argued that this motion should be treated as one for summary
        judgment pursuant to Fed. R. Civ. P. 56(a), the Court limits itself to the face of the SAC for purposes of this analysis,
        and does not consider evidence outside the SAC, including exhibits submitted in connection with Defendants' separate
        motion for summary judgment on Plaintiff's Eighth Amendment claim. *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir.
        2006); *Roth v. Jennings*, 489 F.3d 499, 409 (2d Cir. 2007).

27      Courts in this Circuit apply New York's three-year statute of limitations for personal injury actions to claims brought in
        New York under the ADA and Rehabilitation Act, *Stropkay v. Garden City Union Free Sch. Dist.*, 593 F. App'x 37, 41
        (2d Cir. 2014) (collecting case law), and "the applicable statute of limitations must be tolled while a prisoner completes
        the mandatory exhaustion process" required by the PLRA. *Gonzalez*, 651 F.3d at 323-24.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

335 Fed.Appx. 102
This case was not selected for publication in West's Federal Reporter.
United States Court of Appeals,
Second Circuit.

Sandra SHEEHY, et al., Plaintiffs–Appellants,

v.

Thomas P. BROWN, et al., Defendants–Appellees.

No. 08–0102–cv.
|
June 23, 2009.

**Synopsis**
**Background:** Plaintiffs appealed, pro se, a judgment of the United States District Court for the Western District of New York, Telesca, J., sua sponte dismissing their complaint.

**Holdings:** The Court of Appeals held that:

[1] plaintiffs failed to establish § 1983 claims arising out of their allegedly false prosecutions, and

[2] plaintiffs failed to state a claim for conspiracy to interfere with civil rights.

Affirmed.

West Headnotes (2)

**[1]    Civil Rights    🔑    Criminal prosecutions**

Plaintiffs failed to allege that their convictions or sentences were invalidated or otherwise expunged, as required to establish § 1983 claims arising out of their allegedly false prosecutions. 42 U.S.C.A. § 1983.

48 Cases that cite this headnote

**[2]    Conspiracy    🔑    Civil rights conspiracies**

Plaintiffs failed to allege the formation of a conspiracy, and overt acts in furtherance of such conspiracy, as required to state a claim for conspiracy to interfere with civil rights. 42 U.S.C.A. § 1985.

390 Cases that cite this headnote

**\*103  UPON DUE CONSIDERATION,** it is hereby **ORDERED, ADJUDGED AND DECREED** that the judgment of the district court is **AFFIRMED.**

**Attorneys and Law Firms**

Sandra Sheehy, pro se.

Robert Sheehy, pro se.

Patrick Sheehy, pro se.

Bobbi Sheehy, pro se.

Billie Sheehy, pro se.

Casey Sheehy, pro se.

Sherry Sheehy, pro se.

PRESENT: Hon. PIERRE N. LEVAL, Hon. ROSEMARY S. POOLER and Hon. B.D. PARKER, Circuit Judges.


### SUMMARY ORDER

**\*\*1** Plaintiffs–Appellants Sandra, Robert, Patrick, Bobbi, Billie, Casey, and Sherri Sheehy, *pro se,* appeal from the judgment of the United States District Court for the Western District of New York (Telesca, J.), *sua sponte* dismissing the complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). We assume the parties' familiarity with the facts, procedural history and issues on appeal.

Having reviewed *de novo* the district court's *sua sponte* dismissal under § 1915(e), *see Giano v. Goord,* 250 F.3d 146, 149–50 (2d Cir.2001), we conclude that the district court did not err in dismissing Appellants' complaint.

**[1]** First, any 42 U.S.C. § 1981 or § 1983 claim against Appellees Lucy or Edward Sherwood, Thomas Fuoco, Mark Wattenberg, or Steve Presutti was properly dismissed, as private actors and institutions generally are not proper § 1983 defendants. *See American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (§ 1983 actions do not reach purely private conduct). Additionally, for an individual to recover damages for an allegedly unconstitutional conviction or imprisonment, he or she "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus...." *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Thus, any § 1983 claims arising out of the allegedly false prosecutions of Sandra, Patrick, or Robert Sheehy were appropriately dismissed, as Appellants did not allege that their convictions or sentences were invalidated or otherwise expunged. *Id.*

**\*104** As for the American Society for the Prevention of Cruelty to Animals, the Allegany County Society for the Prevention of Cruelty to Animals, and Appellee Presutti, claims against these defendants were properly dismissed, as Appellants did not allege any wrongdoing on their part or specify how they were involved in the constitutional violations alleged. *See* 28 U.S.C. § 1915(e)(2). Next, to the extent that Appellants challenge the conduct of county district attorneys or state court judges, such actors are entitled to immunity. *Nixon v. Fitzgerald,* 457 U.S. 731, 766, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

Appellants also assert § 1983 claims against: (1) county sanitation workers for entering the Sheehys' property, in violation of their property and privacy rights; (2) state troopers for use of excessive force and retaliation; and (3) Allegany County Department of Social Services employees for entering the Sheehys' property and removing the Sheehy children from their homes, in violation of their First, Fourth, and Ninth Amendment rights. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* ─── U.S. ───, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). We conclude that because the Appellants' § 1983 allegations are so vague as to fail to give the defendants adequate notice of the claims against them, the district court did not err in dismissing them.

**2    [2]    Appellants also assert claims under § 1985, for which a plaintiff must allege: (1) a conspiracy, (2) which has an intent or purpose to deprive a person of equal protection of the law; (3) an act in furtherance of the conspiracy; (4) which results in an injury to a person, or a person's property, or the deprivation of a federal constitutional right. *See Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993) (per curiam). Here, the Appellants' claims of conspiracy failed to specifically allege (1) the formation of a conspiracy; or (2) overt acts in furtherance of such conspiracy. Thus, the district court correctly dismissed any claims brought pursuant to §§ 1985 and 1986.

To the extent that Appellants assert claims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241–242, these claims are not cognizable, as federal criminal statutes do not provide private causes of action. *See Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 511 (2d Cir.1994). In addition, any claim brought under 42 U.S.C. § 2000d, which prohibits the exclusion of individuals from a federally funded program or activity on the basis of race, color, or national origin, properly was dismissed, as Appellants did not allege that they were excluded from a federally funded program or activity and, thus, no claim exists under that statute. Similarly, although former 42 U.S.C. § 13981 authorized a cause of action arising out of a crime of violence motivated by gender, the Supreme Court has held that statute unconstitutional. *See United States v. Morrison,* 529 U.S. 598, 601, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).

We have reviewed Appellants' remaining arguments and find them to be without merit. We also note here that we see no **105 indication in the record that Appellants perfected service on any of the defendants in this case.

Therefore, for the reasons stated above, the judgment of the district court is AFFIRMED.

**All Citations**

335 Fed.Appx. 102, 2009 WL 1762856

---

Thomson v. Odyssey House, Not Reported in F.Supp.3d (2015)



KeyCite Yellow Flag

Called into Doubt by  Reyes v. Phoenix Beverages, Inc.,  E.D.N.Y.,  September 15, 2016

2015 WL 5561209

Only the Westlaw citation is currently available.

United States District Court,

E.D. New York.

GeorginA C. THOMSON and Sheila Clark, Plaintiffs,

v.

ODYSSEY HOUSE, Vance Herbert, Darrin Brown, Gail Harrison and John Does 1–10, Defendants.

No. 14–CV–3857 (MKB).

|

Signed Sept. 21, 2015.

**Attorneys and Law Firms**

Nkereuwem Umoh, The Law Office of Uwem Umoh, Brooklyn, NY, for Plaintiffs.

Damon W. Silver, Wendy J. Mellk, Jackson Lewis P.C., New York, NY, for Defendants.

### *MEMORANDUM & ORDER*

MARGO K. BRODIE, District Judge.

**\*1** Plaintiffs Georgina Thomson and Sheila Clark commenced the above-captioned action in the New York State Supreme Court, Kings County, in September of 2013, against Defendants Odyssey House, Vance Herbert, Darrin Brown, Gail Harrison [1] and John Does 1–10, alleging claims of discrimination, retaliation and hostile work environment on the basis of race, gender, sexual orientation and disability in violation of the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL") and the New York City Human Rights Law, N.Y.C. Admin. Code § 8–101 *et seq.* ("NYCHRL"), and a claim for negligent infliction of emotional distress. On or about May 30, 2014, Plaintiffs amended their state court complaint to include federal claims pursuant to 42 U.S.C. § 1981. On June 20, 2014, Defendant Odyssey House removed the action to this Court. (Not. of Removal, Docket Entry No. 1.) Plaintiffs subsequently amended the complaint twice, adding claims for discrimination, retaliation and hostile work environment brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Americans with Disabilities Act ("ADA"). Specifically, Thomson brings claims of discrimination under the ADA, Title VII, NYSHRL and NYCHRL, retaliation under Title VII, the ADA, Section 1981, NYSHRL and NYCHRL, and hostile work environment under Title VII, NYSHRL and NYCHRL. Clark brings claims of discrimination and hostile work environment under the NYSHRL, and retaliation under Section 1981 and the NYSHRL.

Odyssey House moves to dismiss the Third Amended Complaint ("TAC") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiffs' NYSHRL and NYCHRL claims that were presented to the New York State Division of Human Rights ("NYSDHR") are barred by the election of remedies provisions in those statutes, and that Plaintiffs otherwise fail to state a claim against Odyssey House. [2] (Mot. to Dismiss, Docket Entry No. 29; Def. Mem. in Support of Mot. to Dismiss ("Def.Mem."), Docket Entry No. 30.) For the reasons set forth below, the Court grants Odyssey House's motion to dismiss both Plaintiffs' NYSHRL claims and Thomson's Title VII, ADA, Section 1981 and NYCHRL claims, and denies Odyssey House's motion to dismiss Clark's Section 1981 claim. Plaintiffs' Title VII, ADA, NYSHRL and NYCHRL claims against Brown, Harris and Herbert ("Individual Defendants") are dismissed *sua sponte.* The Court orders Plaintiffs to show

cause within thirty days of the date of this Memorandum and Order why Individual Defendants should not be dismissed from this action because of Plaintiffs' failure to serve them.

### I. Background

Odyssey House is a New York corporation whose business involves providing counseling to inmates in prison. (*See* TAC ¶¶ 4, 6, 8, 33, 57.) The Individual Defendants were employees of Odyssey House. (TAC ¶ 10.) Herbert worked with Plaintiffs, and Harris was Plaintiff Thomson's supervisor. (TAC ¶ 15.) Brown appears to have been in a position senior to both Plaintiffs, such that Plaintiffs addressed complaints about their working conditions to him. (TAC ¶¶ 21–26, 33–34, 56.)

#### a. Thomson

**\*2** Plaintiff Georgina Thomson was employed by Defendant Odyssey House from July of 2010 through April of 2014. (TAC ¶¶ 2, 11, 41.) Thomson served as an Intake Discharge Coordinator and counseled clients on behalf of Odyssey House. (TAC ¶¶ 4, 12.) Plaintiffs allege that Thomson was an "exemplary employee" and did not disobey orders or directives from supervisors. (TAC ¶ 13.)

#### i. Alleged sexual orientation and gender comments

Thomson is a lesbian and is open about her sexuality with her coworkers, which has "attracted a barrage of insults and 'jokes' from co-workers and supervisors alike," including the Individual Defendants. (TAC 11 14–15.) Defendant Brown asked Thomson on various occasions why she wore a blouse instead of a tie, which Thomson understood to be a remark about her sexuality, and on two occasions told her to wear her hair down to "look prettier." (TAC ¶ 24.) On "more than one occasion," someone [3] answered the telephone when Thomson's wife called and thereafter told Thomson that "her wife wanted to be with a real man." (TAC ¶ 26.) On or about June 12, 2011, Harris "made inappropriate comments" about an administrative assistant, and told Thomson to "stop flirting with" the assistant. (TAC ¶ 17.) On or about the same day, Harris also told Thomson "not to pick up" the assistant. (*Id.*) Plaintiffs allege that Thomson complained—though she does not specify to whom or about what —and was "marked for closer supervision by management ." (TAC ¶ 18.) On or about August 4, 2011, Harris "complained" to an unspecified person about Thomson's work but not that of heterosexual employees, non-black employees, or "employers [*sic* ] that had [not] complained about discrimination." (*Id.*)

On August 2, 2011, Thomson informed Harris that Thomson's wife's nephew had been killed and that Thomson wanted to attend the funeral. (TAC ¶ 35.) Harris denied Thomson leave, despite the fact that heterosexual employees had been, in the past, given leave to attend funerals. (TAC ¶¶ 35–36.) Brown told Thomson he had only wanted to hire men because women "are too emotional." (TAC ¶ 25.)

At some unspecified time, Thomson requested to work overtime and was denied the opportunity, although the same opportunity was offered to men. (TAC ¶ 19.)

On August 5, 2011, Thomson asked Harris if she could "do a Treatment Plan," [4] and was "laughed at" and "told that she was not like Herbert," a man, and that it "would take her 10 days to complete it," humiliating Thomson in front of her colleagues. (TAC ¶ 20.) Plaintiffs allege that this "happened often," and, on August 9, 2011, Harris again embarrassed Thomson in front of her coworkers. (*Id.*)

#### ii. Complaints about treatment

On August 23, 2011, Thomson complained in writing "detailing prior complaints and new issues that had arisen," reminding her employers that she had complained about Harris's conduct since November 2010. (TAC ¶¶ 15–16.) Plaintiffs do not indicate to whom these complaints were made or give more detail about the contents of the complaints. At some point in time, Thomson also complained to Brown and Human Resources about Harris's racially-charged remarks to Clark. (TAC ¶¶ 29–31.) In a meeting held

at an unspecified time as a result of Thomson's "letter on August 24, 2011," [5] Thomson further complained that no action had been taken against Harris despite Thomson's repeated complaints. (TAC ¶ 22.) Defendant Brown, also present at the meeting, made excuses for Harris's conduct. (*Id.*) On August 29, 2011, Thomson wrote to Brown to complain about Harris's prior conduct and explained that she feared her job was in jeopardy. (TAC ¶ 21.) Brown did not take this or other complaints "seriously." (TAC ¶¶ 24, 26.)

