**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

Natalie J. Oksen,

Plaintiff,

v.

5:25-CV-822 (AJB/MJK)

Fort Drum Mountain Community Homes, LLC., *et. al.*,

Defendants.

---

Natalie J. Oksen, *Pro Se* Plaintiff

Mitchell J. Katz, U.S. Magistrate Judge

To the Honorable Anthony J. Brindisi, U.S. District Court Judge:

## REPORT- RECOMMENDATION

Oksen began this action on June 25, 2025, by filing a Complaint, and moving for leave to proceed *in forma pauperis* ("*IFP*"). (Dkts. 1, 2). The Clerk sent her Complaint and *IFP* application to this Court for review. (Dkts. 1, 2). After reviewing that Complaint, this Court recommended the District Court dismiss Complaint in its entirety without prejudice and with leave to amend. (Dkt. 6). The District Court adopted that recommendation in its entirety. (Dkt. 8). Months later, Oksen filed an Amended Complaint, which this Court reviewed for its sufficiency. (Dkts. 17, 18). In the second report-recommendation, this Court recommended the District Court dismiss the Amended Complaint, but allow Oksen leave to amend her Fair Housing Act claim.

(Dkt. 18). The District Court adopted that report-recommendation in its entirety. (Dkt. 24). Now, Oksen has filed a Second Amended Complaint ("SAC"). (Dkt. 30). This Court reviews the SAC for sufficiency under 28 U.S.C §1915.

## I. BACKGROUND

The parties are familiar with the facts, so the Court does not include them here.

## II. STANDARD OF REVIEW

Courts must consider the sufficiency of the allegations set forth in a complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A. Section 1915(e)(2) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any

portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The term "prisoner" includes pretrial detainees. 28 U.S.C. § 1915A(c) (2006).

Second Circuit jurisprudence suggests that 28 U.S.C. 1915(e)(2)(B)'s review of pro complaints is a two-step inquiry.

At step one, courts apply the traditional special solicitude afforded to *pro se* plaintiffs. *See, e.g., Rosa v. Doe*, 86 F.4th 1001, 1007 (2d Cir. 2023). Indeed, courts are "obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). "The solicitude afforded to *pro se* litigants takes a variety of forms. It most often consists of liberal construction of pleadings" and "motion papers." *Id.* (cleaned up). So, at step one, courts must "'accept all of the facts alleged in the complaint as true and draw all inferences in the plaintiff's favor.'" *White v. Schmidt*, No. 22-1267, 2024 WL 1266245, at *2 (2d Cir. Mar. 26, 2024) (summary order) (quoting *Harnage v. Lightner*, 916 F.3d 138, 140-41 (2d Cir. 2019)). And once the court has done so, it must then construe the *pro se* submission "to raise the

strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*) (emphasis removed).

At step two, courts subject the liberally construed pleading to Rule 8's pleading standard. *See, e.g., Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citing *Twombly Bell Atlantic v. Twombly*, 550 U.S. 544, (2005) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when affirming a district court's dismissal of the plaintiff's complaint under 28 U.S.C. 1915); *see also Edwards v. Erfe*, 588 F. App'x 79 (2d Cir. 2015) (summary order) (citing *Sykes* and affirming the District Court's *sua sponte* dismissal of a prisoner rights case); *Hirsch v. Rochester City Police Dep't*, 578 F. App'x 49, 50 (2d Cir. 2014) (summary order) (same in a civil rights case); *Sheehy v. Brown*, 335 F. App'x 102, 103 (2d Cir. 2009) (summary order) (citing *Iqbal* and affirming the District Court's dismissal of a claim under 20 U.S.C. §1915(e)(2)).

While the Second Circuit has never formally stated that Rule 8's pleading standard applies, the Court infers that the Second Circuit has adopted that position. To arrive at this conclusion, the Court focuses on two pieces of evidence. First, the Circuit's citations to *Iqbal* and

*Twombly*—which clarified Rule 8s pleading standard. *See Sykes*, 723 F.3d at 403. Second, the other circuit courts have authorized district courts to apply Rule 12(b)(6) when reviewing claims under §1915(e)(2)(B).[1] Nothing in the Second Circuit's jurisprudence leads this Court to believe that it would break stride with eight other circuit courts. This evidence, altogether, leads this Court to believe that the Second Circuit approves of this Court's application of Rule 12(b)(6)'s standard to §1915(e)(2)(B) reviews *after* applying special solicitude to the *pro se* submission.

When applying Rule 8 to pleadings, Courts' must determine if a claim is facially plausible. *See Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This means that *pro se* complaints, even while liberally construed, "must plead 'enough facts to state a

---

[1] *See Herrera v. Agents of Pennsylvania Bd. of Prob. & Parole*, 132 F.4th 248, 254 n.5 (3d Cir. 2025) (applying Rule 12(b)(6)'s standard to §1915(e)(2)(B) review); *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017) (same); *Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011) (same); *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (same); *Coleman v. Lab. & Indus. Rev. Comm'n of Wisconsin*, 860 F.3d 461, 468 (7th Cir. 2017) (same); *Wilhelm v. Rotman,* 680 F.3d 1113 (9th Cir. 2012) (same) *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) (same); *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) (same).

claim to relief that is plausible on its face.'" *Skyes*, 723 F.3d at 403 (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Indeed Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*.

In sum, the Court's role, when reviewing a Complaint under §1915(e)(2)(B), is two-fold. First, the Court must draw all inferences in the *pro se* plaintiff's favor and construe their submission to raise the strongest possible argument. Second, the Court must then review the Complaint and determine if it plausibly alleges enough facts for the Court to reasonably infer that the defendant would be liable for the alleged misconduct.

## III. DISCUSSION

### Oksen's Second Amended Complaint plausibly alleges a §3617 Fair Housing Act discrimination claim.

The Court recommends that the District Court permit Oksen's SAC to proceed. Under § 3617 of the Fair Housing Act ("FHA"), parties are prohibited from, among other things, interfering with a person's exercise and enjoyment of the property because of disability. Here,

Oksen alleges Defendants did just that. Considering § 1915's forgiving review and without commenting on whether Oksen's claim would survive a properly filed dispositive motion, this Court recommends that the District Court allow Oksen's SAC to proceed.

It is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of [their] having exercised or enjoyed, or on account of [their] having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of [the Fair Housing Act ("FHA")]." 42 U.S.C.A. § 3617. So "[t]o state a retaliation claim under the FHA," plaintiffs must plausibly "allege: (1) that [they] engaged in protected activity by opposing conduct prohibited under the FHA; (2) that the" defendants were "aware of the protected activity; (3) that the" defendants "subsequently took adverse action against the plaintiff; and (4) that there is a causal connection between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse action." *Gokhberg v. 200 Corbin Owners Corp.*, No. 24-CV-7010, 2025 WL 2782547, at *6 (E.D.N.Y. Sept. 30, 2025) (cleaned up).

Oksen has plausibly alleged the first element of an FHA claim. In the Second Amended Complaint, Oksen alleges that "[t]he filing and active litigation of the instant federal civil action constitutes a protected activity under 42 U.S.C. §3617." (SAC, Dkt. 30, at ¶51). She further alleges that "Defendants' administrative actions were completely . . . pretextual." (*Id.* at ¶40). Adding to this, Oksen alleges that after she filed complaints to the "U.S. Access Board regarding" accessibility issues, "Defendants intentionally escalated the dispute by[,]" among other things, "executing an early campaign of legal intimidation designed to chill [her] ongoing statutory reporting and exercise of FHA rights." (*Id.* at ¶¶22, 23). Applying special solicitude to this pleading, the Court can glean that Oksen is contending that Defendants are trying to evict her from her residence because she is a person with disabilities. That is enough to survive § 1915's forgiving review. *See, e.g.*, *Wentworth v. Hedson*, 493 F. Supp. 2d 559, 570 (E.D.N.Y. 2007) (denying summary judgment were there was evidence that "could lead a reasonable jury to conclude that the proffered reasons for the [plaintiff's] actions were pretextual, and that the real reason was unlawful discrimination.").

Oksen has also plausibly alleged the second element of an FHA claim. Oksen, in her Second Amended Complaint, alleges that Defendants were aware of her "filing" of "formal administrative complaints alleging housing discrimination based on disability. . .". (SAC, Dkt. 30, at ¶ 24). Likewise, she alleges that Defendants continued to engage in retaliatory conduct "knowing these exact issues are actively *sub judice* in an ongoing federal civil rights lawsuit." (*Id.* at ¶42). In fact, Oksen alleges that Defendants' "retaliatory conduct significantly intensified and escalated in frequency [and] severity . . ." (*Id.* at ¶53). All in all, Oksen has plausibly alleged that Defendants had notice of her protected activity.