### iii. Surgery and injury

**\*3**  At an unspecified time prior to July 26, 2011, Thomson had surgery on her breasts and was instructed not to work in a humid environment. (TAC ¶ 32.) Harris insisted that Thomson return to work on July 26, 2011 and that she worked in "the prison classrooms," which are humid. (TAC ¶ 33.) This caused inflammation and discomfort. (TAC ¶ 34.) Brown told her that if she was unable to "work in the heat, despite her doctor's orders, he had no use for her." (TAC ¶¶ 23, 34.)

Herbert frequently moved Thomson's chair out of the way or lowered the chair so that she would fall when she attempted to sit in it. (TAC ¶¶ 27–28.) On or about September 9, 2011, Thomson had another surgery, and returned to work on September 14, 2011. (TAC ¶¶ 37–38.) That day, Herbert moved Thomson's chair out from under her, causing Thomson to fall and reinjure her surgery site, necessitating several weeks of leave. [6] (TAC ¶¶ 39–40.)

### iv. NYSDHR complaint

On March 5, 2012, Thomson, proceeding *pro se,* filed a complaint against Defendants with the NYSDHR, [7] alleging retaliation and discrimination on the basis of creed, disability, marital status, race or color, [8] sex and sexual orientation, and of sexual harassment and other harassment in violation of the NYSHRL, Title VII and the ADA. (Compl. dated 3/5/2012 in Case No. 10153677 ("Thomson March 5, 2012 NYSDHR Compl.") at ECF No. 21, 24–25, annexed to Aff. of Wendy J. Mellk in Support of Def. Mot. to Dismiss ("Mellk Aff.") as Ex. B.) In her narrative, Thomson alleges substantially the same facts as described above. (*See id.* at ECF No. 28–34.) Thomson's March 5, 2012 NYSDHR complaint was forwarded to the EEOC. (*Id.* at ECF No. 21.) On August 31, 2012, the NYSDHR issued a determination that there was no probable cause to believe Defendants engaged in the unlawful discriminatory practices of which Thomson complained. (Determination and Order in Case No. 10153677, annexed to Mellk Aff. as Ex. D.) On January 29, 2013, the EEOC adopted these findings and informed Thomson of her right to sue. (EEOC Dismissal and Notice of Rights for Georgina C. Thomson dated January 29, 2013 ("January 29, 2013 Right to Sue Notice"), annexed to Mellk Aff. as Ex. F.)

### v. Refusal to allow Thomson to return to work

Thomson, who had not been working at Odyssey House for an unidentified period of time possibly stretching back to her injury in September of 2011, "noted interest" in returning to work, but Defendants refused to let her return and "let her go" in April of 2014 (the "April 2014 termination"). [9] (TAC ¶ 41.)

On July 2, 2014, Thomson filed a charge of discrimination with the EEOC, alleging that Odyssey House discriminated against her on the basis of her race, sex, national origin and disability in violation of Title VII and the ADA, and retaliated against her for her complaints about discrimination. (Charge of Discrimination marked received July 2, 2014 ("July 2, 2014 EEOC Charge"), annexed to Mellk Aff. as Ex. H.) On September 12, 2014, the EEOC issued Thomson a Notice of Right to Sue. (Notice of Right to Sue dated September 12, 2014 ("September 12, 2014 Right to Sue Notice"), annexed to Mellk Aff. as Ex. I.)

### b. Plaintiff Clark

**\*4**  Plaintiff Sheila Clark was employed by Odyssey House from May 21, 2010 through February 14, 2012. (TAC ¶¶ 3, 46.) Clark served as a Counselor and counseled clients on behalf of Odyssey House. (TAC ¶ 6.) She is a "light skinned black woman." (TAC ¶ 47.)

On an unspecified occasion, Harris called Clark a "half breed." (TAC ¶ 29.) She frequently called Clark "mixed up" and told her that "blacks and Hispanics were mentally retarded because they weren't white." (TAC ¶ 30.) Thomson complained to Brown about these remarks. (TAC ¶¶ 29–31.)

Brown made sexual advances to Clark on "numerous occasions." (TAC ¶¶ 48, 52.) Brown "consistently asked for 'brown sugar,' or ... 'white sugar' " from Clark. (TAC ¶ 54.) On an unspecified occasion, Brown told Clark to "close her blouse," that he was "still a man" and, referring to her breasts, that she was "killing him" with her "short blouse." (TAC ¶ 54.) At some unspecified time, Clark complained "to management" about Brown's comments. (TAC ¶¶ 48.) On November 3, 2011, Brown told Clark not to write "retaliatory letters," instructing her not to complain any more. (TAC ¶ 56.) In December of 2011, non-party Michael Cannaday placed his hand inside Clark's blouse and fondled her breast. (TAC ¶ 51.) Clark complained to management and "nothing was done." (*Id.*) On December 12, 2011, Clark discovered that Harris had searched her cubicle. (TAC ¶ 55.)

On February 14, 2012, Clark's employment was terminated, and she told that she had shown an "inappropriate" DVD to inmates. (TAC ¶¶ 46, 57.) Plaintiffs allege that Clark was terminated for her complaints, including complaints about sexual harassment. (TAC ¶¶ 51, 58.)

On March 5, 2012, Clark filed a complaint with the NYSDHR against Odyssey House, Harris and Brown, alleging discrimination on the basis of race, color and sex, and retaliation because she opposed discrimination, in violation of the NYSHRL and Title VII. (Compl. dated 3/5/2012 in Case No. 10153681 ("Clark NYSDHR Compl.") at ECF No. 37, annexed to Mellk Aff. as Ex. C.) Other than her termination [10] and mention of certain comments related to her race, [11] Clark presented the facts as described above. (*Id.* at ECF No. 45–52.) Clark's NYSDHR Complaint was forwarded to the EEOC. (*Id.* at ECF No. 37.) On August 31, 2012, the NYSDHR issued a determination that there was no probable cause to believe the Defendants engaged in the unlawful discriminatory practices of which Clark complained. (Determination and Order in Case No. 10153681, annexed to Mellk Aff. as Ex. E.) On January 20, 2013, the EEOC adopted these findings and informed Clark of her right to sue. (EEOC Dismissal and Notice of Rights for Sheila Clark, dated January 29, 2013, annexed to Mellk Aff. as Ex. G.)

## II. Discussion

### a. Standards of review

#### i. Rule 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it...." " *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.,* 790 F.3d 411, 417 (2d Cir.2015) (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000)); *Shabaj v. Holder,* 718 F.3d 48, 50 (2d Cir.2013) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir.2005)). A plaintiff asserting subject matter jurisdiction has the burden to prove that it exists, and in evaluating whether the plaintiff has met that burden, " '[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.' " *Morrison v. Nat'l Austl. Bank Ltd.,* 547 F.3d 167, 170 (2d Cir.2008) (citations omitted), *aff'd,* 561 U.S. 247, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010). A court may consider matters outside of the pleadings when determining whether subject matter jurisdiction exists. *M.E.S., Inc. v. Snell,* 712 F.3d 666, 671 (2d Cir.2013); *Romano v. Kazacos,* 609 F.3d 512, 520 (2d Cir.2010); *Morrison,* 547 F.3d at 170.

#### ii. Rule 12(b)(6)

**\*5** In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Tsirelman v. Daines,* 794 F.3d 310, 313 (2d Cir.2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.,* 131 F.3d 326, 329 (2d

Cir.1997)); *see also Matson v. Bd. of Educ.,* 631 F.3d 57, 63 (2d Cir.2011) (quoting *Connecticut v. Am. Elec. Power Co.,* 582 F.3d 309, 320 (2d Cir.2009)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson,* 631 F.3d at 63 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.,* 712 F.3d 705, 717–18 (2d Cir.2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678.

Analyzing a motion to dismiss an employment discrimination claim requires reference to the framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in which the Supreme Court set forth a burden-shifting scheme which governs a plaintiff's ultimate burden of proof at trial. *Littlejohn v. City of New York,* 795 F.3d 297, 307 (2d Cir.2015) (discussing burden-shifting, citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dep't of Cmty Affairs v. Burdine,* 450 U.S. 248, 253–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Under that framework, a plaintiff must first establish a *prima facie* case of discrimination. *Hicks,* 509 U.S. at 506; *see also Dowrich–Weeks v. Cooper Square Realty, Inc.,* 535 F. App'x 9, 11 (2d Cir.2013); *Ruiz v. Cty. of Rockland,* 609 F.3d 486, 491 (2d Cir.2010). The plaintiff's burden at this stage is "minimal." *Holcomb v. Iona Coll.,* 521 F.3d 130, 139 (2d Cir.2008) (quoting *Hicks,* 509 U.S. at 506). If plaintiff meets her burden at this stage, a "temporary presumption" of discrimination arises, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Vega v. Hempstead Union Free Sch. Dist.,* —— F.3d ——, ——, 2015 WL 5127519, at *8–9 (2d Cir. Sept. 2, 2015*). If the employer articulates a reason, the burden ultimately shifts back to the employee to show that the employer's reason was pretext. *Id.*

To survive a motion to dismiss, the plaintiff does not need to prove discrimination, or even allege facts establishing every element of the *McDonnell Douglas prima facie* case, but the facts alleged must give "plausible support to the reduced requirements" of the *prima facie* case. *Littlejohn,* 795 F.3d at 311; *see also Vega,* —— F.3d at ——, 2015 WL 5127519, at *9–10; *Williams v. N.Y.C. Hous. Auth.,* 458 F.3d 67, 71 (2d Cir.2006) ("[T]he requirements for establishing a prima facie case under *McDonnell Douglas* [do not] apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." (citing *Swierkiewicz v. Sorema,* 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002))); *see also Awad v. City of New York,* No. 13–CV–5753, 2014 WL 1814114, at *2 (E.D.N.Y. May 7, 2014) (noting that the elements of a *prima facie* case provide an outline of what would make a plaintiff's employment discrimination claim plausible). Thus, a plaintiff need only plead facts to give "plausible support" to plaintiff's "minimal" initial burden, which is governed by the statute under which she brings her claims. *Vega,* —— F.3d at ——, 2015 WL 5127519, at *9–10 (quoting *Littlejohn,* 795 F.3d at 307, 311).

### b. Time-barred claims

**\*6** Thomson brings several claims under Title VII and the ADA, alleging that she faced discrimination, retaliation, and a hostile work environment on the basis of her gender, race, national origin, and disability, and a failure to accommodate her disability. (TAC ¶¶ 73, 76, 78, 80.) Odyssey House argues that Thomson's claims under Title VII and the ADA are time-barred to the extent they rely on conduct occurring before September 5, 2013. (Def.Mem.11, 18–20.) Odyssey House further asserts that Thomson's ADA claims and Title VII discrimination and hostile work environment claims based on facts raised in her March 5, 2012 NYSDHR complaint are time-barred because Plaintiff failed to bring suit on those claims within ninety days of receiving the EEOC January 29, 2013 Right to Sue Notice. (Def. Mem. 12 n. 5, 18 n. 6.) Thomson argues that Odyssey House's refusal to permit her to return to work was part of "continuous discrimination" against her, making her claim timely. (Pl. Opp'n Mem. 14.) For the reasons set forth below, the Court finds that Thomson's federal claims that accrued before September 5, 2013 are not timely.

Before filing a Title VII or ADA action in federal court, a plaintiff must timely file charges of employment discrimination with the EEOC. 42 U.S.C. §§ 2000e–5(a), (e); 42 U.S.C. § 12117 (incorporating procedures set forth in § 2000e–5); *Ayazi v. N.Y.C.*

*Dep't of Educ.,* 586 F. App'x 600, 602 (2d Cir.2014); *McGullam v. Cedar Graphics, Inc.,* 609 F.3d 70, 75 (2d Cir.2010); *Williams v. N.Y.C. Hous. Auth.,* 458 F.3d 67, 69 (2d Cir.2006) (citing 42 U .S.C. § 2000e–5); *Zerilli–Edelglass v. N.Y.C. Transit Auth.,* 333 F.3d 74, 80 (2d Cir.2003); *Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir.1999). A federal employment discrimination claim is time-barred unless the plaintiff first files an EEOC charge within 180 days of the alleged discrimination, or within 300 days if the plaintiff had already filed a charge with the state or local employment agency. 42 U.S.C. § 2000e–5(e)(1); *see also Vega,* —— F.3d at ——, 2015 WL 5127519, at *4 (quoting 42 U.S.C. § 2000e–5(e)(1)); *McGullam,* 609 F.3d at 75. This requirement is analogous to a statute of limitations. *Vega,* —— F.3d at ——, 2015 WL 5127519, at *4; *Patterson v. Cty. of Oneida,* 375 F.3d 206, 220 (2d Cir.2004). When a plaintiff is issued a notice of right to sue from the EEOC, she has 90 days from receipt [12] of that notice to file a lawsuit relating to those charges. *Tiberio v. Allergy Asthma Immunology of Rochester,* 664 F.3d 35, 38 (2d Cir.2011) (concerning limitations period for both Title VII and ADA actions); *Jordan v. Forfeiture Support Assocs.,* 928 F.Supp.2d 588, 598 (E.D.N.Y.2013) (same).

Thomson filed two complaints with the EEOC, the first through the NYSDHR and the second directly with the EEOC, and was issued two notices of right to sue from the EEOC. Because the limitations periods apply differently to the claims raised in the two charges, the Court separately evaluates the causes of action raised in the two charges.