Oksen has also plausibly alleged the third and fourth elements of an FHA claim. According to Oksen, Defendants relocated her to a handicap-accessible unit in June 2024. (SAC, Dkt. 30, at ¶22). But, that apartment had "structural and maintenance deficiencies that undermined the accessibility of the home, including an improperly graded shower causing localized flooding, and a failed HVAC system that Defendants refused to remediate on an emergency basis." *Id.* Because of this, Oksen filed a complaint with the U.S. Access Board. *Id.*

Nearly a year later, Defendants "utilized their legal representatives to issue highly adversarial and coercive communications" attempting to "chill [Oksen's] ongoing statutory reporting and exercise of FHA rights." (*Id.* at ¶23). In response, Oksen filed "formal administrative complaints alleging housing discrimination based on disability with the" New York State Division on Human Rights and the Department of Housing and Urban Development. (*Id.* at ¶24). In October of 2025, "immediately following the closure and resolution of [Oksen's] protected accommodation adjustments and HUD administrative filings, Defendants initiated an aggressive campaign of selective enforcement, punitive financial assessment, and bad-faith scrutiny." (*Id.* at ¶25). This campaign include several home inspections, two fines for violations of the pet policy, and threats of eviction. *See* (*id.* at ¶¶ 25-42); *see also Gilead Cmty. Servs., Inc. v. Town of Cromwell,* 432 F. Supp. 3d 46, 77 (D. Conn. 2019) ("[a]dditionally, as some courts have held, it is sufficient to state that interference under § 3617 can encompass a pattern of harassment, invidiously motivated." (cleaned up)). Altogether, Oksen has plausibly alleged that Defendants took adverse action against her even though they were aware of the protected

conduct, and those actions were taken because Oksen reported Defendant's conduct.

## IV. CONCLUSION

**WHEREFORE**, based on the above findings, it is

**RECOMMENDED** that the District Court allow Oksen's Second Amended Complaint (Dkt. 30) to proceed and that a response be required, as it plausibly alleges a Fair Housing Act Retaliation claim, it is also

**ORDERED** that the Clerk provide Oksen with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (*per curiam*); and Oksen is

**REMINDED** that in accordance with 28 U.S.C. § 636(b)(1), they have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (*per curiam*)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72.

Dated: July 17, 2026

Digitally signed by Mitchell J Katz
Date: 2026.07.17 14:22:59 -04'00'

Hon. Mitchell J. Katz
U.S. Magistrate Judge

2024 WL 4870495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,
v.
Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)
|
Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

**REPORT-RECOMMENDATION & ORDER**

CHRISTIAN F. HUMMEL, United States Magistrate Judge

### I. In Forma Pauperis

***1** Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint. [1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

### II. Initial Review

#### A. Legal Standards

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

> There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

***2** Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

***3** This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) [3] (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

## B. Complaint

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983. See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel." [4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of charcter [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

> ***4** Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga Disrict Attorney's Office, and the Supreme Court Appellate Division Third department. ** This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts [5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

### C. Discussion [6]

#### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

#### 2. Heck v. Humphrey

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction.

See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

***5** As this Court, citing the District of Connecticut, has set forth:

> In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).
>
> [ ]
>
> Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at *3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards, No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at *7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at *7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction. [7]

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge" [8] such claims would be barred by judicial immunity.

***6** "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted); see Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Zavalidroga, 2017 WL 8777370, at *8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " Id. (quoting Mireles, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)).


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

"Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Ceparano, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " Ceparano, 404 F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." McCray v. Lewis, No. 16-CV-3855 (WFK/VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official capacities, the suit is barred by the Eleventh Amendment. See Pacherille v. Burns, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

***7** In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." Benyi v. New York, No. 3:20-CV-1463 (DNH/ML), 2021 WL 1406649, at *5 (N.D.N.Y. Mar. 23, 2021), report and recommendation adopted, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. See Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the Heck issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

> Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997)).
>
> Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see also Flagler, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at *5 (N.D.N.Y. June 11, 2024), report and recommendation adopted, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the Heck barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." Phillips v. New York, No. 5:13-CV-927, 2013 WL 5703629, at *5 (N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 223 (2d Cir. 2000)). [9]

### III. Conclusion

***8** It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

### All Citations

Not Reported in Fed. Supp., 2024 WL 4870495

## Footnotes

1 The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

2 Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

3 Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

4 Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

5 Plaintiff did not provide any transcripts.

6 As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

7 The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a Heck dismissal. The undersigned has included the Heck review for sake of completeness.

8 Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by Rooker-Feldman, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by Younger. See Porter v. Nasci, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), report and recommendation adopted, 2024 WL 3158645 (N.D.N.Y. June 25, 2024) ("Under the Rooker-Feldman doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); see also Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

9 Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. See Dkt. No. 7 (citing 28 U.S.C. § 1441). However, in addition to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. See, e.g., 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See id. § 1446(a).

10 The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

11 If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

588 Fed.Appx. 79 (Mem)
This case was not selected for publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals,
Second Circuit.

M.A. EDWARDS, Plaintiff–Appellant,
v.
ERFE, Warden, Corrigan C.I.; Official, Individual, LaJoie, Complex Warden; Official, Individual, Sutherland, Correction Officer; Official and Individual, Lynn Milling, PoP Management; Official, Individual, Iozzia, Correction Officer; Official and Individual, Peck, Correction Officer; Official and Individual, Penn, Captain; Official and Individual, Defendants–Appellees.

No. 14–1597.
|
Jan. 8, 2015.

Appeal from a judgment and order of the United States District Court for the District of Connecticut (Alfred V. Covello, J.).

**Attorneys and Law Firms**

M.A. Edwards, Suffield, CT, pro se.

No Appearance, for Defendants–Appellees.

Present: GERARD E. LYNCH, DENNY CHIN, Circuit Judges, EDWARD KORMAN, * District Judge.

***SUMMARY ORDER***

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment and order of the district court are **AFFIRMED.**

Appellant M.A. Edwards, proceeding pro se, appeals from the district court's judgment dismissing his 42 U.S.C. § 1983 complaint sua sponte and from the order denying reconsideration of that judgment. We assume the parties' familiarity with the underlying facts and procedural history.

We review a district court's sua sponte dismissal of a complaint de novo. *Sykes v. Bank of Am.,* 723 F.3d 399, 403 (2d Cir.2013). Pro se submissions are generally reviewed with "special solicitude," and we interpret those submissions to raise the strongest claims suggested. *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir.2006) (per curiam). District courts should not dismiss a pro se complaint without granting leave to amend unless amendment would be futile. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).

Edwards first argues that the district court erred in dismissing his due process claim based on his allegation that he was unlawfully deprived of his property. A prisoner may challenge the deprivation of property in a § 1983 action only if the State provides no adequate post-deprivation remedy. *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Connecticut provides inmates with a remedy for lost or destroyed property. Under Connecticut General Statutes § 4–141 *et seq.,* a person may bring a claim against the State to the Claims Commissioner unless, *inter alia,* the law establishes another administrative remedy for that claim. Conn. Gen.Stat. § 4–142. An inmate's property claim may not be brought directly to the Claims Commissioner because Connecticut Department of Corrections ("DOC") Administrative Directive 9.6(16)(B) establishes an administrative remedy for prisoners aggrieved by property loss or damage. However, if a prisoner exhausts his internal administrative remedy and the DOC's Lost Property Board ("LPB") denies his claim, he may then bring his claim to the Claims Commissioner, *see id.* at 9.6(16)(F), who, as ***81** relevant here, may order relief or authorize suit, *see* Conn. Gen.Stat. § 4–158.

The district court properly ruled that Edwards's claim failed because he did not allege that the above process was inadequate. Arguably, the district court should not have dismissed the claim without providing Edwards an opportunity to amend. *See Cuoco,* 222 F.3d at 112. However, any error is harmless because Edwards's reconsideration

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

motion sets out what he would have alleged had he been granted the opportunity to amend. *See Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,* 507 F.3d 117, 127 (2d Cir.2007). In that motion, Edwards argued that the postdeprivation remedy was inadequate because prison staff told him that the LPB required him to prove his ownership with a receipt of purchase. That allegation does not demonstrate that Edwards lacked an adequate state remedy because, irrespective of the LPB's methods of reaching its decision, he could seek relief from the Claims Commissioner, whose consideration of the issue would have been independent of the LPB's decision. Edwards suggests no reason, either in his reconsideration motion or on appeal, why the presentation of his claim to the Claims Commissioner would have been an inadequate remedy if the LPB were to have denied his claim.

Edwards also asserts that Connecticut's housing of sentenced with unsentenced inmates violates his constitutional rights as a sentenced inmate. However, the Fifth Circuit case relied on by Edwards postulates a due process right of pretrial detainees not to be housed indiscriminately with sentenced inmates, not the reverse. *See Jones v. Diamond,* 636 F.2d 1364, 1374 (5th Cir.1981), *overruled on other grounds by Int'l Woodworkers of Am. v. Champion Int'l Corp.,* 790 F.2d 1174 (5th Cir.1986). Whereas "[d]ue process requires that a pretrial detainee not be punished," a "sentenced inmate ... may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment." *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Edwards' claim fails because he alleges no facts indicating that his housing with unsentenced inmates rather than sentenced inmates amounts to cruel and unusual punishment.

We need not consider whether Connecticut's housing practice violates the due process rights of pretrial detainees, because Edwards lacks standing to assert the rights of pretrial detainees. *See Ziemba v. Rell,* 409 F.3d 553, 555 (2d Cir.2005). We note, however, that two recent District of Connecticut decisions have held that this practice does not violate a pretrial detainee's due process rights "absent allegations that the pretrial detainee suffered an injury from being housed with one or more convicted inmates, or that the placement with convicted inmates was intended to punish the pretrial detainee." *Silvera v. Conn. Dep't of Corr.,* 726 F.Supp.2d 183, 197 (D.Conn.2010); *Woodhouse v. Carroll,* No. 3:08CV1092 (MRK), 2010 WL 3023888, at *5 (D.Conn. Aug.2, 2010).