### i. Thomson's March 5, 2012 NYSDHR complaint

**\*7** Thomson's March 5, 2012 NYSDHR complaint, concerning her treatment while she was actively working at Odyssey House, was cross-filed with the EEOC, (Thomson March 5, 2012 NYSDHR Compl. at ECF No. 21), and a notice of right to sue was mailed to her on January 29, 2013, (January 29, 2013 Right to Sue Notice at ECF No. 65). While the Court has no information as to when Thomson actually received the January 29, 2013 Right to Sue Notice, there is a presumption that the notice was mailed on the date shown on the notice, and a presumption that the mailed document was received three days later. *Tiberio,* 664 F.3d at 37. In the absence of allegations contradicting this presumption, the Court assumes that Thomson received the January 29, 2013 Right to Sue Notice on February 1, 2013. *See id.; see also Friedman v. Swiss Re Am. Holding Corp.,* 512 F. App'x 94, 96 (2d Cir.2013); *Raeburn v. Dep't of Hous. Pres. & Dev.,* No. 10–CV–4818, 2015 WL 4016743, at *8 (E.D.N.Y. June 24, 2015) (citing *Sherlock v. Montefiore Med. Ctr.,* 84 F.3d 522, 525–26 (2d Cir.1996)). Therefore, Thomson had until May 2, 2013 to file an action regarding the claims in her March 5, 2012 NYSDHR complaint. Plaintiffs brought this action in state court in September of 2013, three months after the ninety-day period expired.

In Thomson's March 5, 2012 NYSDHR complaint, she alleged, *inter alia,* that she was subject to discrimination and retaliation in violation of the ADA and Title VII on the basis of her disability, race, ethnicity, creed, and sex, and was subject to sexual harassment and other harassment. [13] (Thomson March 5, 2012 NYSDHR complaint at ECF No. 24–25.) Thomson claimed that she was subjected to discrimination on the basis of her disability when she was told that Odyssey House had "no use" for her when she needed to stay out of extreme heat after her surgery, and was subjected to discrimination on the basis of race and sex based on comments from Harris and Herbert. (*Id.* at ECF Nos. 24, 28.) She indicated on the form complaint that she was denied a promotion or pay raise, training, leave, and accommodations, was subjected to harassment, and was given worse job duties and disciplinary notices. (*Id.* at ECF Nos. 25, 28–33.)

These claims are time-barred because Thomson failed to bring suit within ninety days of receiving the January 29, 2013 Right to Sue Notice, has not proffered any reason for failing to do so, and has not presented any facts to justify equitable tolling. [14] *See Tiberio,* 664 F.3d at 37–38 (holding that claim was time-barred when suit was filed 93 days after receiving right-to-sue notice); *Zerilli–Edelglass,* 333 F.3d at 78, 81 (noting claim was untimely when suit was filed 96 days after right-to-sue letter was received); *Stevenson v. N.Y. Dep't of Corr.,* 489 F. App'x 517, 517–18 (2d Cir.2012) (finding ADA claim time-barred when plaintiff failed to show that she timely filed the suit and failed to demonstrate a basis for equitable tolling); *Young v. Lord & Taylor, LLC,* 937 F.Supp.2d 346, 350 (E.D.N.Y.2013) (dismissing ADA claim filed eighteen months after right to sue letter was issued); *Cohn v. KeySpan Corp.,* 713 F.Supp.2d 143, 157–58 (E.D.N.Y.2010) (dismissing ADA claims as time-barred when they were not filed within 90 days of receipt of right-to-sue notice and plaintiff failed to show a basis for equitable tolling); *see also Kantor–Hopkins v. Cyberzone Health Club,* No. 06–CV–643, 2007 WL 2687665, at *7 (E.D.N.Y. Sept. 10, 2007)

(noting plaintiff's *pro se* status is not a basis for equitable tolling); *McFarland v. Metro–N. Commuter R.R.,* 993 F.Supp. 210, 211 (S.D.N.Y.1998) (same). The Court grants Odyssey House's motion as to Thomson's Title VII and ADA claims raised to the EEOC in March of 2012, and dismisses these claims.

### ii. Thomson's July 2, 2014 EEOC charge

**\*8** Thomson filed her second EEOC charge on July 2, 2014, concerning her April 2014 termination. (July 2, 2014 EEOC Charge at ECF Nos. 72–73.) Thomson was issued a notice of right to sue on September 12, 2014, while this action was pending. (September 12, 2014 Right to Sue Notice at ECF No. 75.) The 300–day period covered by the July 2, 2014 EEOC Charge extends back to September 5, 2013. The effect of this limitations period depends on the type of claim the plaintiff brings. *See McGullam,* 609 F.3d at 75 ("When ... a plaintiff's allegations of discrimination extend beyond the 300–day limitations period, the nature of the claim determines what consideration will be given to the earlier conduct." (quoting *Petrosino v. Bell Atl.,* 385 F.3d 210, 220 (2d Cir.2004))).

### 1. Discrimination and retaliation

"With respect to claims based on termination, failure to promote, denial of transfer, or refusal to hire, section 2000e–5(e) (1) precludes recovery for *discrete* acts of discrimination or retaliation that occur outside the statutory time period, even if other acts of discrimination occurred within the statutory time period." *Id.* (citations and internal quotation marks omitted); *see Valtchev v. City of New York,* 400 F. App'x 586, 588 (2d Cir.2010) ( "Termination, failure to promote, and refusal to hire are considered 'discrete acts' which are 'easy to identify' and claims [under Title VII, the ADA and the ADEA] based on each are barred if not timely filed."); *Petrosino,* 385 F.3d at 220 ("Other Title VII claims, such as those for termination or failure to promote, are based on 'discrete acts,' each giving rise to a separate cause of action."); *Benjamin v. Brookhaven Sci. Assocs., LLC,* 387 F.Supp.2d 146, 153 (E.D.N.Y.2005) ("It is well-settled that alleged adverse employment practices such as failure to promote, failure to compensate adequately, undesirable work transfers, and denial of preferred job assignments are considered discrete acts."). "Recovery for discrete acts of discrimination that occur outside of the applicable limitations period is precluded, even if the acts are related to acts alleged in timely filed charges." *Lukasiewicz–Kruk v. Greenpoint YMCA,* 404 F. App'x 519, 520 (2d Cir.2010) (citing *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)); *see also Vega,* —— F.3d at ——, 2015 WL 5127519, at \*4 (noting claims based on identifiable discrete discriminatory acts are time-barred if they occurred outside the limitations period). A wrongful termination claim accrues on the date the parties understand the termination to be final. *Arias–Mieses v. CSX Transp., Inc.,* 630 F.Supp.2d 328, 332 (S.D.N.Y.2009) (citing *Morgan,* 536 U.S. at 110); *see also Andrews v. Fremantlemedia, N.A., Inc.,* —— F. App'x ——, 2015 WL 4998064, at \*1 (2d Cir. Aug.24, 2015) (noting discrimination claim generally accrues at the time of discriminatory act).

Plaintiffs contend that the April 2014 termination and refusal to help Thomson determine a reasonable accommodation for her alleged disability were retaliatory and discriminatory actions. (Pl. Opp'n Mem. 12–14.) Though the complaint is not clear as to when Thomson noted her interest in returning to work at Odyssey House, Thomson pleaded that she was "let go" in April of 2014, indicating that is the date she understood her termination to be final. *See Arias–Mieses,* 630 F.Supp.2d at 322; *see also Troeger v. Ellenville Cent. Sch. Dist.,* 523 F. App'x 848, 851 (2d Cir.2013) (finding failure to accommodate disability is a discrete act). Because April of 2014 is within the 300–day window, claims arising from the April 2014 termination are timely.

**\*9** In her EEOC charge, Thomson alleges that she believed that the refusal to permit her to return to work after she had filed "claims" of gender, sexual orientation, race and national original discrimination, was discriminatory and retaliatory.[15] (July 2, 2014 EEOC Charge at ECF No. 72.) In her EEOC charge, Thomson references various comments from the Individual Defendants regarding Plaintiff's sexuality and gender, which comments were also referenced in Thomson's March 5, 2012 NYSDHR complaint. (*Id.*) In the TAC, Thomson indicates her belief that she was terminated because she complained about discrimination against herself and Clark, and because Odyssey House viewed her as disabled. (TAC ¶ 42.) Thomson argues that the claims based on the Individual Defendants' actions are not time-barred because they were a part of a series of "continuous discriminatory practices" which culminated in her termination. (Pl. Opp'n Mem. 14.)

Under the "continuing violation" exception to the 300–day limitations period, if a "plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of N.Y. & N.J.,* 685 F.3d 135, 155–56 (2d Cir.2012) (alteration omitted); *Jackson v. N.Y. Office of Mental Health,* No 11–CV–7832, 2012 WL 5862741, at *2 (S.D.N.Y. Nov.15, 2012) ("The continuing violation exception makes violations that took place prior to the expiration of the statute of limitations actionable if they are part of a 'continuous policy and practice of discrimination' and at least one act in that policy and practice took place within the limitations period." (quoting *Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir.2001))). The "existence of a discriminatory policy or mechanism" is "required under the continuing violation theory." *Lukasiewicz–Kruk,* 404 F. App'x at 520. However, the continuing violations doctrine does not permit a plaintiff to bring untimely claims for freestanding discrete acts of discrimination or retaliatory actions, such as a failure to promote or termination, even if they are "related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Ramlal–Nankoe v. Ithaca Coll.,* 591 F. App'x 23, 25 (2d Cir.2015) ("Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." (quoting *Morgan,* 536 U.S. at 114)); *Chin,* 685 F.3d at 155–56 (discussing Morgan). "Discrete acts ... which fall outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." *Chin,* 685 F.3d at 157.

Plaintiffs have not alleged the "existence of a discriminatory policy or mechanism" as "required under the continuing violation theory," *Lukasiewicz–Kruk,* 404 F. App'x at 520, and Thomson has not pointed to any discriminatory policy or pattern to which she was subjected. Furthermore, Thomson has alleged very little concerning the April 2014 termination—only that she noted her interest in returning at an unidentified time and was "let go," and her conclusory allegations that she was terminated for discriminatory reasons and subjected to continuing discrimination. *See, e.g., Deras v. Metropolitan Transp. Auth.,* No. 11–CV–5912, 2013 WL 1193000, at *7 (E.D.N.Y. Mar. 22, 2013) (finding that the plaintiff's conclusory allegations were insufficient to trigger the continuing violation doctrine); *Askew v. New York,* No. 09–CV–553, 2013 WL 450165, at *7 (N.D.N.Y. Feb. 6, 2013) (holding that plaintiff's arguments and conclusory allegations were insufficient to "warrant application of the continuing violation doctrine"); *Kenney v. N.Y.C. Dep't of Educ.,* No. 06–CV–5770, 2007 WL 3084876, at*5 (S.D.N.Y. Oct. 22, 2007) ("[Plaintiff's] conclusory allegations that she has suffered from a continuing practice of discrimination by the DOE, without more, are insufficient to trigger a continuing violation exception to the 300–day statute of limitations."). Therefore, even if the discrimination and retaliation claims arising out of conduct in 2011 were not barred by the ninety-day limitations period, Thomson cannot bring claims against Odyssey House for these alleged adverse actions occurring prior to September 5, 2013, the start of the 300–day limitations period. [16]

**\*10** However, the allegations concerning the time-barred period may be relevant and are admissible as "background evidence" for the timely claims. *Chin,* 685 F.3d at 145; *McGullam,* 609 F.3d at 86 (Calabresi, J., concurring); *Ferraro v. N.Y.C. Dep't of Educ.,* No. 13–CV–5837, 2015 WL 1476392, at *2 (E.D.N.Y. Mar.31, 2015) (order adopting report and recommendation); *Bowen–Hooks v. City of New York,* 13 F.Supp.3d 179, 208 (E.D.N.Y.2014) (citing *Davidson v. LaGrange Fire Dist.,* 523 F. App'x 838, 839 (2d Cir.2013)).

### 2. Hostile work environment

Hostile work environment claims are "different in kind from discrete acts" since "[t]heir very nature involves repeated conduct," and "[t]he 'unlawful employment practice' therefore cannot be said to occur on any particular day." *McGullam,* 609 F.3d at 75. "Accordingly, consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Id.* (citation and internal quotation marks omitted). However, actions outside the limitations period must be sufficiently similar in kind to those within the relevant time period such that the events constitute the "same" hostile work environment. *Moll v. Telesector Res. Grp., Inc.,* 760 F.3d 198, 203 (2d Cir.2014) (holding that even facially-neutral incidents must be considered in determining whether a hostile work environment exists under Title VII); *McGullam,* 609 F.3d at 77; *see also Alfano v. Costello,* 294 F.3d 365, 378 (2d Cir.2002) ("[I]ncidents that are facially sex-

neutral may sometimes be used to establish a course of sex-based discrimination—for example, where the same individual is accused of multiple acts of harassment, some overtly sexual and some not.").

Thomson alleges that she actively worked at Odyssey House until her injury on September 14, 2011, remained out of work for an unspecified period of time, and that Odyssey House refused to let her return in April of 2014. She alleges no facts regarding her interaction with Odyssey House between September 2011 and April 2014, except her "noted" interest in returning to work there, and has not alleged any specific hostile act contributing to a hostile work environment in the 300 days prior to the July 2, 2014 EEOC charge. Although the April 2014 termination did occur in that time, termination is a discrete act that is not part of her hostile work environment claim. *Brown v. N.Y.C. Dep't of Educ.,* 513 F. App'x 89, 91 (2d Cir.2013) ("The letter notifying Brown of her termination cannot save her hostile work environment claim, because her termination was a separate and discrete act."); *Patterson v. Cty. of Oneida,* 375 F.3d at 220 ("[T]he mere fact that an employee was dismissed within the statutory period cannot be used to pull in[to the statutory period] a time-barred discriminatory act ..." (alteration and internal quotation marks omitted)); *Butler v. Coca–Cola Refreshments USA, Inc.,* No. 12–CV–1791, 2013 WL 3324995, at *3 (E.D.N.Y. July 1, 2013) ("An employee's termination is the paradigmatic 'discrete act' that cannot be part of a hostile work environment claim."). Furthermore, to the extent Thomson is attempting to revive her time-barred claims by arguing that the conduct outside the limitations period provides a relevant lens through which Defendant's timely actions should be analyzed, the Second Circuit has indicated that conduct outside the limitations period is relevant in a hostile work environment claim only to the extent it is related to later conduct. *See Sanderson v. N.Y. State Elec. & Gas Corp.,* 560 F. App'x 88, 92 (2d Cir.2014) (finding no evidence that plaintiff's reassignment to day shift was related to earlier instances of harassment or based on her sex, and thus reassignment could not render a claim based on earlier, pre-limitations period, conduct timely). There is no indication here that Thomson's limited interaction with Odyssey House after the relevant limitations period began on September 5, 2013—when she noted her interest in returning to work and was refused—was related to the comments or treatment Thomson experienced prior to that date. The statute of limitations therefore bars consideration of Thomson's hostile work environment claim against Odyssey House.