Lastly, Edwards contends that his double-bunking with another inmate violates his Eighth Amendment rights. That claim fails because double-bunking is not per se unconstitutional and Edwards has not alleged that the practice has "lead to deprivations of essential food, medical care, or sanitation," or to other conditions that rise to the level of cruel and unusual punishment. *Rhodes v. Chapman,* 452 U.S. 337, 344, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

We review the denial of a motion for reconsideration for abuse of discretion. *Simon v. City of N.Y.,* 727 F.3d 167, 171 (2d Cir.2013). "[R]econsideration will generally ***82** be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995). Here, the district court properly declined to grant relief because the arguments and allegations raised in the reconsideration motion did not entitled Edwards to relief.

Finally, we note that appellees failed to file a brief in this appeal, despite requesting and receiving from this Court an extension of time in which to do so. In fact, since requesting an extension, appellees have made no filing with this Court whatsoever. While an appellee is of course under no obligation to submit a brief, the views of appellees will often be of assistance to the Court, especially in dealing with claims made by uncounseled appellants. Moreover, it is discourteous to request an extension only to then cease all communication without notifying the Court that the party has decided not to file a brief.

We have considered all of Edwards's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment and order of the district court.

**All Citations**

588 Fed.Appx. 79 (Mem)

## Footnotes

* The Honorable Edward Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Blue-Striped Flag
Appeal Filed by Gokhberg v. 200 Corbin Owners Corp., 2nd Cir., February 13, 2026

2025 WL 2782547
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Yury GOKHBERG and Marat Gokhberg
v.
200 CORBIN OWNERS CORP., et al.

No. 24-CV-7010 (RER) (JRC)
|
Signed September 30, 2025

**Attorneys and Law Firms**

Yury Gokhberg, Brooklyn, NY, Pro Se.

Marat Gokhberg, Brooklyn, NY, Pro Se.

A. G. Chancellor III, Tromello, McDonnell & Kehoe, Melville, NY, Deborah E. Riegel, Rosenberg & Estis P.C., New York, NY, for 200 Corbin Owners Corp., Arthur Weiner, Alla Berger, Irene Buch, Israel Odesky, United Management Corp.

Deborah E. Riegel, Rosenberg & Estis P.C., New York, NY, Noah Nunberg, L'Abbate Balkan Colavita & Contini, Melville, NY, for Rosenberg & Estis, P.C.

Ira N. Glauber, Dilworth Paxson LLP, New York, NY, for Harvey D. Kampton.

Malvina Lin, Malvina Lin, P.C., Brooklyn, NY, for Elton Cohn, Sarah Cohn.

Christina Marie Rieker, Winget Spadafora & Schwartzberg, LLP, New York, NY, for Henry Daley.

Stacey Anne Van Malden, Bronx, NY, for Robert Renzulli.

**MEMORANDUM & ORDER**

RAMÓN E. REYES, JR., District Judge:

***1** *Pro se* plaintiffs Yury and Marat Gokhberg ("Yury" and "Marat," respectively, and "Plaintiffs" or "Gokhbergs," collectively) bring this action against 200 Corbin Owners Corp., Arthur Weiner, Alla Berger, Irene Buch, Israel Odesky, and United Management Corp. (collectively, the "Co-op Defendants"); Corbin Realty LLC; the corporation's attorneys, Harvey D. Kampton and Rosenberg & Estis, P.C. (the "Professional Defendants"); Elton Cohn and Sarah Cohn (the "Purchaser Defendants"); Mannion Auctions, LLC (the "Auction Defendant"); and City Marshals Henry Daley and Robert Renzulli (the "Marshal Defendants," and together with the Co-op Defendants, the Professional Defendants, the Purchaser Defendants, and the Auction Defendant, "Defendants"). Plaintiffs assert claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and the Fair Housing Act ("FHA" or "Fair Housing Act"), 42 U.S.C. §§ 3601–3619, along with ten state-law causes of action.

Six motions to dismiss are before the Court. For the reasons explained below, the motions are granted. Plaintiffs' RICO and FHA claims are dismissed for failure to state a claim. Plaintiffs' remaining state-law claims are dismissed for lack of subject matter jurisdiction. The Court also dismisses, *sua sponte*, the claims against Corbin Realty LLC and the Auction Defendant. [1] Because the defects are jurisdictional, time-barred, or otherwise incurable, the Court will not grant any further leave to amend.

**BACKGROUND**

I. Factual Background [2]

The Gokhbergs have been shareholders in 200 Corbin Owners Corp. for more than twenty years. In April 1997, Yury first became a 200 Corbin Owners Corp. shareholder by purchasing shares corresponding to apartment 6V, 200 Corbin Place, Brooklyn, New York. (Amended Complaint, ECF No. 10 ("Amended Complaint") ¶ 12). [3] In October 2000, Yury purchased additional shares corresponding to apartments 6M and 6N. (*Id.* ¶ 13). In March 2002, Marat purchased shares corresponding to apartment 3C. (*Id.* ¶ 11). Subsequently, Marat and Yury purchased additional shares corresponding to another apartment. (*Id*. ¶ 14). In April 2012, apartments 6M and 6N were combined into one apartment, 6MN, and the corresponding shares were issued to Yury. (*Id*. ¶ 15). Eight years later, in December 2020, Marat came to hold the shares to apartment 6MN as security for a purported $800,000 mortgage to Yury, which was subsequently registered and recorded as a UCC-1 lien. (*Id*. ¶ 16).

***2** Beginning in 2017, 200 Corbin Owners Corp. initiated a series of Housing Court proceedings against Yury for unpaid maintenance under the proprietary lease. (ECF Nos. 37-4, 37-5, 37-6). On March 16, 2022, that court entered a judgment of possession and eviction against Yury. *200 Corbin Owners Corp. v. Gokhberg*, Index No. LT-311514-21/KI (N.Y. Civ. Ct. Kings Cnty. Mar. 16, 2022), ECF No. 29-29 (the "Housing Court Judgment"). Plaintiffs allege that, in connection with the foreclosure and eviction, Yury lost personal property valued at more than $200,000, that Marat's asserted lien was disregarded, and that they were subjected to retaliation and other governance abuses at 200 Corbin. (Am. Compl. ¶¶ 82, 194, 198, 209, 221).

In 2023, Plaintiffs filed a plenary action in Supreme Court, Kings County, against the Co-op, its board members, managing agent, counsel, purchasers, and auctioneer, raising claims related to the foreclosure, eviction, and auction of Apartment 6MN. On July 24, 2024, the court dismissed the complaint in its entirety after Plaintiffs failed to submit opposition or appear for argument. *Gokhberg v. 200 Corbin Owners Corp.*, Index No. 525322/2023 (N.Y. Sup. Ct. Kings Cnty. July 24, 2024), ECF No. 29-8 (the "Kings County Dismissal"). Plaintiffs now assert similar claims in this federal action.

II. Procedural Background

Plaintiffs filed their initial complaint on October 4, 2024, and their Amended Complaint on December 4, 2024. (ECF Nos. 1, 10). After the Amended Complaint, each defendant group moved to dismiss. Marshal Defendant Daley filed the first motion on December 18, 2024. (ECF No. 12). The Co-op Defendants followed on February 20, 2025. (ECF Nos. 26–27). Professional Defendant Rosenberg & Estis, P.C. filed its motion the next day, February 21, 2025. (ECF Nos. 28–29). Professional Defendant Harvey D. Kampton filed his motion on March 5, 2025. (ECF Nos. 31–32). The Purchaser Defendants moved on March 13, 2025. (ECF No. 37). Finally, Marshal Defendant Renzulli filed his motion on April 1, 2025. (ECF No. 38).

Although six separate motions are pending, Defendants advance overlapping grounds for dismissal. First, they argue that the Court lacks subject-matter jurisdiction under the *Rooker–Feldman* doctrine because the relief sought would effectively undo the March 16, 2022 Housing Court Judgment and the July 24, 2024 Kings County Dismissal. (ECF Nos. 12, 26–27, 28–29, 38). Second, Defendants contend that the RICO claim fails to plead a cognizable enterprise, predicate acts, a pattern, or Rule 9(b) particulars. (*Id.*) Third, Defendants assert that the FHA section 3617 retaliation claim does not allege protected activity, causation, or timeliness (ECF Nos. 26–27, 28–29). Fourth, Defendants urge the Court to decline supplemental jurisdiction over any remaining state-law claims if the federal claims are dismissed. (*Id.*)

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**LEGAL STANDARDS**

"[F]ederal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000). Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of a claim when the federal court lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(1). In reviewing a motion to dismiss under Rule 12(b)(1), courts must "accept as true all material factual allegations in the complaint," *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998), but refrain from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]," *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003). The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

***3** Rule 12(b)(6) authorizes dismissal where the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive such a motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While all factual allegations contained in the complaint are assumed to be true, this presumption is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

When a plaintiff proceeds *pro se*, the court must liberally construe the complaint "as raising the strongest arguments they suggest". *Lovelace v. Wells Fargo Bank, NA*, 762 F. Supp. 3d 186, 189 (E.D.N.Y. 2025) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)); *see Sause v. Bauer*, 585 U.S. 957, 960 (2018) (per curiam). As a result, the court may accept as true well pleaded factual allegations in his opposition to a motion to dismiss. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013). This is because the "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (concluding that regardless of the holdings of *Twombly* and *Iqbal* that the court is obligated to liberally interpret *pro se* complaints).