### c. Election of remedies doctrine

 **\*11**   Thomson alleges discrimination, hostile work environment and retaliation in violation of the NYSHRL on the basis of color, gender, race and disability, (TAC ¶ 71), and in violation of the NYCHRL on the basis of sexual orientation, gender and race, (TAC ¶¶ 60, 62). She also alleges discrimination and retaliation on the basis of disability in violation of the NYCHRL. (TAC ¶¶ 66–68, 70.) Clark alleges discrimination, hostile work environment, and retaliation in violation of the NYSHRL on the basis of color, gender, race and race identity. (TAC ¶¶ 63, 65.)

Odyssey House argues that all of Plaintiffs' claims under the NYSHRL and NYCHRL are barred by the election of remedies provisions in those statutes to the extent Plaintiffs rely on conduct that occurred prior to March 5, 2012, the date both Plaintiffs filed NYSDHR complaints. (Def.Mem.10–11.) Odyssey House argues that Plaintiffs presented their claims to the NYSDHR, thereby electing to proceed in the administrative process and precluding this federal lawsuit. (*Id.*) Plaintiffs claim that their suit should not be barred because (1) they appeared *pro se* in the NYSDHR proceedings and could not raise all of their arguments effectively, and (2) their complaints to the NYSDHR and allegations in this action are not based on the same grievances, particularly with regards to Thomson's April 2014 termination. (Pl. Opp'n Mem. 7–8.)

Under both the NYSHRL and the NYCHRL, an individual who files a complaint with the NYSDHR is jurisdictionally barred from filing a lawsuit in state or federal court for the same claims. *See* N.Y. Exec. Law § 297(9); N.Y.C. Admin. Code § 8–502(a); *Desardouin v. City of Rochester,* 708 F.3d 102, 106 (2d Cir.2013); *York v. Ass'n of the Bar,* 286 F.3d 122, 127 (2d Cir.2002); *see also DuBois v. Macy's Retail Holdings, Inc.,* 533 F. App'x 40, 41 (2d Cir.2013) ("Furthermore, the election of remedies doctrine under both the [NYSHRL] and [NYCHRL] precludes a plaintiff from pursuing his discrimination claims in a court of law when the same claims were previously brought before a local administrative agency." (citing N.Y. Exec. Law § 297(9) and N.Y.C. Admin. Code § 8–502)). "The election of remedies bar also precludes consideration of any claim—whether brought under the NYSHRL or the NYCHRL—arising out of the same incident on which [the plaintiff's] [NY]SDHR complaint was based." *Higgins v. NYP Holdings, Inc.,* 836 F.Supp.2d 182, 188 (S.D.N.Y.2011) (citing, *inter alia, Emil v. Dewey,* 49 N.Y.2d 968, 969, 428 N.Y.S.2d 887, 406 N.E.2d 744 (1980))). Courts have interpreted "same claim" as meaning claims arising out of

the "same incident on which plaintiff's SDHR complaint was based [i.e.,] ... if they are based on the same operative events." *Williams v. City of New York,* 916 F.Supp.2d 517, 521 (S.D.N.Y.2013) (alteration omitted) (quoting *Higgins,* 836 F.Supp.2d at 188–89); *see, e.g., Yong Chul Son v. Chu Cha Lee,* 559 F. App'x 81, 82 (2d Cir.2014) (affirming dismissal of NYSHRL and NYCHRL claims when NYSDHR had reviewed NYSHRL and Title VII claims on same facts); *Carroll v. U.P.S.,* No. 00–CV–7032, 2000 WL 1185583, at *3 (2d Cir. Aug.21, 2000) ("Because [plaintiff's] two sets of claims arise out of the same group of facts, the matter before this court is jurisdictionally barred."); *Jones–Kahn v. Westbury Bd. of Educ.-Westbury Union Free Sch. Dist.,* No. 13–CV–7144, 2015 WL 1529839, at *12 (E.D.N.Y. Mar.31, 2015) (dismissing NYSHRL claims under election of remedies doctrine when claims arose from substantially the same set of facts, even though plaintiff provided additional facts in the complaint to flesh out her allegations). "The election of remedies bar is jurisdictional, such that claims dismissed pursuant to it must be dismissed under Fed.R.Civ.P. 12(b)(1) rather than 12(b)(6)." *Higgins,* 836 F.Supp.2d at 187 (citing *Moodie v. Federal Reserve Bank,* 58 F.3d 879, 882 (2d Cir.1995)).

**\*12**  The parties agree that to the extent Thomson alleges that she was wrongfully terminated in violation of the NYSHRL and NYCHRL, the wrongful termination claims are not barred because the April 2014 termination occurred after Thomson filed her March 5, 2012 NYSDHR complaint. However, under the election of remedies doctrine, the Court lacks jurisdiction over Thomson's NYSHRL discrimination and retaliation claims arising from events pre-dating her March 5, 2012 NYSDHR complaint, Thomson's NYSHRL hostile work environment claim, and all of Clark's NYSHRL claims, as the claims investigated by the NYSDHR arise out of the same events as the NYSHRL claims alleged in this action. [17]  *See Jones–Kahn,* 2015 WL 1529839, at *12; *Williams,* 916 F.Supp. at 521–22. Furthermore, Thomson's NYCHRL discrimination and retaliation claims arising from events pre-dating her March 5, 2012 NYSDHR complaint and her NYCHRL hostile work environment claim are barred because they are based on the same incidents as those presented to the NYSDHR. *Clemmer v. Fordham Bedford Cmty. Servs.,* No. 14–CV–2343, 2015 WL 273657, at *5 (S.D.N .Y. Jan. 16, 2015) (finding both NYCHRL and NYSHRL claims of disability discrimination precluded by election of remedies doctrine when plaintiff presented to the NYSDHR a claim of discrimination under the NYSHRL based on the same allegations); *Williams,* 916 F.Supp. at 520–23 (finding NYCHRL and NYSHRL claims barred although plaintiff had only filed with NYSDHR claims of discrimination under the NYSHRL); *Higgins,* 836 F.Supp.2d at 188–89 (applying election of remedies bar to both NYSHRL and NYCHRL claims arising out of incident described in NYSDHR complaint). Finally, neither exception to this jurisdictional bar—that the NYSDHR complaint was dismissed for administrative convenience, or that the complaint was only filed with the NYSDHR after it was filed with the EEOC pursuant to the duty-sharing rules, *see Jackson v. N.Y.S. Dep't of Labor,* 709 F.Supp.2d 218, 225 (S.D.N.Y.2010)—applies. Accordingly, the NYSHRL and NYCHRL claims based on the facts alleged in Thomson's and Clark's March 5, 2012 NYSDHR complaints are dismissed for lack of jurisdiction.

The Court now turns to the merits of Plaintiffs' remaining claims against Odyssey House: Thomson's hostile work environment claims under Title VII and the NYSHRL; Thomson's race, and gender discrimination claims under Title VII and the NYSHRL, color discrimination under the NYSHRL and national origin discrimination claim under Title VII; Thomson's disability discrimination claims under the ADA, NYSHRL and NYCHRL; Clark's Section 1981 retaliation claim and Thomson's retaliation claims under the ADA, Title VII, Section 1981 and the NYSHRL; [18] and Thomson's discrimination, hostile work environment and retaliation claims under the NYCHRL.

### d. Thomson's Title VII and NYSHRL hostile work environment claim

Thomson alleges a Title VII hostile work environment claim on the basis of gender, race and national origin, and a NYSHRL hostile work environment claim on the basis of color, disability, gender and race. (TAC ¶¶ 71, 78.) Odyssey House contends that because Thomson did not work for Odyssey House after September 2011, and because her claims arising from earlier conduct are barred, Thomson has not sufficiently pleaded a hostile work environment claim. (Def.Mem.19, 21–22.)

**\*13**  "The standards for evaluating hostile work environment ... claims are identical under Title VII and the NYSHRL." *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.,* 716 F.3d 10, 14 (2d Cir.2011). To plead that she was subjected to a hostile work environment in violation of Title VII, "a plaintiff must show that 'the workplace is permeated with discriminatory

intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn,* 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)); *Moll,* 760 F.3d at 203. "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn,* 795 F.3d at 321 (quoting *Raspardo v. Carlone,* 770 F.3d 97, 114 (2d Cir.2014)).

The only allegation as to Thomson's interactions with Odyssey House after she left work in September 2011 is that at some unspecified time, Thomson "noted interest" in returning to work and Odyssey House "refused to return her to work and let her go on or about April 2014." (TAC ¶ 41.) Plaintiffs have alleged no other facts as to Thomson's interaction with Odyssey House between September 2011 and the April 2014 termination, and the stated allegations are insufficient to support a claim of hostile work environment. *See Brown,* 513 F. App'x at 91; *De La Peña v. Metro. Life Ins. Co.,* 953 F.Supp.2d 393, 402 (E.D.N.Y.2013) (noting that issuance of termination letter was not grounds for a hostile work environment claim), *aff'd,* 552 F. App'x 98 (2d Cir.2014). Thomson has not made any specific allegations as to any conduct by Odyssey House between September 2011 and April 2014 other than noting her interest in returning to work but being "let go," which was not severe enough to create an abusive working environment on any of the grounds that Thomson alleges. *See Dechberry v. N.Y.C. Fire Dep't,* No. 14–CV– 2130, 2015 WL 4878460, at *10 (E.D.N.Y. Aug.14, 2015) (dismissing hostile work environment claim because plaintiff failed to do more than make conclusory allegations and pointed to no specific conduct); *Mullins v. Consol. Edison Co. of N.Y., Inc.,* No. 13–CV–6800, 2015 WL 4503648, at *12 (S.D.N.Y. July 22, 2015) (noting that, while one encounter can constitute a hostile work environment if it is severe, "as a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive" (quoting *Feingold v. New York,* 366 F.3d 138, 150 (2d Cir.2004))); *see also Terry v. Ashcroft,* 336 F.3d 128, 148 (2d Cir.2003) (noting a "mild, isolated" incident does not make a workplace hostile (quoting *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 70 (2d Cir.2000))). As a result, her Title VII and NYSHRL hostile work environment claims are dismissed as to Odyssey House.

### e. Thomson's Title VII and NYSHRL discrimination claims

*14 Thomson claims that she was discriminated against in violation of Title VII on the basis of gender, race and national origin, and in violation of the NYSHRL on the basis of color, disability, [19] gender and race. (TAC ¶ 76). Odyssey House contends that Thomson has not alleged any facts that would lead to the plausible inference that her gender, national origin, race or color was related to the decision to "let her go" in April of 2014. (Def.Mem.21–22.)

A plaintiff asserting a Title VII discrimination claim must allege facts showing that "(1) the employer took adverse action against [her] and (2)[her] race, color, religion, sex, or national origin was a motivating factor in the employment decision," which can be shown "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega,* —— F.3d at ——, 2015 WL 5127519, at *11–12. In other words, "absent direct evidence of discrimination," to survive a motion to dismiss a claim of employment discrimination in violation of Title VII, a plaintiff must plausibly allege facts that *would support a finding* that she suffered an adverse employment action and "has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn,* 795 F.3d at 311; *Dechberry,* 2015 WL 4878460, at *14. As with hostile work environment claims, claims of discrimination under the NYSHRL are analyzed under the same standard as a Title VII claim. *Vargas v. Morgan Stanley,* 438 F. App'x 7, 9 (2d Cir.2011) (analyzing Title VII, Section 1981 and NYSHRL discrimination claims under the same standard); *Forrest v. Jewish Guild for the Blind,* 3 N.Y.3d 295, 305, 305 n. 3, 786 N.Y.S.2d 382, 819 N.E.2d 998 (2004) (commenting that Title VII and the NYSHRL have the same standard for recovery and similar statutory language, and are therefore analyzed according to the same standards).

Here, the only disputed question is whether Thomson has pleaded the "minimal" facts necessary to show that her sex, race or national origin was a motivating factor in her April 2014 termination. (*See* Def. Mem. 19.) As there is no direct evidence of discrimination, the Court looks to whether the allegations support a "plausible inference of discrimination." *See Vega,* —— F.3d at ——, 2015 WL 5127519, at *12.