**DISCUSSION**

Plaintiffs assert twelve causes of action. The Court first addresses the Eleventh Cause of Action, brought under RICO against all defendants. (Am. Compl. at 32). Second, the Court turns to the Twelfth Cause of Action, brought under the FHA. (*Id.* at 33). Next, the Court considers whether it has subject matter jurisdiction over the Plaintiffs' state-law and common-law causes of action, set out as the First through Tenth Causes of Action, under the *Rooker–Feldman* doctrine. (*Id.* at 10–31). Finally, the Court explains why, even if *Rooker–Feldman* doctrine does not apply, it would decline to exercise supplemental jurisdiction. Because the defects are jurisdictional, time-barred, or otherwise incurable, further leave to amend would be futile and is denied.

I. Plaintiffs' RICO Claim Is Dismissed

RICO makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Section 1962(d) further makes it unlawful for "any person to conspire to violate" Section 1962. *Id.* § 1962(d). As the Second Circuit has explained, if a plaintiff fails to "allege a substantive violation of RICO," a claim alleging a RICO conspiracy under section 1962(d) must fail as well. *Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004). Accordingly, the Court begins with the claim under Section 1962(c).

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Courts in this Circuit have recognized that the pleading burden in civil RICO cases is high as "[c]ourts look with particular scrutiny at claims for a civil RICO, given RICO's damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies." *Spiteri v. Russo,* No. 12-CV-2780 (MKB) (RLM), 2013 WL 4806960, at *45 (E.D.N.Y. Sept. 7, 2013). To state a violation of Section 1962(c), a plaintiff must plead four elements: "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity." *DeFalco v. Bernas,* 244 F.3d 286, 306 (2d Cir.2001); *see also S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996).

***4** Under this framework, a "pattern of racketeering activity" is a prerequisite to a Section 1962(c) claim. *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 656 (S.D.N.Y. 1996). The statute defines "racketeering activity" by listing specific criminal acts that may serve as predicate offenses, including "any act or threat involving ... bribery ... which is chargeable under State law and punishable by imprisonment for more than one year," as well as "any act which is indictable under ... section 201 (relating to bribery), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud) ... [and] section 1956 (relating to the laundering of monetary instruments)." 18 U.S.C. § 1961(1). "[F]ailure to plead RICO predicate acts, much less a pattern of racketeering activity, is itself fatal to [p]laintiff's RICO claim." *Katzman*, 167 F.R.D. at 656.

Here, Plaintiffs conclusorily allege that Defendants "used interstate wires and mail to transmit false financial statements and fraudulent UCC filings," "transferred misappropriated funds through various entities ... to conceal the illegal source and use of these funds," and "engaged in bribery of third parties, including but not limited to city marshals." (Am Compl. ¶¶ 251–53). The Court therefore considers, in turn, mail and wire fraud, bribery, and money laundering as potential predicate acts.

A. Mail Fraud and Wire Fraud

Plaintiffs fail to plausibly plead the predicate acts of mail fraud and wire fraud.

A RICO claim alleging mail and wire fraud as predicate acts must show "(1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996) (citation omitted). "The term 'scheme to defraud' is measured by a non-technical standard reflecting fundamental notions of honesty, fair play and right dealing." *Aiu Ins. Co. v. Olmecs Med. Supply, Inc.*, No. CV-04-2934 (ERK), 2005 WL 3710370, at *10 (E.D.N.Y. Feb. 22, 2005) (citing *United States v. Trapilo,* 130 F.3d 547, 550 (2d Cir.1997)). It has been described as "a plan to deprive a person 'of something of value by trick, deceit, chicane or overreaching.' " *Id.* (quoting *United States v. Autuori,* 212 F.3d 105, 115 (2d Cir. 2000)). "The use of the mails need not be essential to the fraudulent scheme as long as the mailing is incident to an essential part of the scheme." *Zigman v. Giacobbe,* 944 F. Supp. 147, 153 (E.D.N.Y.1996) (citing *Pereira v. United States,* 347 U.S. 1, 8 (1954)).

Furthermore, "[i]n pleading a violation of the mail and wire fraud statutes, Rule 9(b) of the Federal Rules of Civil Procedure must be satisfied." *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 455 (S.D.N.Y. 1998) (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir.1993)). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Pursuant to this higher pleading standard, a complaint must "specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Colony at Holbrook, Inc. v. Strata G.C.,* Inc., 928 F. Supp. 1224, 1230 (E.D.N.Y. 1996) (quoting *McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir. 1992)). "[T]he 'overwhelming trend' amongst the lower courts is to apply Rule 9(b) strictly in order to effect dismissal of civil RICO suits." *In re Sumitomo Copper Litig.*, 995 F. Supp. at 455 (citations omitted).

Here, Plaintiffs' allegations fall short of these requirements. In the Amended Complaint, Plaintiffs only assert that Defendants "used interstate wires and mail to transmit false financial statements [and] fraudulent UCC filings." (Am. Compl. ¶ 251). Plaintiffs do not identify any specific misrepresentation, explain why it was false, or otherwise set forth a scheme designed to deprive them of property by trick or deceit. Although Plaintiffs invoke the mails and wires, they do not allege the circumstances of any mailing or transmission—when it occurred, by whom, to whom, or how it furthered a fraudulent plan. The same is true

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

for the allegations in the Gokhbergs' opposition. (Plaintiffs' Combined Opposition, ECF No. 40 ("Pls.' Opp.") at 7). Plaintiffs contend that the "200 Corbin Insider Group"—comprising the cooperative, its board members, the managing agent, outside counsel, and the city marshals—operated with a common purpose of seizing Apartment 6MN, with each actor playing a discrete role (board members voting policy, the agent mailing arrears notices, counsel drafting filings, and marshals enforcing them). (*Id.*) These generalized and conclusory allegations are wholly insufficient under Rule 9(b) and do not plausibly plead mail or wire fraud as predicate acts. *See Mills*, 12 F.3d at 1176 (finding that allegations on mail and wire fraud, when pled as RICO predicate acts, must satisfy Rule 9(b)).

B. Money Laundering

***5** Plaintiffs' allegations of money laundering likewise fail to state a predicate act.

To state a claim for money laundering under RICO, a plaintiff must plead: "(1) that the defendant conducted a financial transaction; (2) that the transaction in fact involved the proceeds of specified unlawful activity as defined in [18 U.S.C.] § 1956(c)(7); (3) that the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and (4) that the defendant knew that the financial transaction was designed in whole or in part to conceal or disguise the source, ownership, control, etc., of those proceeds." *Dale v. Banque SCS Alliance S.A.*, No. 02 Civ. 3592 (RCC) (KNF), 2005 WL 2347853, at *5 n.2 (S.D.N.Y. Sept. 22, 2005) (citing *United States v. Maher*, 108 F.3d 1513, 1527–28 (2d Cir. 1997)); *see also In re 650 Fifth Ave. & Related Properties*, 777 F. Supp. 2d 529, 558–59 (S.D.N.Y. 2011).

Here, Plaintiffs allege that Defendants "transferred misappropriated funds through various entities, including Corbin Realty LLC, to conceal the illegal source and use of these funds for personal benefit." (Am. Compl. ¶ 253). This allegation does not identify a particular financial transaction, let alone facts showing that the transaction involved "proceeds of specified unlawful activity" under Section 1956(c)(7). Nor does it allege that any Defendant knew the property involved represented such proceeds, or that the transaction was designed to conceal the source or ownership of those proceeds. Instead, the complaint offers only conclusory references to laundering money without factual detail as to what occurred, when, by whom, or with what knowledge.

C. Bribery

The Court considers Plaintiffs' bribery allegations under both federal law and state law. *See* 18 U.S.C. § 1961(1).

Federal law defines bribery as "giving or attempting to give something of value to a public official to influence an official act, commit fraud, or to omit any act in violation of his lawful duty, or for a public official to demand something of value to do the same." 18 U.S.C. § 201. "Pursuant to 18 U.S.C. § 201 (bribery of a public official), the person receiving the alleged bribe must be a federal official." *Laverpool v. New York City Transit Auth.*, 760 F. Supp. 1046, 1058 (E.D.N.Y. 1991). Thus, as a threshold matter, a bribery predicate requires a suitable federal public official. Here, Plaintiffs allege that Defendants "engaged in bribery of third parties, including but not limited to city marshals." (Am. Compl. ¶ 253). But New York City marshals are not "federal official[s]" within the meaning of § 201(a)(1). See *United States v. Aloi*, 449 F. Supp. 698, 709 n.14 (E.D.N.Y. 1977) (interpreting Second Circuit precedent to hold that a city official was not a federal public official under § 201); *see also United States v. Hoskins*, 520 F. Supp. 410, 414 (N.D. Ill. 1981) (explaining that persons acting on behalf of a state or municipal government are not "acting for or on behalf of the United States" within § 201).

Nor have Plaintiffs pleaded facts that would plausibly state a violation of New York's bribery statutes, which may serve as RICO predicates if "chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1). Bribery is defined under New York Penal Law Sections 180.00–180.55 (bribery not involving public servants) and 200.00–200.50 (bribery involving public officials). Here, only Sections 200.00–200.50 are relevant. According to Section 200.00 of the New York Penal Law, "a person is guilty of bribery in the third degree when he confers, or offers or agrees to confer, any benefit upon a public servant upon an agreement or understanding that such public servant's vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced." N.Y. Penal Law § 200.00.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

***6** Plaintiffs, however, do not identify which provision of New York law Defendants allegedly violated, nor do they allege any facts regarding "an agreement or understanding" with a marshal, the "value of the benefit" conferred, or the "official act" to be influenced. The bare assertion of "bribery" is therefore conclusory and does not plausibly allege a felony chargeable under New York law. Absent factual allegations satisfying the elements of either federal or state bribery, Plaintiffs have not pleaded a predicate act for bribery under RICO.