Whether facts give rise to a plausible inference of discrimination "is a '[flexible [standard] that can be satisfied differently in differing factual scenarios.' " *Howard v. MTA Metro–N. Commuter R.R.,* 866 F.Supp.2d 196, 204 (S.D.N.Y.2011) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.,* 92 F.3d 81, 91 (2d Cir.1996)); *see also Moore v. Kingsbrook Jewish Med. Ctr.,* No. 11–CV–3625, 2013 WL 3968748, at *6 (same). "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.' " *Littlejohn,* 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.,* 584 F.3d 487, 502 (2d Cir.2009)). Remarks made by coworkers may also be probative of discriminatory intent, depending on the particular circumstances under which the comment was made. *Henry v. Wyeth Pharm., Inc.,* 616 F.3d 134, 149 (2d Cir.2010) (outlining four factors district courts in this circuit routinely consider in evaluating the probative value of such remarks, including (1) the identity and position of the individual making the remark, (2) the timing of the remark in relation to the employment decision, (3) the content of the remark, and (4) the context in which it was made); *Mesias v. Cravath, Swaine & Moore LLP,* —— F.Supp.3d ——, 2015 WL 2069419, at *6 (S.D.N.Y. May 4, 2015) ("Remarks may raise an inference of discrimination if there is a nexus between the remarks and an adverse employment decision." (citing *Zhang v. Barr Labs., Inc.,* No. 98–CV–5717, 2000 WL 565185, at *4 (S.D.N.Y. May 8, 2000))).

**\*15** Thomson's only allegations are that she "noted" that she wished to return to work at some unspecified time following her leave of absence and, in April of 2014, Odyssey House "let her go." Plaintiffs present no allegations that Thomson was replaced by another employee of another gender, race or national origin, c*f. Littlejohn,* 795 F.3d at 313 (allegation that plaintiff was replaced by white employee with less experience when plaintiff was demoted was more than sufficient to satisfy pleading requirements of disparate treatment claim under Title VII), or that she was treated differently from similarly-situated individuals with respect to her termination.

Furthermore, while Plaintiffs have alleged that Thomson was subject to criticism from Harris and Brown and that Thomson heard several derogatory comments directed at her and other black women, there is no indication that these comments—made in 2011—were related to the April 2014 termination. *See Mesias,* —— F.Supp.3d ——, 2015 WL 2069419, at *6 (finding plaintiff failed to sufficiently allege a gender and age discrimination claim based on two remarks made by plaintiff's supervisor a year and a half and three months, respectively, before plaintiff was fired); *Haggood v. Rubin & Rothman, LLC,* No. 14–CV–34L, 2014 WL 6473527, at *9 (E.D.N.Y. Nov.17, 2014) (dismissing race discrimination claims premised on "racially offensive and discriminatory" comments made by coworkers on four occasions over thirty-three month period ending more than one year prior to the adverse employment action); *see also Patane v. Clark,* 508 F.3d 106, 112 (2d Cir.2007) (finding plaintiff failed to state a Title VII gender discrimination claim because she failed to allege the named defendants subjected her to an adverse employment action, and alleged no facts from which gender-based motivation could be inferred). Plaintiffs also do not allege in the TAC that the Individual Defendants, who made the comments in 2011, before Thomson's leave of absence, were employed in the same capacity at Odyssey House in April of 2014 or had anything to do with the decision to "let [Thomson] go." *Cf. Rose v. N.Y.C. Bd. of Educ.,* 257 F.3d 156, 162 (2d Cir.2001) (finding that discriminatory remarks were probative of discriminatory animus when made by plaintiff's "immediate supervisor, who had enormous influence in the decision-making process"); *Awad,* 2014 WL 1814114, at *4 (finding allegations that supervisor and decision-maker made a number of discriminatory remarks about plaintiff were sufficient to show discriminatory intent prong of *prima facie* case). Plaintiffs' failure to set forth allegations regarding Thomson's April 2014 termination from Odyssey House cannot support Thomson's claim that she was "let [ ] go" because of her race, gender, or national origin.

#### f. Disability discrimination

##### i. ADA claims

Thomson alleges that Defendants discriminated and retaliated [20] against her on the basis of her disability in violation of the ADA, and failed to accommodate her disability. (TAC ¶ 73.) Thomson contends that she was severely disabled, and, in opposition to the motion, presents new facts regarding the severity of her September 2011 injury which were not alleged in the TAC.

(Pl. Opp'n Mem. 8–11.) Plaintiffs also contend that Thomson was only required to plead that Defendants did not engage in an interactive process to determine what accommodations would be appropriate for her disability, or that she was otherwise not granted a reasonable accommodation. (*Id.* at 10–11.)

**\*16**  Odyssey House contends that Thomson has not sufficiently alleged that she suffered from a disability within the scope of the ADA or that Odyssey House regarded her as disabled and took any adverse action because of that perception. (Def. Mem. 12, 14–15; Def. Reply Mem. 4–5.) Odyssey House further contends that Plaintiff has not stated a failure to accommodate claim because she does not allege that she requested an accommodation or was denied any particular accommodation, and that a two-and-a-half year leave of absence is not a reasonable accommodation under the ADA. (*Id.* at 13–14.)

### 1. Wrongful termination

Under the ADA, covered employers cannot "discriminate against a qualified individual on the basis of disability" with regard to employment decisions. 42 U.S.C. § 12112. Under the *McDonnell Douglas* burden-shifting framework, to establish a *prima facie* case of discrimination under the ADA, a plaintiff must allege that "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability." *Kinneary v. City of New York,* 601 F.3d 151, 155–56 (2d Cir.2010) (citations omitted); *see also Adams v. Festival Fun Parks, LLC,* 560 F. App'x 47, 48–49 (2d Cir.2014) (quoting *McMillan v. City of New York,* 711 F.3d 120, 125 (2d Cir.2013)) (outlining *prima facie* test under the ADA).

As with Title VII discrimination claims, while a plaintiff need not specifically plead each and every element of a prima facie case of discrimination to survive a motion to dismiss, the standard provides a framework for analyzing whether the plaintiff's claims for relief are plausible. *Dechberry,* 2015 WL 4878460, at \*16. Applying the analysis employed in Title VII discrimination claims by the Second Circuit, to survive a motion to dismiss, a plaintiff must allege facts that show (1) the employer took adverse action against her, and (2) the action was taken *because of* her disability or perceived disability. *See Smith v. Hogan,* 794 F.3d 249, 253 (2d Cir.2015) ("In order to establish a prima facie case of employment discrimination under the ADA or the Rehabilitation Act, a plaintiff must adequately plead that he was terminated because of a qualifying disability."); *Giambattista v. Am. Airlines, Inc.,* 584 F. App'x 23, 25 (2d Cir.2014) ("To state a claim for discrimination under the ADA, a plaintiff must allege facts which plausibly suggest, inter alia, that she 'suffered [an] adverse employment action because of [her] disability.' " (quoting *Giordano v. City of New York,* 274 F.3d 740, 747 (2d Cir.2001)); *cf. Vega,* —— F.3d at ——, 2015 WL 5127519, at \*12.

For substantially the same reasons as discussed above, Thomson has failed to present any allegations that would give rise to the inference that her alleged disability or perceived disability played a motivating role [21] in her April 2014 termination from Odyssey House. While Thomson alleged that Harris sent her to work in a humid environment, despite her work restriction and that Brown made a disrespectful comment regarding her work restriction in July of 2011, and that Herbert potentially caused her further injury in September of 2011, nothing connects these actions to Odyssey House's decision to "let her go" nearly three years later. *See Perry v. NYSARC, Inc.,* 424 F. App'x 23, 25–26 (2d Cir.2011) (upholding dismissal of ADA claim on grounds plaintiff failed to allege discriminatory animus, when only allegations relating to discrimination were remarks of unidentified human resources officer, which ultimately did not "suggest that the employer's decision to alter Perry's duties was motivated by assumptions or attitudes regarding the abilities of persons" with her disability); *Jordan,* 928 F.Supp.2d at 608 (finding "virtually no connection" between disability and termination when plaintiff was discharged several years after being scolded for incorrectly taking worker's compensation instead of disability leave). Plaintiffs rely on the single conclusory allegation that Odyssey House refused to permit Thomson to return in April of 2014 because it perceived her as disabled, which alone cannot sustain a "plausible" claim for discrimination.

**\*17**  Furthermore, Plaintiffs have not alleged facts explaining the nature of Thomson's impairment which would show that she had a disability or perceived disability on which Odyssey House could have discriminated against her at the time of the April 2014 termination. *See Giambattista,* 584 F. App'x at 25 (noting that because plaintiff did not allege she had a disability,

she was required to "raise a reasonable inference" that her employer discriminated against her because she was perceived to have a disability). "The ADA Amendment Act of 2008 ('ADAAA') defines 'disability' as: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Dechberry,* 2015 WL 4878460, at \*16 (citing 42 U.S.C. § 12102(1)); *see also Sherman v. Cty. of Suffolk,* 71 F.Supp.3d 332, 345 (E.D.N.Y.2014). While an impairment need not "prevent, or significantly or severely restrict" the plaintiff from engaging in a major life activity to constitute a disability, "not every impairment will constitute a disability" within the meaning of the ADA. 29 C.F.R. § 1630.2(j)(1)(ii); *Anderson v. Nat'l Grid, PLC,* —— F.Supp.3d ——, 2015 WL 1323977, at \*12 (E.D.N.Y. Mar.25, 2015).

A plaintiff may be *regarded* as having a disability "whether or not the impairment limits or is perceived to limit a major life activity." *Jordan,* 928 F.Supp.2d at 606. But, "[a]n individual cannot be regarded as disabled under the ADA where the impairment is transitory and minor. A transitory impairment is defined as 'an impairment with an actual or expected duration of [six] months or less.' " *Hernandez v. Int'l Shoppes, LLC,* ——F.Supp.3d ——, 2015 WL 1858997, at \*14 (E.D.N.Y. Apr.23, 2015) (alteration in original) (quoting 42 U.S.C. § 12102(3)(B)), *appeal dismissed* (June 18, 2015); *Llano v. N.Y.C. Health & Hosps. Corp.,* No. 13–CV–5820, 2014 WL 1302654, at \*1 (S.D.N.Y. Mar.31, 2014).

Plaintiffs allege that Thomson's condition was severe enough to warrant hospitalization, and that the injury to a surgery site on her breast necessitated "several weeks" of leave in September of 2011.[22] (*See* TAC ¶¶ 39–40.) The TAC is devoid of facts which would suggest that the impairment limited a major life activity other than weeks of leave, or that any Odyssey House employee believed that Thomson's impairment constituted anything more than a transitory or minor injury necessitating only weeks of leave, as Thomson herself alleged. *See Shaughnessy v. Xerox Corp.,* No. 12–CV–6158, 2015 WL 1431687, at \*3 (W.D.N.Y. Mar.27, 2015) (finding ankle sprain which permitted plaintiff to return to work after approximately one month was not a disability within the meaning of the ADA); *Graham v. Macy's Inc.,* No. 14–CV–3192, 2015 WL 1413643, at \*3 (S.D.N.Y. Mar.23, 2015) (dismissing ADA claims based on bipolar disorder when complaint failed to explain how disorder limited plaintiff's major life activities); *Llano,* 2014 WL 1302654, at \*2 (finding plaintiff failed to adequately allege that she was disabled or perceived as disabled under the ADA when she alleged that she experienced nausea and unidentified "complications," failed to alleged that they limited a major life activity, and failed to allege that it was more than minor or was perceived to last more than six months); *Mastrio v. Eurest Servs., Inc.,* No. 13–CV–00564, 2014 WL 840229, at \*6 (D.Conn. Mar. 4, 2014) (dismissing ADA discrimination claim because plaintiff failed to allege he suffered a limitation of major life activities during month he was recovering from kidney stone operation); *Emmons v. City Univ. of New York,* 715 F.Supp.2d 394, 408–09 (E.D.N.Y.2010) (dismissing ADA claim because plaintiff failed to allege substantial limitation, was cleared to return to work within two months, and did not set forth facts showing that defendants regarded her as disabled). Because Thomson has failed to allege facts that could show she had a disability or was perceived as having a disability, or that the April 2014 termination occurred because of her disability, Thomson's ADA discrimination claim against Odyssey House is dismissed.

### 2. Failure to accommodate

**\*18** Failure to accommodate is a type of disability discrimination that also follows the *McDonnell Douglas* burden-shifting scheme. In order to establish a prima facie case for failure to accommodate, a plaintiff must show that (1) she is a person with a disability under the meaning of the ADA, (2) her employer is a covered entity, (3) the plaintiff could perform the essential functions of her job with an accommodation, and (4) the defendant refused to make such an accommodation. *McMillan,* 711 F.3d at 125–26 (quoting *McBride v. BIC Consumer Prods. Mfg. Co., Inc.,* 583 F.3d 92, 97 (2d Cir.2009)). Assuming, *arguendo,* that Thomson suffered from a disability within the meaning of the ADA, Plaintiffs do not allege when, if ever, Thomson notified Odyssey House of her disability or sought any kind of accommodation other than noting her interest in returning to work. This single allegation cannot give rise to a plausible inference that Odyssey House failed to accommodate Thomson's disability. *See Graham,* 2015 WL 1413643 at \*4; *Ray v. Weit,* No. 13–CV–6416, 2015 WL 1299198, at \*6 (E.D.N.Y. Mar.20, 2015); *Jordan,* 928 F.Supp.2d at 609 (dismissing failure to accommodate claim because plaintiff "merely assert [ed] that she was terminated based on her disability several years after she informed defendant of her diagnosis"). The Court therefore dismisses Thomson's failure to accommodate claim against Odyssey House.

#### ii. NYSHRL and NYCHRL disability discrimination claims

Thomson similarly brings claims for wrongful termination on the basis of disability and failure to accommodate under the NYCHRL and NYSHRL. (TAC ¶¶ 66–68, 71.) Odyssey House argues that Thomson failed to plead facts to show that she was disabled under the terms of the NYSHRL or the NYCHRL, that she requested an accommodation, or that it failed to participate in an interactive process to determine whether a reasonable accommodation was available for her purported disability. (Def.Mem.23–24.)