With no adequately pleaded predicate acts, Plaintiffs fail to properly plead a "pattern of racketeering activity,"[4] so their Section 1962(c) claim fails; the Section 1962(d) conspiracy claim fails for the same reason. *Capital Asset Mgmt., Inc.*, 385 F.3d at 182.

II. Plaintiffs' FHA Claim Is Inadequately Pleaded and Untimely

Plaintiffs' FHA retaliation theory rests on four allegations: (1) that Yury "was deprived of his use of Apt. 6MN ... as a result of retaliation for raising accounting and legal concerns" (Am. Compl. ¶ 102); (2) that Yury "was deprived of his ability to rent or sell" due to withheld permission, failure to process a buyer's application, and alleged discrimination against buyers with children and persons with disabilities (*id.* ¶ 102); (3) that "defendants have retaliated ... over objections and requests for information" (*id.* ¶ 127); and (4) that certain defendants "retaliated ... by engaging in discriminatory practices, obstructing [Plaintiffs'] ability to rent or sell ... and taking adverse actions ... for raising concerns about illegal activities and mismanagement" (*id.* ¶ 260). Defendants argue these allegations fail to state a claim and are time-barred (ECF No. 26-3 at 13–19; ECF No. 44 at 7–8); the Court agrees.

The FHA forbids discrimination in housing because of race, color, religion, sex, familial status, national origin and disability. *See* 42 U.S.C. §§ 3604–3606. Section 3617 prohibits retaliation for exercising rights under the FHA. *See* 42 U.S.C. § 3617; *Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 278 (S.D.N.Y. 2019). To state a retaliation claim under the FHA, a plaintiff must allege: (1) that he engaged in protected activity by opposing conduct prohibited under the FHA; (2) that the defendant(s) was aware of the protected activity; (3) that the defendant(s) subsequently took adverse action against the plaintiff; and (4) that there is a causal connection between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse action.' " *Favourite*, 381 F. Supp. 3d at 278 (*quoting Lynn v. Vill. of Pomona*, 373 F. Supp. 2d 418, 432 (S.D.N.Y. 2005)). The term "protected activity" refers to "action taken to protest or oppose statutorily prohibited discrimination." *Miller v. Bd. of Managers of Whispering Pines at Colonial Woods Condo. II*, 457 F. Supp. 2d. 126, 131 (E.D.N.Y. 2006) (cleaned up).

***7** Here, Plaintiffs fail to allege that they engaged in any protected activity—action taken to protest or oppose statutorily prohibited discrimination. Plaintiffs assert retaliation "for raising accounting and legal concerns involving defendants", or "*over objections and requests for information*", and for "raising concerns about illegal activities and mismanagement" shareholder disputes—not for opposing or reporting housing discrimination prohibited by the FHA. (Am. Compl. ¶¶ 98, 102, 127, 260). In their opposition, Plaintiffs further point to a rejected application by a prospective purchaser, Dmitry Basov, and contend that Yury insisted on fair treatment. (Pls.' Opp. at 10). Plaintiffs make only general references to alleged discrimination against prospective buyers "based on the number of children" or against "persons with disabilities," and these assertions are not tied to any protected activity by Plaintiffs themselves. (Am. Compl. ¶ 102). Plaintiffs have simply failed to plead that they engaged in any protected activity.

The claim is also untimely. FHA claims are subject to a two-year statute of limitations. *See* 42 U.S.C. § 3613(a)(1)(A) (providing in relevant part that a civil action may be commenced "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice"). For example, in *Pantoja v. Scott*, the court held that the statute of limitations began to run when the defendant refused to provide secondary financing, which "occurred or terminated" on the date of the closing, even though eviction and rescission proceedings followed. No. 96 Civ. 8593 (AJP), 2001 WL 1313358, at *9 (S.D.N.Y. Oct. 26, 2001). The court further explained that the continuing violation doctrine did not apply because the alleged discriminatory act concluded at the closing, and later events were merely consequences rather than new violations. *Id.* at 10–11. Likewise here, any possible FHA violation ended no later than the September 1, 2021 foreclosure sale, when Plaintiffs' housing interest in Apartment 6MN was extinguished, even if they continued to feel its effects afterward. (Am. Compl. ¶¶ 76–83). Plaintiffs

commenced this action on October 4, 2024—more than two years later. (ECF No. 1). Accordingly, the FHA retaliation claim is time-barred.

For these reasons, Plaintiffs' FHA retaliation claim is dismissed.

III. Plaintiffs' State-Law Claims Are Dismissed under *Rooker–Feldman* Doctrine

"The *Rooker–Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.' " *Lance v. Dennis,* 546 U.S. 459, 460 (2006) (*per curiam*) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005)); *see also* *Hoblock v. Albany County Bd. of Elecs.,*422 F.3d 77, 85 (2d Cir.2005) (same). The *Rooker–Feldman* doctrine applies where the federal-court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state-court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state-court judgment was rendered. *Hoblock,* 422 F.3d at 85; *see also* *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014).

The Court observes that Plaintiffs' federal complaint is, in substance, an attack on two separate state-court judgments: first, the March 16, 2022 judgment of eviction entered by the New York City Housing Court (the "Housing Court Judgment"); and second, the July 24, 2024 dismissal of their action in the New York Supreme Court, Kings County (the "Kings County Dismissal").

Under *Hoblock*, two of the four *Rooker–Feldman* requirements are plainly satisfied. Plaintiffs are "state-court losers" within the meaning of the doctrine, having lost possession of apartment 6MN in Housing Court and suffered dismissal of their subsequent claims in Supreme Court. [5] Likewise, both judgments were rendered well before the commencement of this action in October 2024, satisfying the timing requirement. [6]

***8** In determining the second and third requirements, the Court first considers the Kings County Dismissal, then turns to the Housing Court Judgment.

A. The Kings County Dismissal

The Court begins with the Kings County Dismissal. That order dismissed, in its entirety, Plaintiffs' claims against 200 Corbin Owners Corp., Arthur Weiner, Alla Berger, Irene Buch, Israel Odesky, United Management Corp., Corbin Realty LLC, Rosenberg & Estis, P.C., Harvey D. Kampton, Elton and Sarah Cohn, and Mannion Auctions, LLC. (ECF No. 29-8). In this action, Plaintiffs assert the very same state-law causes of action against those same defendants, and seek relief that would effectively nullify the Kings County Dismissal.

Federal courts in this Circuit have repeatedly emphasized that the critical inquiry under *Rooker–Feldman* is whether the injury complained of was caused by the state court judgment itself. See *McKithen v. Brown*, 481 F.3d 89, 97–98 (2d Cir. 2007). That principle applies with equal force to default judgments and dismissals. See *Shieh v. Chase Bank USA, N.A.*, No. 11–CV–5505 (CBA)(SMG), 2012 WL 2678932, at *5 (E.D.N.Y. July 6, 2012) (holding that "[*Rooker–Feldman*] applies to default judgments just as it does to other types of judgments," and that challenges must be brought through state vacatur procedures); *Granger v. Harris*, No. CV–05–3607 (SJF)(ARL), 2007 WL 1213416, at *5 (E.D.N.Y. Apr. 24, 2007) (finding that claims of wrongful service and a resulting lien "in essence, seek to overturn the default judgment entered against Granger in the state court action").

Here, by reasserting essentially the same claims against the same defendants, Plaintiffs are, in substance, inviting this Court to undo the injury inflicted by the Kings County Dismissal. The causal link is direct: absent the Kings County Dismissal, Plaintiffs would still have a vehicle for the relief they now seek. Thus, Plaintiffs' federal complaint falls squarely within the second and third prongs of the doctrine, because it both complains of injuries caused by the state-court judgment and invites this Court to review and reject that judgment.

Accordingly, the state-law claims against the Co-op Defendants, the Professional Defendants, the Purchaser Defendants, Corbin Realty LLC, and the Auction Defendant are dismissed for lack of subject matter jurisdiction.

B. The Housing Court Judgment

The only defendants not encompassed by the Kings County Dismissal are the Marshal Defendants, and the claims against them necessarily rise or fall with the Housing Court Judgment. The Amended Complaint alleges that the Marshal Defendants "facilitated the unlawful seizure and fraudulent transfer of Apartment 6MN" by executing the eviction order. (Am. Compl. ¶ 256). But, as the Marshal Defendants themselves argue, their role was limited to carrying out the Housing Court Judgment. (ECF No. 12-6 at 6).

In *Bush v. Danziger*, the court held that the plaintiff's alleged injuries—including the lockout by a marshal, the removal of belongings by movers, and the actions of NYCHA employees—were all "produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." No. 06 Civ. 5529 (PKC), 2006 WL 3019572, at *4 (S.D.N.Y. Oct. 23, 2006). The Housing Court judgment in favor of NYCHA was the direct legal cause of the eviction, and each downstream injury flowed from enforcement of that judgment. The court explained that the source of injury was the Housing Court judgment itself, because without that order none of the alleged injuries would have occurred.