Thomson has not alleged that she suffered from discrimination on the basis of her disability within the meaning of the NYSHRL or NYCHRL. The elements to find disability discrimination under the NYSHRL and NYCHRL generally track the ADA. *Kinneary,* 601 F.3d at 158; *Pagan v. Morrisania Neighborhood Family Health Ctr.,* No. 12–CV–9047, 2014 WL 464787, at *6 (S.D.N.Y. Jan.22, 2014)* ("The elements that apply to an ADA claim apply to claims under the NYSHRL and NYCHRL as well."). "However, the NYSHRL provides broader protection than the ADA, and the NYCHRL is broader still." *Pagan,* 2014 WL 464787, at *6; *see also Ugactz v. United Parcel Serv., Inc.,* No. 10–CV–1247, 2013 WL 1232355, at *14 (E.D.N.Y. Mar.26, 2013).* The NYSHRL and NYCHRL "have a broader definition of 'disability' than does the ADA; neither statute requires any showing that the disability substantially limits a major life activity." *Reilly v. Revlon, Inc.,* 620 F.Supp.2d 524, 541 (S.D.N.Y.2009)* (citing *Giordano,* 274 F.3d at 753). Despite the broader scope of the NYSHRL and NYCHRL, even if Thomson did allege facts to show that she was disabled within the terms of those statutes, for the reasons discussed above, the record is still devoid of facts connecting the April 2014 termination to any discriminatory motivation on the part of Odyssey House. Therefore, Thomson's disability discrimination claims against Odyssey House under the NYSHRL and NYCHRL are dismissed.

#### iii. NYSHRL and NYCHRL failure to accommodate claim

**\*19** Thomson's failure to accommodate claim also deserves separate analysis under the NYSHRL and NYCHRL to the extent Thomson argues that Odyssey House failed to engage in an interactive process regarding reasonable accommodations for her alleged disability. The NYSHRL and the NYCHRL require that an employer engage a disabled employee in a good-faith interactive process to identify what reasonable accommodations are appropriate. *Noel v. BNY–Mellon Corp.,* 514 F. App'x 9, 10 (2d Cir.2013)* (citing *Romanello v. Intesa Sanpaolo S.p.A.,* 97 A.D.3d 449, 949 N.Y.S.2d 345, 348 (App.Div.2012)). "New York courts have held that the failure to engage in an interactive process is itself a violation of the law and gives rise to an independent claim." *Stuart v. T–Mobile USA, Inc.,* No. 14–CV–4252, 2015 WL 4760184, at *9 (S.D.N.Y. Aug. 12, 2015)* (collecting cases). However, the initial burden of requesting an accommodation is on the employee unless the disability is "obvious or otherwise known to the employer without notice from the employee." *Simmons v. N.Y.C. Transit Auth.,* No. 02–CV–1575, 2008 WL 2788755, at *5 (E.D.N.Y. July 17, 2008)* (quoting *Felix v. N.Y.C. Transit Auth.,* 154 F.Supp.2d 640, 657 (S.D.N.Y.2001)) *aff'd,* 340 F. App'x 24 (2d Cir.2009).

As discussed above, Plaintiffs have not alleged that Thomson requested an accommodation or otherwise attempted to initiate the "interactive process" except for "not[ing]" her interest in returning to work at Odyssey House. Furthermore, the TAC does not specify the nature of Thomson's disability or provide any facts on which the Court could infer that Odyssey House knew that Thomson had a disability or was otherwise obligated to initiate the process itself. For these reasons and those discussed above in part II.f.ii, Thomson's NYCHRL and NYSHRL failure to accommodate claims against Odyssey House are dismissed.

#### g. Retaliation claims under the ADA, Title VII, Section 1981, and NYSHRL

Clark claims that she was retaliated against for complaints protected by Section 1981, and Thomson claims she was retaliated against for activity protected by Title VII, the ADA, Section 1981 and the NYSHRL.[23] (TAC ¶¶ 71, 74, 80.) All four statutes contain similar anti-retaliation provisions, analyzed under the *McDonnell Douglas* burden-shifting framework. *See Littlejohn,* 795 F.3d at 315 (Title VII and § 1981); *Summa v. Hofstra Univ.,* 708 F.3d 115, 125 (2d Cir.2013)* (citing *Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597, 609 (2d Cir.2006)) (N.Y.SHRL and Title VII); *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002)* (ADA). To establish a *prima facie* case of retaliation, Plaintiff must show: "(1) participation in a protected

activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn,* 795 F.3d at 316 (quoting *Hicks v. Baines,* 593 F.3d 159, 164 (2d Cir.2010)).

**\*20**  As with other claims analyzed under the *McDonnell Douglas* framework, the allegations need only give "plausible support to the reduced prima facie requirements...." *Id.* "Thus, for a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) 'because' [s]he has opposed any unlawful employment practice." *Vega,* ––– F.3d at ––––, 2015 WL 5127519, at \*14. In the retaliation context, the allegations must support the conclusion that the adverse action "would not have occurred in the absence of the retaliatory motive." *Id.* at \*15 (quoting *Zann Kwan v. Andalex Grp., LLC,* 737 F.3d 834, 846 (2d Cir.2013)).

### i. Clark's claim

Odyssey House contends that Clark cannot state a claim for retaliation under Section 1981 because she does not allege that she engaged in activity protected by Section 1981, and that she only alleged that she complained about sex-related conduct. (Def. Mem. 16; Def. Reply Mem 6–7.) Odyssey House further contends that Plaintiffs do not allege that Clark was subject to adverse action because of any protected activity, and instead only alleges that she was terminated for complaining about sexual harassment. (Def.Mem.16.) Plaintiffs argue that Clark engaged in protected activity when she complained about behavior that had both racial and sexual overtones, and add that Clark's cubicle was searched, she was told not to write retaliatory letters, and she was ultimately terminated. [24] (Pl. Opp'n Mem.11–12.)

### 1. Opposing unlawful employment practice

Section 1981 claims of retaliation in employment are analyzed pursuant to Title VII principles. *Hicks,* 593 F.3d at 164. To show that she engaged in protected activity under Title VII, a plaintiff can show she either opposed discrimination, or made a charge or participated in a Title VII investigation or proceedings. *Id.* To show protected activity in having opposed discrimination, a plaintiff need not allege that she opposed conduct that actually violated the law, but only that she "possessed a good faith, reasonable belief that the underlying employment practice was unlawful under the statute." *Summa,* 708 F.3d at 126 (quoting *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.,* 136 F.3d 276, 292 (2d Cir.1998)). Traditionally, complaints, whether formal or informal, are considered protected activity in retaliation claims. *Id.* ("The law protects employees [who] ... make [ ] informal protests of discrimination, including making complaints to management, so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." (alteration in original) (quoting *Gregory v. Daly,* 243 F.3d 687, 700 (2d Cir.2001))); *see also Hoffman v. Williamsville Sch. Dist.,* 443 F. App'x 647, 650 (2d Cir.2011) ( "protected activities include 'the filing of formal charges ... as well [as] informal protests of discriminatory employment practices' " (alterations in original) (quoting *Sumner v. U.S. Postal Serv.,* 899 F.2d 203, 208–09 (2d Cir.1990))).

**\*21**  Plaintiffs allege that Clark suffered comments about her race in *addition to* sexual advances, including questions "about what race she was and what race she favored," (TAC ¶ 53) and requests for "brown sugar" or "white sugar," (TAC ¶ 54). Plaintiffs generically allege that she "complained" about the remarks. (TAC ¶ 55.) While the TAC is not a picture of clarity as to the contents of Clark's complaints, the allegations as pleaded are sufficient to provide plausible support for Clark's contention that she engaged in protected activity by complaining about racially-charged derogatory remarks in the workplace. Additionally, Clark alleges that Brown, a supervisor at Odyssey House, had knowledge of her complaints as he advised her not to file further complaints. (TAC ¶ 56.)

### 2. Adverse employment action

In the retaliation context, an adverse employment action is one which a reasonable employee would find materially adverse, meaning it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega,* ––– F.3d at ––––, 2015 WL 5127519, at \*15 (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57, 126 S.Ct. 2405, 165

L.Ed.2d 345 (2006)); *Fincher v. Depository Trust & Clearing Corp.,* 604 F.3d 712, 721 (2d Cir.2010) (same); *Hicks,* 593 F.3d at 165 (same). In evaluating whether an action is materially adverse, " '[c]ontext matters,' as some actions may take on more or less significance depending on the context." *Tepperwien v. Entergy Nuclear Ops., Inc.,* 663 F.3d 556, 568 (2d Cir.2011); *see also Hicks,* 593 F.3d at 165 (noting that even minor acts that would be immaterial in some situations may be material in others).

The parties do not dispute that Clark's termination constituted an adverse employment action. Plaintiffs also assert that Clark had her cubicle searched and was told not to write "retaliatory letters" as a result of her complaints. (Pl. Opp'n Mem. 11–12; TAC ¶¶ 55–56.) It is unclear whether Plaintiffs intend to assert that these actions were independent retaliatory actions, or rather use these occurrences as context to show that Clark's termination was causally connected to her complaints. As for Harris' search of Clark's cubicle while Clark was away, the facts as alleged fail to illustrate the significance of this event, and the Court therefore cannot conclude that it was independently retaliatory. *See Augustine v. Cornell Univ.,* No. 14–CV–7807, 2015 WL 3740077, at *5 (finding allegations that "a fly trap was placed on [plaintiff's] file cabinet and that a logbook was removed from her desk" were "plainly insufficient" to show adverse action for retaliation claim). As for Brown's warning, a disciplinary warning letter may constitute an adverse action in the retaliation context. *See Fahmy v. Duane Reade, Inc.,* No. 04–CV–1798, 2006 WL 1582084, at *10 (S.D .N.Y. June 9, 2006). However, the allegations seem to indicate that the warning was merely "advi[ce]" and not intended as discipline, reprimand or a threat thereof, (TAC ¶ 56), and thus the Court cannot conclude that it was "materially adverse."

### 3. Causal connection

**\*22**  A causal connection in retaliation claims can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn,* 795 F.3d at 319 (quoting *Gordon v. N .Y.C. Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir.2000)); *see also Vega,* ––– F.3d at ––––, 2015 WL 5127519, at *15 ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." (citing *Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 217 (2d Cir.2001) and *Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 110 (2d Cir.2010))); *Chung v. City Univ. of N.Y.,* 605 F. App'x 20, 23 (2d Cir.2015) ("Ordinarily, causation may be inferred from close temporal proximity."). There is no bright line rule concerning the temporal proximity required to draw the causal inference. *See, e.g ., Gorzynski,* 596 F.3d at 110–11 ("Though [the Second Circuit] has not drawn a bright line defining, for the purposes of a *prima facie* case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, [it has] previously held that five months is not too long to find the causal relationship."); *Smith v. Town of Hempstead Dept. of Sanitation Sanitary Dist. No. 2,* 798 F.Supp.2d 443, 457 (E.D.N.Y.2011) ("With regard to the establishment of a *prima facie* case through temporal proximity, the Second Circuit has not drawn a bright line as to how closely an adverse employment action must follow protected activity to imply that retaliation has taken place." (citing *Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir.2009))).

Plaintiffs specifically allege that Clark "was terminated for complaining about sexual harassment," in late 2011, (TAC ¶ 51), though they later allege that she was terminated for her complaints more generally, (TAC ¶ 58). As discussed above, the Court construes Clark's allegation regarding her complaints about sexual harassment as including those sexually-related remarks with racial overtones. Clark was terminated in February of 2012, "two months" after making her various complaints.[25] (TAC ¶¶ 57– 58.) The close temporal proximity between the complaints and Clark's termination is sufficient to meet her minimal burden at this stage of the litigation. *See Smith,* 798 F.Supp.2d at 457 (finding that three and a half month gap between protected activity and adverse action sufficient to satisfy temporal proximity requirement). Furthermore, Clark's supervisor Brown told her not to complain about her treatment, which may further support an inference of retaliatory animus. *See Gregory v. Daly,* 243 F.3d 687, 701 (2d Cir.2001) (finding that supervisor's statement that plaintiff "should 'get on board or quit,' " and "sneering comments" about plaintiff's lawsuit supported inference of retaliatory animus). Clark has adequately alleged a Section 1981 retaliation claim and Odyssey House's motion to dismiss this claim is denied.

### ii. Thomson's claims

**\*23** Odyssey House argues that Thomson's retaliation claims must be dismissed because her allegations regarding her internal complaints are vague, she has not alleged adverse action beyond the April 2014 termination, and she has failed to plead facts to show that the April 2014 termination was causally related to Thomson's earlier complaints. [26] (Def.Mem.16–17, 20–22.) Thomson alleges that her complaints led Odyssey House to refuse her request to return to work and ultimately led to her termination. [27] (Pl. Opp'n Mem. 12–13, 15–16.) Thomson also argues, only in her motion papers, that the April 2014 termination was a result of her filing her March 5, 2012 NYSDHR complaint and this action in Kings County Supreme Court in September of 2013. (*Id.* at 13, 15.) Odyssey House argues that contention that Thomson's termination was in retaliation for filing the March 5, 2012 NYSDHR complaint or this action was not raised in the TAC and must be disregarded. (Def. Reply Mem. 7–8.)

As for Thomson's theory that the April 2014 termination was triggered by her complaints of discrimination made internally to Odyssey House in 2011, her complaints are too far removed from the April 2014 termination to permit Thomson to rely on temporal proximity to establish a causal connection, and she has proffered no other evidence of a causal connection in support of any of her retaliation claims. *See Nicastro v. N.Y.C. Dep't of Design & Const.,* 125 F. App'x 357, 358 (2d Cir.2005) (suggesting that 10 months was not sufficiently close to "demonstrate a causal nexus"); *see also DiBrino v. Dep't of Veterans Affairs,* 118 F. App'x 533, 535 (2d Cir.2004) ("It makes logical sense that if an employer wishes to retaliate by firing an employee, he is likely to do so soon after the event." (quoting *Mandell v. Cty. of Suffolk,* 316 F.3d 368, 384 (2d Cir.2003))).