***9** Here, the same reasoning applies. Plaintiffs' allegations against the Marshal Defendants are not independent of the Housing Court Judgment but are inseparable from it, because their alleged misconduct consisted entirely of executing the eviction order. Without the Housing Court Judgment, the Marshal Defendants would have had no authority to act and no injury would have followed. The injuries Plaintiffs ascribe to the Marshal Defendants were "produced by a state-court judgment," *Hoblock*, 422 F.3d at 88. Thus, Plaintiffs' claims against the Marshal Defendants also satisfy the second and third prongs of *Rooker–Feldman*.[7]

Because the alleged injuries all flow directly from these judgments, the Court lacks subject matter jurisdiction over Plaintiffs' First through Tenth Causes of Action under the *Rooker–Feldman* doctrine.[8]

IV. Supplemental Jurisdiction Over State-Law Claims Is Declined

Even if *Rooker–Feldman* did not deprive the Court of subject-matter jurisdiction, dismissal of Plaintiffs' state law claims would be appropriate. *See* 28 U.S.C. § 1367(a). "[W]here all the federal claims have been dismissed at a relatively early stage, the district court should decline to exercise supplemental jurisdiction over pendent state-law claims." *Astra Media Grp., LLC v. Clear Channel Taxi Media, LLC,* 414 F. App'x 334, 337 (2d Cir. 2011); *see also* *Marcus v. AT & T Corp.,* 138 F.3d 46, 57 (2d Cir.1998). Dismissal is favored because it allows "state courts ... if so called upon, [to] decide for themselves whatever questions of state law this case may present." *Giordano v. City of N.Y.,* 274 F.3d 740, 754 (2d Cir. 2001) (citation omitted). After considering these factors, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims.

V. Leave to Amend Will Not Be Granted

Courts in this Circuit often consider whether *pro se* litigants should be afforded leave to amend upon the dismissal of their claim. *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795–96 (2d Cir. 1999); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991). However, "[l]eave to amend ... may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.' " *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citation omitted).

Here, the Gokhbergs have already amended once, and the defects identified here—jurisdictional bars under *Rooker–Feldman*, untimeliness under the FHA, and substantive pleading deficiencies in the RICO claim [9] —are not ones that could be cured by better pleading. *Tocker v. Philip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (holding that "a motion for leave to amend a complaint may be denied when amendment would be futile." (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003))); *Wlosinski v. Smith*, No. 17-CV-6865-FPG, 2018 WL 1827671, at *4 (W.D.N.Y. Apr. 17, 2018) (declining to grant leave to amend because the court did not have subject matter jurisdiction pursuant to the FTCA). Under these circumstances, leave to amend is denied.

## CONCLUSION

***10** For the foregoing reasons, Defendants' motions to dismiss (ECF Nos. 12, 26–27, 28–29, 31–32, 37, 38) are granted. The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

**All Citations**

Slip Copy, 2025 WL 2782547

## Footnotes

1 Corbin Realty LLC and the Auction Defendant did not file a motion to dismiss. However, the Court addresses the claims against these parties *sua sponte*. District courts have the inherent authority to dismiss meritless claims *sua sponte*. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (per curiam) (affirming the district court's conclusion that it had the power to dismiss a frivolous action *sua sponte*); *Wachtler v. Cty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) ("The district court has the power to dismiss a complaint *sua sponte* for failure to state a claim.") (quoting Leonhard v. United States, 633 F.2d 599, 609 n.11 (2d Cir. 1980)). Plaintiffs must be given notice and an opportunity to be heard, but a court can dismiss claims *sua sponte*, particularly where a defendant has neither been served nor appeared. *Alki Partners, L.P. v. Vatas Holding GMBH*, 769 F. Supp. 2d 478, 499 (S.D.N.Y. 2011) (dismissing, *sua sponte*, claims against a non-appearing, non-moving defendant where motions by other defendants put the plaintiff on notice of the ground for dismissal), aff'd sub nom *Alki Partners, L.P. v. Windhorst*, 472 F. App'x 7 (2d Cir. 2012) (summary order).

2 Unless otherwise noted, all facts are drawn from the Plaintiffs' Amended Complaint (ECF No. 10) and are assumed true for purposes of these motions.

3 The Amended Complaint contains a version that is redlined over the original complaint. (ECF No. 10 at 36-73). The references herein are to the Amended Complaint appearing at ECF No. 10 pages 1-35, which the Court construes as the operative pleading.

4 The Court further notes that even if Plaintiffs could adequately allege two predicate acts—which they have not—the continuity element of a RICO "pattern" can never be satisfied on the facts alleged. A RICO pattern may be established only through open-ended or closed-ended continuity. *Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017). Plaintiffs cannot show open-ended continuity because the alleged scheme was inherently terminable: it was directed solely at recovering possession of a single apartment and ended with the Housing Court's judgment of possession and eviction on March 16, 2022. *See* *Cofacrédit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008). Nor can Plaintiffs show closed-ended continuity. Plaintiffs contend

that the misconduct dates to 2015 when the co-op mailed them "fraudulent arrears notices." (Pls. Opp. at 7–8) The Court is not convinced, as disputed arrears in 2015 is at most a billing dispute rather than a statutory predicate act. The earliest arguable predicate act was the foreclosure in September 2020 and the latest was the March 2022 eviction, a period of approximately eighteen months. The Second Circuit has "never held a period of less than two years to constitute a 'substantial period of time' " sufficient for closed-ended continuity. *Cofacrédit, S.A.*, 187 F.3d at 242.

5 Plaintiffs contend that only Yury "lost" in state court. (Pls' Opp. at 5). The record forecloses that contention: whatever the posture in Housing Court, both Yury and Marat were plaintiffs in the 2023 Kings County action, and that complaint was dismissed in its entirety on July 24, 2024. (ECF No. 29-8).

6 Plaintiffs argue that the relevant judgment for *Rooker–Feldman* purposes is the February 6, 2025 order denying vacatur. (Pls.' Opp. at 5). That contention is misplaced. The operative judgments are the March 16, 2022 Housing Court judgment and the July 24, 2024 Kings County dismissal, because those judgments created the injuries of which Plaintiffs complain. See *McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007) ("the applicability of the *Rooker–Feldman* doctrine turns ... on the causal relationship between the state-court judgment and the injury of which the party complains in federal court"). The 2025 vacatur denial did not itself cause any new injury, but merely left the prior judgments undisturbed.

7 The Court also notes that a substantial portion of Plaintiffs' state-law counts—though styled against non-marshal defendants—seek relief that would effectively undo the Housing Court Judgment, including challenges to the auction and share reissuance, the eviction and seizure of property, and subsequent transfers of Apartment 6MN. The remedies requested, such as quiet title, restoration of possession, reinstatement of liens, invalidation of share/title reissuance, and disgorgement of sale proceeds, would require review and reject the eviction's operative effect and thus amount to a de facto appeal.

8 The Marshal Defendants also invoke quasi-judicial immunity. Because the Court dismisses Plaintiffs' state-law claims under the *Rooker–Feldman* doctrine and their federal claims on other grounds, the Court need not reach this argument.

9 The RICO claim fails not merely for lack of factual detail but because the continuity element of a "pattern of racketeering activity" cannot be satisfied on the facts alleged and cannot be cured even if Plaintiffs were to plead additional details. *See supra* note 4.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

578 Fed.Appx. 49
This case was not selected for publication in the Federal Reporter.
Not for Publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE(WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals,
Second Circuit.

Nicholas J. HIRSCH, Plaintiff–Appellant,
v.
ROCHESTER CITY POLICE DEPARTMENT, et al., Defendants–Appellees.

No. 13–3002–cv.
|
Sept. 22, 2014.

Appeal from a judgment of the United States District Court for the Western District of New York (Charles J. Siragusa, Judge.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is AFFIRMED in part, VACATED in part, and the cause is **REMANDED** for further proceedings consistent with this order.

**Attorneys and Law Firms**

Nicholas J. Hirsch, Rochester, NY, pro se.

No Appearance.

PRESENT: JOSÉ A. CABRANES and RAYMOND J. LOHIER, JR., Circuit Judges, PAUL A. ENGELMAYER, * District Judge.

***50 SUMMARY ORDER**

Appellant Nicholas Hirsch, proceeding *pro se,* appeals from the District Court's judgment dismissing his lawsuit *sua sponte* and imposing a leave-to-file sanction. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review a district court's *sua sponte* dismissal of a complaint *de novo. Sykes v. Bank of Am.,* 723 F.3d 399, 403 (2d. Cir.2013). *Pro se* submissions are generally reviewed with "special solicitude," and we interpret those submissions to raise the strongest claims suggested. *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir.2006) (per curiam) (quoting *Ruotolo v. I.R.S.,* 28 F.3d 6, 8 (2d Cir.1994)). District courts should generally not dismiss a *pro se* complaint without granting leave to amend. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000). However, leave to amend is unnecessary if amendment would be futile, *see id.,* or if the plaintiff "is an extremely litigious [litigant] who is quite familiar with the legal system and with pleading requirements," *Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994).