Thomson cannot rely on her theories that her termination was retaliation for filing the March 5, 2012 NYSDHR complaint or for filing this action in September of 2013, because those facts and theories were not raised in the TAC. "[A] claim for relief may not be amended by the briefs in opposition to a motion to dismiss." *Kamanou v. Exec. Sec. of Comm'n of the Econ. Cmty. of W. African States,* No. 10–CV–7286, 2012 WL 868700, at \*2 n. 2 (S.D.N.Y. Mar.14, 2012) (quoting *Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower,* No. 01–CV–5518, 2003 WL 1751785, at \*13 (S.D.N.Y. Apr.2, 2003)). Plaintiffs have amended the complaint three times since Thomson's April 2014 termination, and failed to include these theories of relief in any of their three amendments. Furthermore, Plaintiffs withdrew their request to further amend the TAC. Plaintiffs cannot circumvent the pleading process by asserting new theories of liability in opposition to the motion to dismiss. *Rodman v. Stryker Sales Corp.,* No. 14–CV–1102, 2014 WL 5002095, at \*2 (S.D.N.Y. Oct. 7, 2014) (quoting *K.D. ex rel. Duncan v. White Plains Sch. Dist.,* 921 F.Supp.2d 197, 209 n. 8 (S.D.N.Y.2013)), *aff'd,* 604 F. App'x 81 (2d Cir.2015). Because Thomson has failed to allege in the TAC a viable theory which would give rise to the inference of retaliatory intent, the Court grants Odyssey House's motion to dismiss Thomson's Title VII, ADA and Section 1981 retaliation claims.

### h. NYCHRL discrimination, hostile work environment and retaliation claims

**\*24** "[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.' " *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 109 (2d Cir.2013) (citations omitted). Even under the more liberal standard imposed by the NYCHRL, Thomson's NYHCRL claims that she was subject to a hostile work environment and wrongfully terminated due to discrimination on the basis of her sexual orientation, gender, and race and disability, or in retaliation for her complaints about discrimination on the same grounds, (TAC ¶¶ 60, 62, 66–68, 70), also fail to state a claim.

### i. Discrimination

"To state a claim for discrimination under the NYCHRL, a plaintiff must only show differential treatment of any degree based on a discriminatory motive...." *Gorokhovsky v. N.Y.C. Hous. Auth.,* 552 F. App'x 100, 102 (2d Cir.2014) (citing *Mihalik,* 715 F.3d at 114). However, even under this more liberal pleading standard, a plaintiff must plausibly allege that she was subjected to unequal treatment because of her protected characteristic. *See Mathew v. N. Shore–Long Island Jewish Health Sys., Inc.,* 582 F. App'x 70, 71 (2d Cir.2014) (disability discrimination); *Mihalik,* 715 F.3d at 110 (gender-based discrimination); *LaSalle v. City of New York,* No. 13–CV–5109, 2015 WL 1442376, at \*6 (S.D.N.Y. Mar. 30, 2015) (race discrimination). There are no allegations as to any activity or interaction between Odyssey House and Thomson after September of 2011 except her request to return

to work and Odyssey House's denial of her request. [28] Because Thomson has failed to allege any facts that would illustrate that, after March of 2012 (the date of her NYSDHR complaint, before which her claims are barred by the election of remedies doctrine) she was treated less well than any other Odyssey House employee, even in part, because of her sexual orientation, gender, race or disability, her NYCHRL discrimination claim is dismissed as to Odyssey House. *See Soloviev v. Goldstein, —— F.Supp.3d ——, 2015 WL 2249996, at \*11–12 (E.D.N.Y. May 13, 2015)* (dismissing NYCHRL when plaintiff failed to allege that termination was caused by discriminatory motive); *LaSalle,* 2015 WL 1441376, at \*6 (dismissing NYCHRL race and color discrimination claims when plaintiff "allege[d] no facts from which the Court could determine that she was treated 'less well' than other employees because of her race").

### ii. Hostile work environment

Under the NYCHRL, a hostile work environment claim is a form of gender discrimination, and analyzed under the same standard —the plaintiff must ultimately show she was treated less well "at least in part *'because of* her gender.' " *Mihalik,* 715 F.3d at 110 (emphasis in original). The Court is mindful of the fact that NYCHRL claims must be treated more liberally than those brought under Title VII and the NYSHRL, and that "even a single comment may be actionable in the proper context." *Mihalik,* 715 F.3d at 113; *see Ardigo v. J. Christopher Capital, LLC,* No. 12–CV–3627, 2013 WL 1195117, at \*4 (S.D.N.Y. Mar. 25, 2013); *Olivieri v. Waldbaum, Inc.,* No. 12–CV–1195, 2013 WL 5507141, at \*7 (E.D.N.Y. Sept. 30, 2013). However, Thomson's claims based on the allegations in the March 5, 2012 NYSDHR complaint are barred, as discussed above, and Thomson has presented no allegations as to any of her interactions with Odyssey House and its employees between that date and the April 2014 termination, and thus her claim cannot survive. *See Olivieri,* 2013 WL 5507141, at \*7 (noting that NYCHRL hostile work environment claims must still be "link[ed]" to "some attitude the law forbids" (quoting *Williams v. Metro–North Commuter R.R. Co.,* No. 11–CV–7835, 2012 WL 2367049, at \*13 (S.D.N.Y. June 20, 2012))). The Court grants Odyssey House's motion to dismiss the NYCHRL hostile work environment claim based on allegations post-dating the March 5, 2012 NYSDHR complaint.

### iii. Retaliation

**\*25** "To prevail on a retaliation claim under the NYCHRL, a plaintiff need only show that [s]he 'took an action opposing [her] employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.' " *Gorokhovsky,* 552 F. App'x at 102 (quoting *Mihalik,* 715 F.3d at 112). However, a plaintiff still must allege a causal connection between the employer's action and the plaintiff's conduct, and Thomson has failed to raise a reasonable inference of a causal connection here for substantially the same reasons as discussed above: she has made no allegations regarding her interaction with Odyssey House between September of 2011, when Thomson needed to take leave, and April of 2014, when she was "let go" after asking to return to work. *See Dimitracopoulos v. City of New York,* 26 F.Supp.3d 200, 217 (E.D.N.Y.2014) (dismissing NYCHRL when plaintiff failed to allege facts connecting lawsuit in 2009 to actions suffered in 2012, and finding that the temporal proximity was "too attenuated" to sustain an inference of retaliation); *see also Krasner v. City of New York,* 580 F. App'x 1, 3 (2d Cir.2014) (noting that a defendant is not liable under the NYCHRL if the plaintiff fails to show the conduct was at least partly caused by retaliatory motives). As with her other retaliation claims, Thomson cannot amend the TAC to include new theories of liability by raising them in opposition to the motion to dismiss, and her theory that the April 2014 termination was retaliation in response to filing this action in state court in September of 2013 is not even implied in the TAC. Thus, Thomson's NYCHRL retaliation claim is dismissed.

### i. Individual Defendants

Plaintiffs bring all of their claims against all Defendants, including the Individual Defendants. For the reasons set forth in part II.c, the Court *sua sponte* dismissed Plaintiffs' NYCHRL and NYSHRL claims against the Individual Defendants for lack of subject matter jurisdiction. Thomson named Brown, Harris and Herbert as Defendants in her March 5, 2012 NYSDHR complaint, and the case was dismissed, finding no probable cause to belief that the respondents engaged in the alleged discriminatory practices. (Determination and Order in Case No. 10153677, at ECF No. 55.) Clark named Brown and Harris in her NYSDHR complaint, and the case was similarly dismissed with a "no probable cause" determination. [29] (Determination

and Order in Case No. 10153681, at ECF No. 60.) Plaintiffs' NYSHRL and NYCHRL claims against these Defendants are thus precluded under the election of remedies doctrine.

The Court also dismisses Thomson's Title VII and ADA claims against the Individual Defendants, who may not be held personally liable for those claims, as the Individual Defendants are not alleged to be her employers. *See Littlejohn,* 795 F.3d at 313 ("Title VII 'does not create liability in individual supervisors and co-workers who are not the plaintiffs' actual employers.' " (quoting *Raspardo,* 770 F.3d at 113); *Spiegel v. Schulmann,* 604 F.3d 72, 79–80 (2d Cir.2010) (holding that the anti-retaliation provision of the ADA does not provide for individual liability); *Corr v. MTA Long Island Bus,* No. 98–9417, 1999 WL 980960, at *2 (2d Cir.1999) (affirming district court's conclusion that there is no right of recovery against individual defendants for employment discrimination in violation of the ADA); *Sherman,* 71 F.Supp.3d at 343 (concluding that because courts routinely interpret the ADA in line with Title VII, there is no individual liability for employment discrimination claims under Title I of the ADA). Furthermore, while the NYSHRL provides for individual liability under an aiding-and-abetting theory, or against individuals who are also employers, Plaintiffs have made no such allegations against the Individual Defendants with respect to Thomson's claims relating to her April 2014 termination, her only claims not presented to the NYSDHR in the March 5, 2012 complaint. *See Tolbert v. Smith,* 790 F.3d 427, 434 n. 3 (2d Cir.2015) (citing *Feingold,* 366 F.3d at 157–58). Additionally, the Court *sua sponte* dismisses Thomson's remaining NYCHRL claims and Section 1981 retaliation claim against the Individual Defendants for substantially the same reasons as discussed above, including the fact that she has presented no facts about the Individual Defendants' involvement in her April 2014 termination, or about any interaction with them after September of 2011. *See Buckley v. New York,* 959 F.Supp.2d 282, 300 (E.D.N.Y.2013) (dismissing hostile work environment claim when there was "no specific allegation made or example proffered of a hostile work environment action by any of the individual [d]efendants").

**\*26** Almost two years have passed since Plaintiffs filed the Complaint, and, to date, it does not appear that Plaintiffs have properly served any of the Individual Defendants or that service is imminent. (*See* Motion to Compel Defendants' last known addresses, Docket Entry No. 25 (seeking addresses of Individual Defendants in order to effectuate service); Not. of Removal ¶ 11 (indicating that Individual Defendants had not been served in the state proceedings).) Accordingly, Plaintiffs are ordered to show cause within thirty (30) days of the date of this Memorandum and Order why Clark's Section 1981 retaliation claim, the only claim remaining in this action, should not be dismissed as to the Individual Defendants for failure to timely serve the TAC. *See Meilleur v. Strong,* 682 F.3d 56, 61 (2d Cir.2012); *see also Ferran v. Office of the Dist. Att'y,* 598 F. App'x 802, 803 (2d Cir.2015) (affirming dismissal pursuant to Rule 4(m) when plaintiffs failed to serve process without "colorable justification" and indicated that they did not intend to serve the complaint); *Zapata v. City of New York,* 502 F.3d 192, 199 (2d Cir.2007) (affirming Rule 4(m) dismissal when plaintiff "made no effort to effect service within the service period, neglected to ask for an extension within a reasonable period of time, and has advanced no cognizable excuse for the delay").

### III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Odyssey House's motion to dismiss the claims against it, as follows:

- Thomson's Title VII and ADA claims presented to the EEOC in her March 5, 2012 NYSDHR complaint are barred by the 90–day statute of limitations;

- Consideration of Thomson's Title VII and ADA claims is limited to those arising from her allegations after September 5, 2013, 300 days prior to the date Thomson filed her July 2, 2014 EEOC charge;

- Thomson's NYSHRL and NYCHRL claims and Clark's NYSHRL claims arising out of facts presented to the NYSDHR in the March 5, 2012 NYSDHR complaints are dismissed pursuant to Rule 12(b)(1) under the election of remedies provisions contained in the relevant statutes;

- Thomson's NYCHRL claims premised on facts not presented to the NYSDHR, that is, her April 2014 termination, are dismissed for failure to state a claim;

• Thomson's Title VII and NYSHRL hostile work environment, discrimination and retaliation claims are dismissed for failure to state a claim;

• Thomson's ADA discrimination and retaliation claims are dismissed for failure to state a claim;

• Thomson's Section 1981 claim is dismissed for failure to state a claim; and

• Clark has adequately stated a Section 1981 claim.

The Court *sua sponte* dismisses Thomson's Title VII, ADA, Section 1981 and NYCHRL claims against the Individual Defendants, and dismisses both Plaintiffs' NYSHRL claims against the Individual Defendants. The Court denies Plaintiffs' request for further leave to amend the TAC as Plaintiffs withdrew their request to amend the TAC. [30] The only remaining claim is Clark's Section 1981 retaliation claim against all Defendants. Clark is ordered to show cause within thirty (30) days of the date of this Memorandum and Order why the Court should not dismiss this remaining claim as to Herbert, Brown and Harris for failure to serve the TAC.

**\*27** SO ORDERED:

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 5561209

---

### Footnotes

1    Plaintiffs named "Gail Harrison" as a Defendant, but repeatedly refer to Gail Harris in their factual allegations. Neither Gail Harrison nor Gail Harris has appeared in this action. For the purposes of this Memorandum and Order, the Court assumes Harrison and Harris are the same individual, and hereinafter refers to the Defendant as "Harris."

2    In opposition, Plaintiffs moved to file a Fourth Amended Complaint. (Pl. Opp'n to Mot. to Dismiss ("Pl. Opp'n Mem."), Docket Entry No. 23.) By letter dated February 19, 2015, Plaintiffs withdrew the cross-motion to amend the TAC. (Docket Entry No. 36.) Thus, the Court denies Plaintiffs' motion to amend as withdrawn by Plaintiffs.

3    The allegations in the TAC are not clear, but it appears as though Herbert was the person who answered the telephone.

4    It is not clear from the TAC what "doing a Treatment Plan" entails.

5    The TAC contains no allegations as to the contents of the August 24, 2011 letter or to whom the letter was addressed.

6    Plaintiffs allege that Thomson needed only weeks of leave following her injury. (TAC ¶ 40 ("The injury kept [P]laintiff out of work for several weeks.").) However, it appears that Thomson may not have returned to work at Odyssey House following the injury. Plaintiffs allege that Thomson "planned to return to work when she was fully healed" and that she was kept "out of work for several weeks" (*id.*)—and do not provide additional facts except that Thomson "noted" at some unidentified time that she was interested in returning to work at Odyssey House, and was "let go" in April of 2014. (TAC ¶ 41.)