Hirsch argues that the District Court erred in dismissing his complaint for his failure to respond to its order to show cause because he timely responded. Hirsch is correct, but remand is unwarranted. Res judicata barred his claims against the City of Rochester, the Rochester City Police Department, Officer Michael Johnson, and Officer Samuel Ognibene, as these defendants were all listed in Hirsch's previously-dismissed complaint. *See* Second Amended Complaint, *Hirsch v. City of Rochester,* No. 6:11–CV–6381 (W.D.N.Y. Feb. 17, 2012), ECF No. 56; *see also Monahan v. N.Y.C. Dep't of Corr.,* 214 F.3d 275, 284–91 (2d Cir.2000) (barring constitutional claims under the doctrine of res judicata). However, although Hirsch's previous complaint also listed six "John Does," it did not specifically list Officer Nina Nowack. His claims against Nowack were therefore not barred by res judicata. *Cf. Nagle v. Lee,* 807 F.2d 435, 440 (5th Cir.1987) (ruling that fictitiously named officers were not entitled to benefit of res judicata where they did not appear in the prior action and were never served). Nonetheless, Hirsch's most recent complaint failed to allege any facts suggesting that Nowack violated his federal or constitutional rights. Moreover, affording Hirsch an opportunity to amend would have been unnecessary in light of the litigant's history. The District Court's prior

orders repeatedly and explicitly explained that complaints containing only conclusory legal assertions warrant dismissal. *See Davidson,* 32 F.3d at 31.

Turning to the leave-to-file sanction, we review a sanction order for an abuse of discretion. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 55, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *StreetEasy, Inc. v. Chertok,* 752 F.3d 298, 306–07 (2d Cir.2014). As the Supreme Court has noted, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers,* 501 U.S. at 44, 111 S.Ct. 2123. A court, however, may impose a filing injunction if confronted with "extraordinary circumstances, such as a demonstrated history of frivolous and vexatious litigation ... or a failure to comply with sanctions imposed for such conduct." *Milltex Indus. Corp. v. Jacquard Lace Co., Ltd.,* 55 F.3d 34, 39 (2d Cir.1995) (quoting *Richardson Greenshields Sec., Inc. v. Lau,* 825 F.2d 647, 652 (2d Cir.1987)). A "court may not impose a filing ***51** injunction on a litigant sua sponte without providing the litigant with notice and an opportunity to be heard." *Iwachiw v. N.Y. State Dep't of Motor Vehicles,* 396 F.3d 525, 529 (2d Cir.2005) (quoting *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998)). Here, Hirsch timely objected to the District Court's order to show cause why a leave-to-file sanction should not be imposed. That objection, however, was mistakenly docketed in another of Hirch's actions. Pl.'s Resp. & Cover Ltr., *Hirsch v. City of Rochester,* No. 6:12–CV–6525 (W.D.N.Y. Apr. 15, 2013), ECF Nos. 7–8. Because the District Court did not consider this objection, the sanction order is vacated, and the cause is remanded in order to provide Hirsch with an opportunity to be heard on this question. Of course, we intimate no view on whether the order would be appropriate in the circumstances presented.

We have considered Hirsch's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** in part, **VACATE** in part, and **REMAND** the cause for further proceedings consistent with this order.

### All Citations

578 Fed.Appx. 49

## Footnotes

* The Honorable Paul A. Engelmayer, of the United States District Court for the Southern District of New York, sitting by designation.

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

335 Fed.Appx. 102
This case was not selected for publication in West's Federal Reporter.
United States Court of Appeals,
Second Circuit.

Sandra SHEEHY, et al., Plaintiffs–Appellants,
v.
Thomas P. BROWN, et al., Defendants–Appellees.

No. 08–0102–cv.
|
June 23, 2009.

**Synopsis**
**Background:** Plaintiffs appealed, pro se, a judgment of the United States District Court for the Western District of New York, Telesca, J., sua sponte dismissing their complaint.

**Holdings:** The Court of Appeals held that:

[1] plaintiffs failed to establish § 1983 claims arising out of their allegedly false prosecutions, and

[2] plaintiffs failed to state a claim for conspiracy to interfere with civil rights.

Affirmed.

West Headnotes (2)

**[1]** **Civil Rights** Criminal prosecutions

Plaintiffs failed to allege that their convictions or sentences were invalidated or otherwise expunged, as required to establish § 1983 claims arising out of their allegedly false prosecutions. 42 U.S.C.A. § 1983.

64 Cases that cite this headnote

**[2]** **Conspiracy** Civil rights conspiracies

Plaintiffs failed to allege the formation of a conspiracy, and overt acts in furtherance of such conspiracy, as required to state a claim for conspiracy to interfere with civil rights. 42 U.S.C.A. § 1985.

434 Cases that cite this headnote

***103** **UPON DUE CONSIDERATION,** it is hereby **ORDERED, ADJUDGED AND DECREED** that the judgment of the district court is **AFFIRMED.**

**Attorneys and Law Firms**

Sandra Sheehy, pro se.

Robert Sheehy, pro se.

Patrick Sheehy, pro se.

Bobbi Sheehy, pro se.

Billie Sheehy, pro se.

Casey Sheehy, pro se.

Sherry Sheehy, pro se.

PRESENT: Hon. PIERRE N. LEVAL, Hon. ROSEMARY S. POOLER and Hon. B.D. PARKER, Circuit Judges.

***SUMMARY ORDER***

****1** Plaintiffs–Appellants Sandra, Robert, Patrick, Bobbi, Billie, Casey, and Sherri Sheehy, *pro se,* appeal from the judgment of the United States District Court for the Western District of New York (Telesca, J.), *sua sponte* dismissing the complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). We assume the parties' familiarity with the facts, procedural history and issues on appeal.

Having reviewed *de novo* the district court's *sua sponte* dismissal under § 1915(e), *see Giano v. Goord,* 250 F.3d 146, 149–50 (2d Cir.2001), we conclude that the district court did not err in dismissing Appellants' complaint.

**[1]** First, any 42 U.S.C. § 1981 or § 1983 claim against Appellees Lucy or Edward Sherwood, Thomas Fuoco, Mark Wattenberg, or Steve Presutti was properly dismissed, as private actors and institutions generally are not proper § 1983 defendants. *See American Mfrs. Mut. Ins. Co. v.*

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

*Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (§ 1983 actions do not reach purely private conduct). Additionally, for an individual to recover damages for an allegedly unconstitutional conviction or imprisonment, he or she "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus...." *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Thus, any § 1983 claims arising out of the allegedly false prosecutions of Sandra, Patrick, or Robert Sheehy were appropriately dismissed, as Appellants did not allege that their convictions or sentences were invalidated or otherwise expunged. *Id.*

***104** As for the American Society for the Prevention of Cruelty to Animals, the Allegany County Society for the Prevention of Cruelty to Animals, and Appellee Presutti, claims against these defendants were properly dismissed, as Appellants did not allege any wrongdoing on their part or specify how they were involved in the constitutional violations alleged. *See* 28 U.S.C. § 1915(e)(2). Next, to the extent that Appellants challenge the conduct of county district attorneys or state court judges, such actors are entitled to immunity. *Nixon v. Fitzgerald,* 457 U.S. 731, 766, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

Appellants also assert § 1983 claims against: (1) county sanitation workers for entering the Sheehys' property, in violation of their property and privacy rights; (2) state troopers for use of excessive force and retaliation; and (3) Allegany County Department of Social Services employees for entering the Sheehys' property and removing the Sheehy children from their homes, in violation of their First, Fourth, and Ninth Amendment rights. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* ––– U.S. ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). We conclude that because the Appellants' § 1983 allegations are so vague as to fail to give the defendants adequate notice of the claims against them, the district court did not err in dismissing them.

****2 [2]** Appellants also assert claims under § 1985, for which a plaintiff must allege: (1) a conspiracy, (2) which has an intent or purpose to deprive a person of equal protection of the law; (3) an act in furtherance of the conspiracy; (4) which results in an injury to a person, or a person's property, or the deprivation of a federal constitutional right. *See Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993) (per curiam). Here, the Appellants' claims of conspiracy failed to specifically allege (1) the formation of a conspiracy; or (2) overt acts in furtherance of such conspiracy. Thus, the district court correctly dismissed any claims brought pursuant to §§ 1985 and 1986.

To the extent that Appellants assert claims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241–242, these claims are not cognizable, as federal criminal statutes do not provide private causes of action. *See Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 511 (2d Cir.1994). In addition, any claim brought under 42 U.S.C. § 2000d, which prohibits the exclusion of individuals from a federally funded program or activity on the basis of race, color, or national origin, properly was dismissed, as Appellants did not allege that they were excluded from a federally funded program or activity and, thus, no claim exists under that statute. Similarly, although former 42 U.S.C. § 13981 authorized a cause of action arising out of a crime of violence motivated by gender, the Supreme Court has held that statute unconstitutional. *See United States v. Morrison,* 529 U.S. 598, 601, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).

We have reviewed Appellants' remaining arguments and find them to be without merit. We also note here that we see no ***105** indication in the record that Appellants perfected service on any of the defendants in this case.

Therefore, for the reasons stated above, the judgment of the district court is AFFIRMED.

**All Citations**

335 Fed.Appx. 102, 2009 WL 1762856

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1266245
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Paul WHITE, Plaintiff-Appellant,
v.
Sandra SCHMIDT, aka Sandra Kroger Schmidt,
aka Sandra K. Schmidt, Defendant-Appellee,
Pat Doe, (1–10), Defendants.
Paul White, Plaintiff-Appellant,
v.
Teodocia Santos, Ella Abney, Personally
and as Executrix of the Estate of Albert
Abney, Pat Doe, Defendants-Appellees. *

22-1267, 22-1911
|
March 26, 2024

Appeals from judgments of the United States District Court for the Northern District of New York (Mae A. D'Agostino, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED IN PART** and **VACATED IN PART** and **REMANDED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Paul White, pro se, Coxsackie, NY.