7    The parties submit copies of Plaintiffs' NYSDHR complaints with their motion papers. (Exs. 1–2 annexed to Decl. of Nkereuwem Umoh ("Umoh Decl"), Docket Entry No. 24; Exs. B–C annexed to Mellk Aff.) Defendants also submit copies of the determinations issued by the NYSDHR, the right to sue notices issued from the EEOC following the

NYSDHR's determination, Thomson's second filing with the EEOC, and the EEOC's notice of right to sue related to the second EEOC filing. (Exs. D–I annexed to Mellk Aff.) None of these documents are attached to the TAC, but the Court may consider the NYSDHR and EEOC complaints and related documents in evaluating Odyssey House's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See M.E.S. v. Snell,* 712 F.3d 666, 671 (2d. Cir.2013); *Sanderson v. Horse Cave Theatre 76,* 881 F.Supp.2d 493, 502 (S.D.N.Y.2012).

However, in reviewing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may only consider the plaintiff's "relevant filings with the EEOC and other documents related to the plaintiff's claim, even if they are not attached to the complaint, so long as those filings are either incorporated by reference or are integral to and solely relied upon by the complaint ." *Littlejohn v. City of New York,* 795 F.3d 297, 305 n. 3 (2d Cir.2015) (internal quotation marks and alterations omitted) (quoting *Holowecki v. Fed. Exp. Corp.,* 440 F.3d 558, 565–66 (2d Cir.2006)); *see also DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir.2010) (noting that on a Rule 12(b)(6) motion, a district court may consider documents attached to or incorporated by reference into the complaint, and documents where "the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint," if there is no dispute about the authenticity or accuracy of the document, and it is clear that the parties agree the document is relevant (quoting *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir.2006))). Courts may also consider information subject to judicial notice. *Singh v. Wells,* 445 F. App'x 373, 375 (2d Cir.2011) (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.,* 547 F.3d 406, 426 (2d Cir.2008)).

Even though Plaintiffs do not attach the NYSDHR or EEOC documents to the TAC, and do not reference the relevant filings in the TAC, the Court reviews these documents as integral to the Complaint, as the Plaintiffs had access to these documents when framing the allegations in the TAC, the Plaintiffs' complaint depends, in part, on the scope and effect of these documents, and no party disputes the accuracy or relevance of the documents. *See Henriquez–Ford v. Council of Sch. Sup'rs & Adm'rs,* No. 14–CV–2496, 2015 WL 3867565, at *4 (S.D.N.Y. June 23, 2015) (considering EEOC notices of charge, NYSDHR complaint, and NYSDHR decision regarding complaint as integral to complaint); *Garnett–Bishop v. N.Y. Cmty. Bancorp, Inc.,* No. 12–CV–2285, 2014 WL 5822628, at *14 (E.D.N.Y. Nov. 6, 2014) (considering EEOC intake questionnaires and letters signed by the plaintiffs attached to them, EEOC charge and EEOC determination letter on motion to dismiss, as documents integral to the complaint). Moreover, the Court may take judicial notice of these administrative records to establish the fact of the proceedings and the outcome, but not for the truth of the matters within them. *Colvin v. State Univ. Coll. at Farmingdale,* No. 13–CV–3595, 2014 WL 2863224, at *16 (E.D.N.Y. June 19, 2014) (citing *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 774 (2d Cir.1991)), *reconsideration denied,* 2015 WL 2213297 (E.D.N.Y. May 8, 2015); *Volpe v. Nassau Cty.,* 915 F.Supp.2d 284, 291 (E.D.N.Y.2013) (noting a court may take judicial notice of NYSDHR complaint and decision to establish the fact of litigation or to "ascertain the legal nature of the claims brought in the actions" (internal quotation marks and citation omitted)); *cf. Kavowras v. New York Times Co.,* 328 F.3d 50, 57 (2d Cir.2003) (finding NLRB charge subject to judicial notice).

8    Thomson does not allege her race in the TAC, but her allegations suggest that she is African–American. (*See* TAC ¶ 18 (noting that Harris had not criticized non-homosexual employees, non-black employees, or employees who did not make complaints).)

9    Although it is not clear that Plaintiff was working on Odyssey House and could be terminated, the Court assumes for the purposes of this motion that the event in April 2014 constituted a termination.

10    In Clark's NYSDHR complaint, which was filed on March 5, 2012, she alleged that she was still employed. (Clark NYSDHR Compl. at ECF No. 41.) However, Clark's NYSDHR complaint—although filed on March 5, 2012—is dated February 8, 2012, approximately one month before the NYSDHR complaint was filed and six days before she was terminated. (*Id.* at ECF No. 44.)

11    For example, Clark did not complain in the NYSDHR complaint that Harris had called her a "half-breed." However, the NYSDHR noted Thomson's complaint about this comment in its Determination and Order in Clark's case. (Determination and Order in Case No. 10153681 at ECF No. 61, annexed to Mellk Aff. as Ex. E.)

12    Receipt can be either by the plaintiff or plaintiff's counsel, and if both receive notice on different dates, the relevant date is the earlier of the two. *Tiberio v. Allergy Asthma Immunology of Rochester,* 664 F.3d 35, 38 (2d Cir.2011).

13    Thomson did not allege national origin discrimination in her March 5, 2012 NYSDHR complaint. (Thomson March 5, 2012 NYSDHR Complaint at ECF No. 24.) For the reasons discussed below, Thomson's current Title VII claims for national origin discrimination arising from conduct prior to September 5, 2013 would otherwise be barred by the 300–day limitations period, even if they were not barred by the 90–day limitations period.

14    Plaintiffs do not appear to dispute Defendant's contention that Thomson's ADA, Title VII hostile work environment and discrimination claims that were presented to the EEOC in Thomson's March 5, 2012 NYSDHR complaint are time-barred for this reason, but argue instead that because of (1) the merits of Thomson's ADA claims, (2) the continuing violation exception, which is discussed below, and (3) the fact that Thomson was terminated after the filing of this action in state court, the Court should decide the merits of the case. (Pl. Opp'n 8–11, 14.) As discussed *infra* part II.b.ii.1, the continuing violation exception does not apply to revive Thomson's claims. Furthermore, even if it did, "the First, Sixth, Seventh and Tenth Circuits as well as several district courts have found that a plaintiff may not rely on the continuing violation theory to revive" claims barred by the ninety-day limitations period. *Bowen–Hooks v. City of New York,* 13 F.Supp.3d 179, 207 (E.D.N.Y.2014) (collecting cases); *see also Shoemake v. Mansfield City Sch. Dist. Bd. of Educ.,* 61 F.Supp.3d 704, 725 (N .D.Ohio 2014) (noting the Sixth Circuit has held that the doctrine "does not relieve a plaintiff of the need to file an action within 90 days of receiving the right to sue letter." (quoting *Wade v. Knoxville Utilities Bd.,* 259 F.3d 452, 461 (6th Cir.2001))); *Simmons v. Tarrant Cty. 9–1–1 Dist.,* No. 13–CV–1389, 2014 WL 3720417, at *6 (N.D.Tex. July 22, 2014) (noting that Fifth Circuit has not definitively decided the issue, but finding that the doctrine would not toll the ninety-day limitations period).

15    The July 2, 2014 EEOC charge indicates that the April 2014 termination occurred in March of 2014. As the TAC conflicts with this allegation, and the precise timing of the refusal to permit Thomson to return to work is not material for determining the timeliness of her claim, the Court will refer to the event as the "April 2014 termination."

16    Moreover, Thomson could not simply revive the time-barred claims, on which she chose not to sue, by bringing the same allegations of discrimination in her second EEOC charge. *See Melie v. EVCI/TCI Coll. Admin.,* 374 F. App'x 150, 152 (2d Cir.2010) (finding that "all of [plaintiff's] discrimination and retaliation claims ... were time-barred, except for the one claim presented in [plaintiff's] February 27, 2007 Equal Employment Opportunity Commission ("EEOC") charge not previously presented in his September 25, 2006 EEOC charge." (citing *Lo v. Pan Am. World Airways, Inc.,* 787 F.2d 827, 828 (2d Cir.1986) (per curiam))).

17    Although Clark did not specifically allege that she was terminated in violation of the NYSHRL in her NYSDHR complaint, (*see generally* Clark NYSDHR Compl.), it appears that Clark completed the form complaint before she was terminated, (*see id.* at ECF No. 41 (stating that Clark was currently working for Odyssey House)). However, the NYSDHR Determination and Order After Investigation reflects that Clark was terminated. (Determination and Order in Case No. 10153681 at 3.) Thus, the Court infers that the facts surrounding Clark's termination were presented to the NYSDHR.

18    As discussed above, Thomson's Title VII and ADA claims are time-barred to the extent the alleged conduct occurred prior to September 5, 2013, and her NYSHRL and NYCHRL claims are jurisdictionally barred to the extent the facts were presented to the NYSDHR. The only remaining allegations in the TAC concern Thomson's April 2014 termination, but she appears to pursue all of her claims based on those allegations.

19    Thomson's NYSHRL disability discrimination claim is addressed below.

20    The Court address's Thomson's ADA retaliation claim *infra* part II.g.

21    The question of whether a plaintiff need only show that her disability was a "motivating factor" in the adverse action, as in Title VII cases, or whether she must show that it was the "but-for" cause of the adverse action, like in ADEA cases, is an open question in the Second Circuit. *DeAngelo v. Yellowbook Inc.,* —— F.Supp.3d ——, ——, 2015 WL 1915641, at *7 (D.Conn. Apr.27, 2015); *Sherman v. Cty. of Suffolk,* 71 F.Supp.3d 332, 348 (E.D.N.Y.2014) (quoting *Castro v. City of New York,* 24 F.Supp.3d 250, 269 n. 34 (E.D.N.Y.2014)); *see also Vega v. Hempstead Union Free Sch. Dist.,* —— F.3d ——, ——, 2015 WL 5127519, at *11 (2d Cir. Sept. 2, 2015) (noting that a plaintiff alleging age discrimination must allege that age was the but-for cause of the adverse action). Because the Court concludes that Thomson has failed to plead facts to support an inference of discrimination under the more forgiving "motivating factor" standard, the Court concludes that if Thomson was required to ultimately prove that disability was the "but for" cause of the April 2014 separation, her allegations would likewise be insufficient to withstand a motion to dismiss.

22    Plaintiffs now argue in opposition to the motion to dismiss the TAC that Thomson's two and a half year absence from Odyssey House was related to her September 2011 injury. (Pl. Opp'n 8–11.) However, those facts were not included in the TAC and cannot be considered on this motion to dismiss. Moreover, Plaintiffs' argument is specifically contradicted by the allegation in the TAC that Thomson required only weeks of leave to heal. (*See* TAC ¶ 40.)

23    Odyssey House contends that Plaintiffs' Section 1981 claims relating to national origin discrimination must be dismissed because Section 1981 covers only race-based discrimination. (Def.Mem.15.) The Supreme Court has concluded that Section 1981 protects against discrimination on the basis of ancestry or ethnic characteristics, but not "solely on the place or nation of [ ] origin...." *Saint Francis Coll. v. Al–Khazraji,* 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987). However, "courts have also recognized that race and national origin discrimination claims may substantially overlap or even be indistinguishable depending on the specific facts of a case," as national origin may be intertwined with racial and ethnic characteristics. *Deravin v. Kerik,* 335 F.3d 195, 201 (2d Cir.2003).

24    Plaintiffs now allege in their motion papers that these acts were discriminatory, but they did not raise a Section 1981 discrimination claim in the TAC, only a retaliation claim. (*See* TAC ¶ 74 ("In violation of Section 1981, the defendants retaliated against plaintiffs for complaining about the treatment they received on the basis of their race and national origin.").) The Court therefore does not address Plaintiffs' argument as to discrimination in violation of Section 1981, since no such claim is before the Court.

25    The allegations indicate that Clark lodged complaints in November and December of 2011. (TAC ¶¶ 51–56.)

26    Odyssey House also argues that Thomson's retaliation and discrimination claims under the ADA should be dismissed. (Def.Mem.11.) Odyssey House does not dwell on the merits of Thomson's ADA retaliation claim in its memorandum of law, but the Court addresses them in this section.

27    The parties appear to agree that the April 2014 termination—including the refusal to permit Thomson to return to work and the ultimate decision to "let her go"—is the only "adverse action" Thomson claims was retaliatory. (*See* Def. Mem. 17–18; Pl. Opp'n 13–14.) The Court accepts that there is no dispute, for the purposes of the instant motion, that the April 2014 separation constituted an adverse action.

28    There is no indication in the TAC that any of the Individual Defendants, who made some remarks about her race, gender and sexual orientation in September of 2011, played a role in Thomson's April 2014 termination.

29    Clark makes no allegation in the TAC that she had any interaction with Herbert or that Herbert had any involvement in any of the decisions affecting Clark, and thus any NYSHRL claims Clark purports to bring against Herbert that are not jurisdictionally barred by the election of remedies doctrine are dismissed for failure to state a claim. *See Buckley v. New York,* 959 F.Supp.2d 282, 300 (E.D.N.Y.2013).

30    On September 16, 2015, Plaintiffs filed a letter requesting a pre-motion conference, seeking leave to file a motion to consolidate this action with a second action, *Thomson v. Odyssey House* which is pending in the Supreme Court of New York, Kings County, relating to events which "occurred several years after the events in the federal action" and "stem [ ] from the filing of her federal complaint and second EEOC charge of discrimination." (Docket Entry No. 41.) On September 18, 2015, Defendants opposed the motion. (Docket Entry No. 42.) Given that the Court has dismissed all of Thomson's claims in this action, the Court denies the request for a pre-motion conference as moot.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.