FOR DEFENDANTS-APPELLEES: No appearance.

PRESENT: ROBERT D. SACK, WILLIAM J. NARDINI, MYRNA PÉREZ, Circuit Judges.

**SUMMARY ORDER**

***1**

* * *

Plaintiff-Appellant Paul White, *pro se* and incarcerated, appeals from the April 26, 2022, and August 1, 2022, *sua sponte* dismissals of two federal lawsuits (Mae A. D'Agostino, *District Judge*), each pursuant to the *Rooker-Feldman* doctrine. White's appeals have been considered in tandem and consolidated for disposition. In 2015, White was convicted in New York state court of grand larceny and fraud, stemming from a scheme to defraud investors in a North Carolina real estate development. *See Spota v. White*, No. 29681-12, 2016 WL 6427362, at *2, 4 (N.Y. Sup. Ct. Suffolk Cnty. Oct. 28, 2016) (explaining the background of the criminal case in a decision on a civil forfeiture proceeding). The Supreme Court, Suffolk County, awarded $2.975 million in restitution to his victims, who included Sandra Schmidt, Teodocia Santos, and Ella and Albert Abney (the "Abneys"). *Id.* at *2. White's appeal of the criminal judgment is, as of the time of writing, still pending.

In 2014, the Suffolk County District Attorney's Office brought a civil forfeiture action against White and obtained a $2.4 million judgment. *Id.* at *4, 9. After the judgment was entered, White retained an attorney who obtained a decision in a North Carolina court, which he claims held that the investors had received their bargained-for-benefit, consisting of the validly deeded ownership of the property.

In 2017, White sued Schmidt and the Abneys in the Eastern District of New York, claiming that they had provided false statements to the Suffolk County District Attorney's Office and had testified falsely at grand jury proceedings and at his criminal trial, which resulted in their unjust enrichment by virtue of the restitution judgment that had been entered in their favor. In two different orders, the Eastern District dismissed the action, reasoning that the defendants were entitled to witness immunity, and in the alternative, the court lacked subject matter jurisdiction to entertain the unjust enrichment claim under *Rooker-Feldman*. *See generally White v. Abney*, No. 17-cv-4286, 2020 WL 5848647 (E.D.N.Y. Sept. 30, 2020); *White v. Abney*, No. 17-cv-4286, 2021 WL 1176218 (E.D.N.Y. Mar. 29, 2021).

In 2021, White filed the actions underlying these appeals. He sued Schmidt in the Northern District of New York, claiming that the restitution judgment had been satisfied by the North Carolina decision and that she had been unjustly enriched by a sum that he had separately paid to her. In a separate action, he sued Santos and the Abneys, raising substantially identical claims.

In 2022, the district court *sua sponte* dismissed each action as barred under the *Rooker-Feldman* doctrine and, alternatively, by collateral estoppel or *res judicata*, based on the preclusive effect of the Eastern District's earlier *Rooker-Feldman* procedural holding. *See generally White v. Schmidt,*

No. 21-cv-854, 2022 WL 1222805 (N.D.N.Y. Apr. 26, 2022); *White v. Santos*, No. 21-cv-417, 2022 WL 3025723 (N.D.N.Y. Aug. 1, 2022). White timely appealed. We assume the parties' familiarity with the case.

***2** We review *de novo* a *sua sponte* dismissal of a complaint, including a dismissal based on collateral estoppel, *res judicata*, or lack of subject matter jurisdiction under *Rooker-Feldman*. *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*sua sponte* dismissal); *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 368 (2d Cir. 1997) (collateral estoppel and *res judicata*); *Edwards v. McMillen Cap., LLC*, 952 F.3d 32, 35 (2d Cir. 2020) (*Rooker-Feldman*). When reviewing a *sua sponte* dismissal, we "accept all of the facts alleged in the complaint as true and draw all inferences in the plaintiff's favor." *Harnage v. Lightner*, 916 F.3d 138, 140–41 (2d Cir. 2019).[1]

Recognizing the "special solicitude" this Court must afford *pro se* litigants, *see Rosa v. Doe*, 86 F.4th 1001, 1007 (2d Cir. 2023), we nevertheless conclude that White's claims against Schmidt and the Abneys are barred by *res judicata*, or claim preclusion. "[C]laim preclusion ... operates in two ways: (1) it bars claims that were brought and decided in a prior litigation; and (2) it bars all other claims relating to the same transaction against the same defendant that could have been brought at that time." *N. Assurance Co. of Am. v. Square D Co.*, 201 F.3d 84, 87 (2d Cir. 2000). *White v. Abney* involved claims by White against Schmidt and the Abneys, so claim preclusion bars him from now raising any claims "relating to the same transaction ... that could have been brought" at the time he filed suit in *White v. Abney*. *Id.* White alleges that the following had occurred before he filed his complaint in *White v. Abney*: (1) the Suffolk County Court entered restitution judgments in favor of Santos, the Abneys, and Schmidt against White, (2) White obtained a decision from the North Carolina Superior Court determining that the defendants in these cases held valid deeds for the properties at issue, and (3) White paid approximately $31,000 each to Schmidt and the Abneys in partial satisfaction of the restitution judgments.

In the present cases, White seeks a declaratory judgment that the Suffolk County Court restitution judgments against him were satisfied by the North Carolina decision, and a return of the money he has paid to the defendants based on a theory of unjust enrichment distinct from the theory of unjust enrichment White relied on in *White v. Abney*. However, because White allegedly paid the defendants a partial restitution before the North Carolina decision was issued, and the North Carolina decision was issued before White initiated *White v. Abney*, White could have included his current claims for declaratory relief and unjust enrichment against Schmidt and the Abneys in *White v. Abney*. Accordingly, White's claims against Schmidt and the Abneys are barred by *res judicata.*

Santos, however, was not included as a defendant in *White v. Abney*, so claim preclusion cannot apply to White's current claims against Santos. *See N. Assurance*, 201 F.3d at 87. We therefore consider whether White's claims against Santos are barred under the *Rooker-Feldman* doctrine or collateral estoppel, as the district court found. We determine that they are not. Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). For a federal court to abstain under *Rooker-Feldman*,

> ***3** (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced.

*Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 641 (2d Cir. 2021). Here, the relevant state-court judgment is the criminal restitution judgment, which White alleges has been satisfied, not the civil forfeiture judgment. The civil forfeiture court did not address White's challenge to the restitution order, explaining instead that White's challenge was an improper collateral attack on the criminal conviction, which had to be raised instead on direct criminal appeal. *See Spota*, 2016 WL 6427362, at *4. Thus, if White is complaining of an injury from a state-court judgment, the relevant judgment is the criminal restitution judgment.

The application of *Rooker-Feldman* here was improper because the criminal restitution judgment was not final at the time the federal lawsuit commenced. In *Hunter v. McMahon*, 75 F.4th 62, 65, 67, 70–71 (2d Cir. 2023), this Court concluded that the *Rooker-Feldman* doctrine could not apply when an

appeal remains pending in state court at the time a complaint is filed, because *Rooker-Feldman* applies only after state-court proceedings have "ended." Because White's criminal appeal remains pending, the relevant state court proceeding had not concluded before White filed his complaint. Accordingly, the district court erred by dismissing the complaint based on *Rooker-Feldman.*

Although the district court alternatively dismissed the complaint on the basis of collateral estoppel, we do not affirm on this ground. In *White v. Abney*, the Eastern District dismissed White's complaint against Schmidt under the *Rooker-Feldman* doctrine. *Abney*, 2020 WL 5848647, at *7. While collateral estoppel can bar reconsideration even of erroneous prior rulings, our decision in *Hunter* amounted to a significant clarification of our law on this fairly significant issue of *Rooker-Feldman*'s proper scope. *See Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) ("[E]ven where the specified elements of collateral estoppel are present, reexamination of a legal issue is appropriate where there has been a change in the legal landscape after the decision claimed to have preclusive effect."). Accordingly, we do not affirm the judgment based on the preclusive effect that the *Rooker-Feldman* holding in *White v. Abney* might have.

* * *

In sum, the district court erred by relying on the *Rooker-Feldman* doctrine to *sua sponte* dismiss White's complaints. We decline to affirm on the alternative grounds of collateral estoppel. However, the district court's judgments with respect to Schmidt and the Abneys can be affirmed on the alternative ground of *res judicata.* We express no view on the merits (or lack thereof) of the underlying suit against Santos, which is better addressed by the district court in the first instance.[2] Therefore, the judgments of the district court are **AFFIRMED IN PART** and **VACATED IN PART** and **REMANDED** for further proceedings.

### All Citations

Not Reported in Fed. Rptr., 2024 WL 1266245

## Footnotes

* The Clerk of Court is directed to consolidate these appeals for purposes of decision.

1 Unless otherwise indicated, case quotations omit all internal quotation marks, alteration marks, footnotes, and citations.

2 We acknowledge that the district court may decide that a stay is warranted pending the outcome of the criminal restitution judgment appeal. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) ("Comity or abstention doctrines may, in various circumstances, permit or require the federal court to stay ... the federal action in favor of the state-court litigation.").

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.